UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,
              Plaintiff,

        v.                                          Case No. 1:25-cv-00511

U.S. DOGE SERVICE, *et al.*,
              Defendants.


**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION AND A PARTIAL
STAY OR EXTENSION OF THIS COURT'S MARCH 10, 2025 OPINION AND ORDER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ...................................................................................................... 1

BACKGROUND ...................................................................................................... 4

ARGUMENT ...................................................................................................... 10

    I.    The Court's Grant of a Preliminary Injunction—Based on an Irreparable Harm Theory That USDS Did Not Have a Meaningful Opportunity to Address—Was Clearly Erroneous ............................................................................... 11

    II.    Reconsideration is Warranted Given the Availability of New Evidence…………………………………………………………………………13

    III.    Reconsideration is Warranted to Prevent Manifest Injustice...................................17

    IV.    A Partial Stay or Extension is Warranted ..................................................................20

CONCLUSION…………………………………………………………………………..21

i

## TABLE OF AUTHORITIES

### Cases

*AARP v. United States Equal Employment Opportunity Commission*,
  292 F. Supp. 3d 238 (D.D.C. 2017) ........................................................................ 10

*American Federation of Labor & Congress of Industrial Organizations v. Department of Labor*,
  2025 WL 542825 (D.D.C. Feb. 14, 2025) ........................................................ 12, 15

*Anyanwutaku v. Moore*,
  151 F.3d 1053 (D.C. Cir. 1998) .............................................................................. 11

*Ciralsky v. CIA*,
  355 F.3d 661 (D.C. Cir. 2004) ................................................................................ 10

*CityFed Financial Corp. v. Office of Thrift Supervision*,
  58 F.3d 738 (D.C. Cir. 1995) .................................................................................. 11

*League of Women Voters of the U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) .................................................................................... 11

*\*Meyer v. Bush*,
  981 F.2d 1288 (D.C. Cir. 1993) ...................................................................... 14, 15, 16

*Sampson v. Murray*,
  415 U.S. 61 (1974) .................................................................................................. 11

### Executive Orders

*Exec. Order No. 14158,
  90 Fed. Reg. 8441 (Jan. 29, 2025) ......................................................................... 14

*Exec. Order No. 14170,
  90 Fed. Reg. 8621 (Jan. 30, 2025) ......................................................................... 14

*Exec. Order No. 14210,
  90 Fed. Reg. 9669 (Feb. 11, 2025) ......................................................................... 14

*Exec. Order No. 14219,
  90 Fed. Reg. 10583 (Feb. 19, 2025) ................................................................. 14, 15

## INTRODUCTION

The United States DOGE Service (USDS) respectfully moves this Court for reconsideration of the portions of this Court's March 10, 2025 opinion and order directing USDS to expeditiously process the Freedom of Information Act (FOIA) request to USDS, directing USDS to provide an estimate of the volume of records responsive to that request by March 20, 2025, and directing USDS to propose a schedule for rolling production of responsive records by March 27, 2025. USDS also intends to file a motion for summary judgment by next Wednesday, March 19 on the basis that it is not an agency subject to FOIA; USDS requests that the Court order a schedule for expedited briefing on that motion, with Plaintiff's opposition to the motion due Monday, March 24 and USDS's reply due Wednesday March 26. USDS further seeks a partial stay and/or extension of time of the same portions of the opinion and order pending consideration of this motion and pending consideration of USDS's motion for summary judgment.[1] Undersigned counsel has conferred with counsel for Plaintiff. Plaintiff opposes the motion in full; it opposes the expedited briefing schedule proposed by USDS for the motion for summary judgment, opposes the motion for reconsideration, and opposes the motion for a stay/extension of time pending consideration of the reconsideration and summary judgment motions.

Plaintiff Citizens for Responsibility and Ethics in Washington (CREW) sought a preliminary injunction requiring Defendants to complete the processing of all three of its sweeping Freedom of Information Act (FOIA) requests no later than March 10, 2025. That motion was flawed in multiple respects. For one, CREW's attenuated and speculative theory that the requested

---

[1] Defendants do not through this motion seek reconsideration of the opinion and order as applied to the Office of Management and Budget (OMB). They also do not seek reconsideration of the portion of the opinion and order requiring OMB and USDS to preserve all records that may be responsive to Plaintiff's FOIA requests at issue in this case.

documents should be released by March 10 or a similar date certain because the documents were supposedly necessary to inform debates about a new government-funding bill bore no resemblance to the rare scenarios in which this Court has granted similar relief. And for another, CREW's requests—seeking, among other things, "[a]ll communications" of any kind "between USDS personnel and personnel of any federal agency outside of the Executive Office of the President," every single communication among legacy U.S. Digital Service employees for a multi-month period, and broad categories of documents from OMB going back more than a decade—were not even arguably targeted to documents that bear directly on an imminent and important public debate. And, lastly, USDS is not an agency subject to FOIA, although the government suggested that the Court should decline to resolve that novel and significant question in a preliminary posture on an expedited basis.

Although CREW substantially narrowed its FOIA requests in its reply brief days before the hearing, this Court held that CREW was not entitled to a preliminary injunction requiring processing by a date certain. Among other conclusions, the Court noted that "the appropriations process is much more fluid than one-off events that have very occasionally given rise to 'date certain' preliminary injunctions in FOIA cases," and that "the handful of cases in which courts in this district have ordered production by a date certain do not support CREW's position." The Court also correctly noted that, even putting aside those threshold defects, the documents CREW sought were not even particularly relevant to any imminent appropriations debates in Congress, let alone central to the integrity of those debates.

Nonetheless, the Court entered an injunction directing USDS to grant expedited processing of the USDS request and propose a schedule for rolling productions. In doing so, the Court concluded that USDS is likely an agency subject to FOIA.

USDS respectfully requests that this Court reconsider these aspects of its decision and order. USDS further requests that this Court stay or extend these aspects—and in particular, stay or extend the March 20 and March 27 deadlines as to USDS—pending consideration of this motion and of USDS's forthcoming partial motion for summary judgment, which USDS intends to file next week.

First and most narrowly, we respectfully submit that the Court's grant of an injunction (and in particular, the Court's finding of irreparable harm based on a theory that was never briefed) was clearly erroneous. Second, reconsideration is warranted to consider the attached declaration of USDS Administrator Amy Gleason. Respectfully, the Court fundamentally misapprehended the structure of USDS and mistakenly conflated the responsibilities assigned to USDS within the Executive Office of the President and DOGE teams within agencies. That declaration explains in detail the structure and responsibilities of USDS as set forth in the Executive Orders and presidential memorandum that delineate USDS's limited role as a non-statutory component in the Executive Office of the President.  Together, they describe USDS's proximity to the President (reporting to the White House Chief of Staff), USDS's advisory role in advancing the President's DOGE agenda, and USDS's consultation with (but not control over) agency DOGE teams who answer to agency leadership (not to USDS), and they make clear that USDS does not wield any authority independent of the President.

Third, reconsideration is warranted to prevent manifest injustice. CREW could have moved for immediate summary judgment on the question whether USDS is subject to FOIA and did not; but the Court's order effectively decides that important threshold legal issue, in granting a different preliminary injunction that CREW never sought, in a context where the Government had no reason to believe—in opposing the meritless preliminary injunction motion CREW *did file*—that it

needed to brief this important issue. And the Court justified that injunction not on the theory of irreparable harm that the parties briefed (irreparable harm purportedly tied to this week's appropriations process, a theory the Court rightly rejected) but on a different theory that, without a preliminary injunction, it would take years to litigate the question whether USDS is an agency subject to FOIA—as discussed further below, that theory is incorrect but, in any event, was never briefed by the parties.

Finally, an immediate stay or extension of time for the period needed to decide this motion and USDS's forthcoming summary judgment motion is warranted. The relief the Court ordered implicates substantial separation of powers concerns given USDS's operational closeness to the President, and imposes a significant burden on USDS, which (as a Presidential Records Act component) has no FOIA apparatus in place and no personnel or resources allocated for processing FOIA requests. There is no substantial burden on CREW or anyone else in briefly staying or extending this relief until the Court has the opportunity to decide these motions.

## BACKGROUND

On December 19, 2024, CREW submitted a FOIA request to OMB (First OMB Request) for records, from November 5, 2024, to the date the request is processed, of eight categories of documents, including communications between OMB personnel and Elon Musk as well as other named individuals, and any other individuals "purporting to have an association with, represent, work for, or communicate on behalf of the Department of Government Efficiency"; communications between OMB employees and Senator Joni Ernst, Congresswoman Marjorie Taylor Greene, or their offices "regarding DOGE, OMB's organizational structure, staffing, or expenditures or the efficiency of any of its programs, functions, or operations"; and "[a]ny and all records within OMB regarding 'Department of Government Efficiency,' 'DOGE,' 'Government Efficiency Commission,' 'Delivering Outstanding Government Efficiency Caucus,' or 'DOGE

Caucus.'" *See* ECF No. 2-2 (Maier Decl.) Ex. A at 2. The next day, OMB acknowledged receipt

of the First OMB Request and assigned it tracking number 2025-373. Maier Decl. Ex. B.

On January 24, 2025, CREW submitted another FOIA request to OMB (Second OMB

Request), Maier Decl. Ex. C, and a request to USDS (USDS Request), Maier Decl. Ex. D. The

Second OMB Request seeks, from November 6, 2024, to the date the request is processed, broad

categories of documents, including all communications of any kind between OMB and USDS

personnel, all communications between OMB personnel and the Trump-Vance transition team

regarding USDS, all memoranda, directives, or policies regarding performance evaluations of

employees of USDS, and all ethics pledges, waivers, or financial disclosures executed by USDS

personnel. Maier Decl. Ex. C at 2. The USDS Request seeks similar categories of information, as

well as "[a]ll communications" of any kind between the USDS Administrator and USDS staff and

"[a]ll communications" of any kind "between USDS personnel and personnel of any federal

agency outside of the Executive Office of the President." Maier Decl. Ex. D at 2. Both the Second

OMB Request and the USDS Request also cover additional, broad categories of documents

spanning more than eleven years (from January 1, 2014, to January 19, 2025); Maier Decl. Ex. C

at 2-3; Maier Decl. Ex. D at 2-3.

CREW requested (at the time of each request, on January 24) expedited processing for both

the Second OMB Request and the USDS Request. OMB granted both expedition requests on

January 29. Maier Decl. Ex. H at 2; Maier Decl. Ex. I at 2. In each instance, OMB explained:

> Please understand, however, that the granting of expedited processing does not
> guarantee that your request will be completed by a date certain. OMB has a
> significant backlog of FOIA requests and we are doing our best to respond to each
> request as quickly as possible.

Maier Decl. Ex. H at 2; Maier Decl. Ex. I at 2. CREW sent a follow-up letter on February 7, 2025,

requesting that OMB finish processing both requests by March 1, 2025. Maier Decl. Ex. J at 3.

On February 11, 2025, CREW requested expedited processing of the First OMB Request, submitted on December 19, 2024, and further requested that OMB complete processing that request by March 1, 2025. Maier Decl. Ex. K at 2. On February 14, 2025, OMB granted that expedition request as well but did not promise to complete processing by March 1 as CREW requested, instead including the same language quoted above. Maier Decl. Ex. L.

OMB subsequently determined that the USDS Request was misdirected to OMB. In a February 25 letter to CREW, OMB explained that, because USDS is not housed within OMB, it was administratively closing the FOIA Request within OMB (as Defendants noted in opposing the preliminary injunction motion, OMB appears to have told CREW to submit the USDS Request through OMB, and OMB regrets the misunderstanding). Although OMB is not required to forward misdirected requests outside OMB, it nonetheless forwarded the USDS Request to USDS given the extenuating circumstances.

CREW filed suit on February 20, 2025. ECF No. 1 (Compl. or Complaint). The same day CREW filed its Complaint, CREW filed a motion for a preliminary injunction. *See* ECF No. 2 (Motion); ECF No. 2-1 (PI Mem.) As relevant here,[2] CREW requested one and only one very specific injunction: that this Court enter a preliminary injunction directing Defendants to "fully process and produce all non-exempt records responsive to" all three FOIA requests no later than March 10, 2025. ECF No. 2-17. Consistent with that request, CREW's asserted irreparable harm

---

[2] Since it does not bear on this reconsideration motion, we do not address CREW's request for a preservation order or the Court's grant of that relief. Still, USDS respectfully disagrees with many of the spoliation concerns that appear to have animated this aspect of the Court's decision. Entities subject to the PRA are subject to significant preservation obligations, in some respects greater preservation obligations than entities subject to the FRA. And as paragraph 26 of Administrator Gleason's declaration explains "USDS has informed its employees (including those in the U.S. DOGE Service Temporary Organization) that they must adhere to records-preservation requirements."

was closely tied to the supposed connection between the requested records and the expiration of the continuing resolution currently funding the government on March 14: "Given Congress's imminent action on government funding in response to the expiration of the continuing resolution on March 14, and the deliberation and debate that is already underway, there is an urgent need to inform the public about USDS's operations right now." PI Mem. at 34; *see also id.* (asserting that "[m]embers of the public will not be able to meaningfully engage with their elected representatives about the appropriations process while questions about USDS's mandate, structure, and legal authority are unresolved before the expiration of the current continuing resolution").

Defendants filed their opposition to the preliminary injunction motion on February 27. *See* ECF No. 10 (PI Opp.). The United States argued at length in that opposition that CREW had failed to demonstrate the requisite irreparable harm required to obtain the highly disfavored remedy of a preliminary injunction requiring processing by a date certain in a FOIA case, including: (1) CREW had failed to demonstrate that the documents it seeks would become stale or no longer of public interest once the current funding bill expires on March 14; (2) the appropriations process is fundamentally unlike the sort of one-time or highly infrequent events in which similar preliminary injunctions have been granted; (3) the broad categories of documents CREW sought were not reasonably targeted to documents bearing directly on any important public debate; and (4) in any event, the documents CREW sought were not highly probative or essential to the integrity of debates about how to fund the government beyond March 14, particularly given significant information already available about—and public attention directed towards—USDS's activities. *Id.* at 15-18. The United States further argued that CREW was unlikely to succeed on the merits because, in addition to the same considerations, the date certain it proposed was manifestly unreasonable.

CREW filed its reply on March 4. ECF No. 13. That reply continued to seek an injunction requiring processing of documents by a date certain, and continued, repeatedly, to base the supposed irreparable harm justifying this request on the appropriations process. *See, e.g., id.* at 6 (contending that "USDS's rapid and reckless disruption of congressionally funded government operations has become the focal point of the appropriations debate"); *id.* at 8 (referring to "central issues to how Congress will account for USDS in the appropriations process"); *id.* at 11 (contending that "[t]he requested records are central to the public debate on whether and how the government will be funded"). In the same reply, CREW submitted, for each component of its requests, "narrowed versions of its FOIA requests to OMB and USDS that focus on the subsets of requested records most crucial to informing the public about USDS's operations before March 14." *Id.* at 12. CREW contended that "each category of high-priority records bear directly on the ongoing appropriations debate." *Id.*

On March 6, 2025, USDS sent an email to CREW denying its FOIA Request. In that email, USDS reiterated the position it stated in opposing the preliminary injunction—that it was subject to the Presidential Records Act and was not an agency subject to FOIA. Undersigned counsel informed the Court of this development at the hearing the next day.

Following the March 7 hearing on CREW's preliminary injunction motion, this Court issued its opinion and order on the motion on March 10. ECF No. 17 (PI Order); ECF No. 18 (PI Opinion). The Court concluded that CREW "satisfies none of the factors entitling it to preliminary relief ordering production of its OMB requests by today's date." PI Opinion at 15. The Court further elaborated "that CREW has established neither a likelihood of success on the merits that the requested information will go stale after March 10 nor irreparable harm from failing to receive the documents until after the impending appropriations process has concluded." *Id.* at 16.

Specifically, the Court repeatedly noted its skepticism about whether the documents were central to—or even relevant to—the decision whether to continue funding the government after March 14. *Id.* at 17 ("The Court highly doubts that the specifics of how USDS has interacted thus far with OMB is crucial to the determination whether to continue funding the entire federal government."); *id.* ("[T]he Court doubts that legislators urgently require, for example, communications between OMB employees and [Elon] Musk, Steve Davis, and their representatives, or other communications or memoranda concerning 'changes to the operations of' USDS to decide whether to continue funding the government."); *id.* ("To the extent legislators are concerned enough about USDS influence to shut down the government, they may already do that, and CREW provides few examples of specific information included in the requested records that might be relevant to that broad decision."); *id.* ("CREW's request for ethics pledges or waivers and financial disclosure forms of USDS personnel seems particularly far afield.").

More fundamentally, the Court embraced Defendants' argument that the appropriations process—which is frequently repeating, if not continuous—was quite unlike the circumstances under which courts in this district had granted similar relief: "Although some funding decisions may not be easily wound back, the appropriations process is much more fluid than one-off events that have very occasionally given rise to 'date certain' preliminary injunctions in FOIA cases." *Id.* at 18; *see also id.* at 19 ("And the handful of cases in which courts in this district have ordered production by a date certain do not support CREW's position."). And putting aside the difference between the appropriations process and the one-off or infrequent events in cases granting similar relief, in those other cases "the link between the requested records—e.g., the government's use of citizenship data and the reapportionment process—was much closer than the tenuous connection between the records requested and the appropriations process here." *Id.* at 21.

9

But having rejected the notion that CREW was entitled to the preliminary injunction it sought (requiring processing of documents by a date certain), and having further rejected CREW's theory of irreparable harm (based on the funding debate), the Court then shifted gears. According to the Court, CREW demonstrated that it was "entitled to preliminary relief ordering USDS to process the [USDS] request on an expedited basis" and, in reaching that conclusion, held that USDS was likely an agency subject to FOIA. *Id.* at 22-28.

As to its preliminary conclusion that USDS is an agency subject to FOIA, the Court acknowledged that a great deal of the material it relied on for this conclusion consisted of media reports. *Id.* at 27. But the Court found it significant that USDS had not briefed the question in detail in its expedited briefing opposing the PI motion.

The Court next found that CREW would suffer irreparable harm absent the injunction it was granting, based on an irreparable harm theory not tied to the appropriations process—or any other specific event. According to the Court, the time it would take to resolve on the merits whether USDS is an agency subject to FOIA "would likely result in a substantial delay of years, for all practical purposes imposing an indefinite delay." *Id.* at 31; *see also id.* at 34 ("All these factors together bolster the Court's conclusion that a years-long delay in processing the USDS Request would cause irreparable harm.").

## ARGUMENT

A district court has considerable discretion to grant reconsideration of its own decisions. *AARP v. United States Equal Employment Opportunity Commission*, 292 F. Supp. 3d 238, 241 (D.D.C. 2017) (citing *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004). The court properly invokes its discretion if there is (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice. *Anyanwutaku v.*

*Moore*, 151 F.3d 1053, 1057-58 (D.C. Cir. 1998). Multiple grounds support reconsideration here.

I.      **The Court's Grant of a Preliminary Injunction—Based on an Irreparable Harm Theory That USDS Did Not Have a Meaningful Opportunity to Address—Was Clearly Erroneous**

"[T]he basis of injunctive relief in the federal courts has always been irreparable harm." *CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). To constitute irreparable injury, the harm must be "certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 7-8 (D.C. Cir. 2016) (citation and alteration omitted). Accordingly, the Court recognized in its preliminary injunction opinion that neither its conclusion that CREW was likely entitled to expedited processing nor its conclusion that USDS was likely an agency subject to FOIA meant that CREW was entitled to any preliminary relief. *See id.* at 31 ("Because CREW seeks preliminary relief, the Court must also consider whether delay in processing its request on an expedited basis would cause irreparable harm."). As noted above, the Court found irreparable harm justifying an injunction here based on its belief that resolving USDS's FOIA status before ordering processing and production would take years, resulting in indefinite delay and irreparably harming the public. *See supra* p. 10.

Perhaps in part because this was not the theory of irreparable harm underlying CREW's motion and was not meaningfully briefed by the parties, the Court's analysis on this point was—respectfully—clearly erroneous. Contrary to the Court's analysis, the question of USDS's FOIA status would not take years to resolve and could be litigated on an expedited basis, as USDS now proposes. Indeed, as noted above, USDS intends to file a motion for partial summary judgment on this issue next week, before its response to the Complaint is even due, and has proposed an

expedited briefing schedule.

USDS acknowledges of course that, all else being equal, resolving its FOIA status on the merits before requiring processing and production of documents (should that issue be resolved against USDS) would entail *some* period of delay compared to a world in which it is ordered to process and produce immediately. But for at least two reasons, such delay does not qualify as irreparable harm that would justify the injunction the Court entered.

For one, this potentially modest delay is one that CREW could have avoided. CREW could have immediately moved for summary judgment on the agency issue after filing its Complaint. CREW knew at the time it filed its Complaint that USDS would almost certainly take the position that it was not subject to FOIA. After all, CREW briefed that issue at length in its preliminary injunction motion. PI Mem. at 18-25. And as CREW knew before it even filed its Complaint and motion, USDS had already stated in a different case that it would take the position that it was not an agency for FOIA purposes. *See American Federation of Labor & Congress of Industrial Organizations v. Department of Labor*, --- F. Supp. 3d ----, 2025 WL 542825, at *3 (D.D.C. Feb. 14, 2025) (noting that "defendants' counsel insisted that USDS is not an agency under" FOIA and two other statutes); *see also* PI Mem. at 21 (discussing this decision). Although OMB's initial steps in relation to the USDS Request may admittedly have created some confusion, CREW certainly knew no later than February 27 (when USDS reiterated in opposing the preliminary injunction its position that it was not subject to FOIA) that this would be a live issue in the case. It was CREW's choice to attempt to tee up the agency issue in the context of a preliminary injunction motion claiming irreparable harm tied to the current appropriations process—rather than seeking immediate resolution of that legal issue through summary judgment or another appropriate vehicle.

12

Putting that aside, CREW made no showing that it would be irreparably harmed if responsive documents were not processed during the time it might take to litigate the agency issue—again, because that was not the basis of the motion it filed.  The premise of the Court's contrary conclusion—"If the Court does not grant preliminary relief to CREW, records responsive to the USDS request will not be released anytime soon, if ever," PI Opinion at 31—is, respectfully, incorrect. And although we appreciate (without taking a position on) the sentiments the Court expressed—that, for example, "[v]oters may seek to influence congressional representatives to take action responsive to USDS" and that the information CREW seeks "will only be useful to the electorate so long as USDS remains a topic of current national importance," *id.* at 32-33—none of this demonstrates that CREW or the public will be irreparably harmed by any modest delay associated with litigating USDS's FOIA status before requiring processing and production (a delay of weeks, not years). Any such contention is particularly strained given, as this Court's own analysis makes clear, USDS's activities have already been the subject of extensive media coverage, statements by President Trump and other major public figures, and multiple Executive Orders. *See* PI Opinion at 23-34.

## II.    Reconsideration is Warranted Given the Availability of New Evidence

The Court should also grant reconsideration to consider the attached declaration of Amy Gleason, Administrator of USDS (Gleason Decl.)—new evidence which, for the reasons given above and in Part III, USDS had good reasons for not offering earlier. As the below makes clear, the actual structure of USDS is quite different from its portrayal in some media accounts—accounts which routinely conflate the White House, the Executive Office of the President component called USDS, employees at countless agencies, and sometimes agencies themselves.

As the D.C. Circuit has noted, as applied "to those who help the President supervise others in the executive branch," courts should consider three factors: "how close operationally the group

is to the President, what the nature of its delegation from the President is, and whether it has a self-contained structure." *Meyer v. Bush*, 981 F.2d 1288, 1293 (D.C. Cir. 1993). USDS and the USDS Temporary Organization have no statutory basis and thus no statutory authorities. Their existence and authorities are purely a creature of several executive orders—none of which confer any authority to direct the actions of agencies or agency employees.

As Administrator Gleason explains, USDS is operationally close to the President. *See* Gleason Decl. ¶¶ 5, 8 (noting that USDS is a standalone component in the Executive Office of the President, and the Administrator reports to the White House Chief of Staff). As to the nature of the delegation, USDS, has limited responsibilities and those responsibilities are purely advisory. As set forth in the Executive Order that established it, USDS's primary role is to help advise and consult with agency personnel on the President's DOGE agenda, which includes technology modernization (E.O. 14158 § 4(a)), reforming the federal workforce (E.O. 14170), payment transparency (E.O. 14210), and deregulation (E.O. 14219). As the Executive Order that created USDS explains, USDS advances this agenda by consulting with agency DOGE teams and agency DOGE Team Leads within federal agencies—DOGE teams that serve as agency employees who report to agency heads rather than serving as USDS employees reporting to the USDS Administrator. Those agency employees are the personnel who actually carry out the DOGE agenda within agencies under the supervision of the agency head—like any other agency employee. E.O. 14158 § 3(c).

In addition to providing advice and consulting with agency personnel to advance the President's DOGE agenda, a series of Executive Orders and a Presidential Memorandum describe a handful of limited responsibilities assigned to USDS and the USDS Administrator, including: (1) commencing a technology modernization initiative with federal agencies (Gleason Decl. ¶ 17),

(2) consulting with the Assistant to the President for Domestic Policy and the OMB Director on a federal hiring plan, *id.* ¶ 22(a); (2) consulting with the OMB Director on a plan to reduce the size of the federal workforce and with the Treasury Secretary, "who is responsible for determining when to lift the hiring freeze at the Internal Revenue Service," *id.* ¶ 22(b); and (3) reviewing reports from agency heads on contracting and non-essential travel expenses, *id.* ¶ 22(f).[3] "Cumulatively, these orders and memorandum set forth the responsibilities assigned to USDS, the U.S. DOGE Service Temporary Organization, agency DOGE Teams, and agency DOGE Team Leads.  As an entity created by Executive Order, USDS has no other independent sources of legal authority" *Id.* ¶ 23.[4] And as will be discussed in greater detail in USDS's forthcoming motion for summary judgment, USDS is a small, non-statutory entity that blends in various respects with the White House Office; it lacks the sort of firm and definite structure the *Meyer* court noted was important for a determination of agency status. 981 F.2d at 1296.

In finding that USDS was likely an agency subject to FOIA, this Court—like Judge Bates in *American Federation of Labor*—gave significant weight to language in Executive Order 14,158 stating that USDS was established to "implement the President's DOGE agenda." PI Opinion at 23-24; *see also American Federation of Labor*, 2025 WL 542825, at *3 (USDS's agenda "is to 'implement' the President's modernization agenda, not simply to help him form it"). Respectfully, this is a thin reed. That USDS was established to help implement the President's agenda says nothing about *how* USDS is charged with doing so; USDS's delineated roles make clear that USDS

---

[3] In addition, Executive Order 14219—which does not mention USDS or assign any duties to it— "requires agency heads, in consultation with their DOGE Teams Leads, to undertake deregulatory efforts." *Id.* ¶ 22(e).

[4] Agency DOGE teams (not USDS itself) also report to the President on agencies' compliance with the President's directive to reduce agency headcount. Gleason Decl. ¶ 22(c). And USDS also provides advice—legal and otherwise—on issues incidental to these objectives

helps implement the President's agenda by advising and assisting the President and his proxies, not by wielding any independent authority. The National Security Council helps implement the President's national security agenda; the Domestic Policy Council helps implement the President's domestic policy agenda; the Council of Economic Advisors helps implement the President's economic agenda. That does not make these presidential advisory bodies agencies. Same for USDS.

Again, the "DOGE teams" at federal agencies are composed of employees and detailees at those agencies who report to other agency personnel under the supervision of the agency head, *see supra* p. 14—not to USDS. The DOGE teams work *inside* agencies—not above them and not outside them. USDS's role in "implement[ing] the DOGE Agenda" is limited to the kind of legal advice, policy formulation, and ad hoc policy direction that is *always* undertaken by close advisors to the President in the sorts of offices that this Court and the D.C. Circuit have repeatedly held are not subject to FOIA. *See Meyer v. Bush*, 981 F.2d 1288, 1293–94 (D.C. Cir. 1993) ("Unquestionably, the Chairman and members of the CEA and the White House counsel, like other senior White House officials close to the President, often give ad hoc directions to executive branch personnel. But when it occurs, it is assumed that they merely are passing on the President's wishes.").

The Court also emphasized what it characterized as USDS's significant activities across a range of government agencies. But as Administrator Gleason explains, although President Trump "direct[ed] the heads of federal agencies to form teams within their respective agencies," "[e]very member of an agency's DOGE Team is an employee of the agency or a detailee to the agency" and "[t]he DOGE Team members—whether employees of the agency or detailed—thus report to the agency heads or their designees, not to me or anyone else at USDS." *Id.* ¶¶ 12-13; *see also id.*

16

¶ 16 (Administrator Gleason repeating that these individuals "do not report to me for work conducted within and for the agency").

Related to this point, the Court also noted that "President Trump's subsequent executive order directs that agencies shall not fill any vacancies for career appointments that the DOGE Team Lead assesses should not be filled, unless the Agency Head determines the positions should be filled." PI Opinion at 24. There are two errors in this observation. Most fundamentally, this is a presidential delegation of authority *within* agencies—*not* to USDS. Again, the DOGE Team Lead is an *agency* employee who reports to the *agency head* (or a designee); the authorities or lack thereof for such personnel have nothing to do with *USDS*. And second, it is doubtful that this role—issuing directives the agency head can freely veto—constitutes independent authority at all.

To be clear, in this motion, USDS does not seek a definitive ruling that it is *not* an agency subject to FOIA—USDS will seek that ruling in its imminent motion for summary judgment, which it intends to file next week. USDS merely seeks vacatur of this portion of the Court's opinion and the previously described portions of the Court's order so that the Court can decide this important question of law with complete facts and legal argument. Administrator Gleason's declaration warrants relief from these aspects of the Court's order—which, as discussed above, did not benefit from adversarial briefing on the issue.

### III.    Reconsideration is Warranted to Prevent Manifest Injustice

Finally, given the procedural history we have previously discussed, this Court should reconsider the relevant aspects of its opinion and order to prevent manifest injustice. To be clear, when the United States or any other party opposes a motion and chooses not to address a particular issue after determining that there is no realistic chance the motion will be granted for other reasons, it runs the risk that its judgment will prove incorrect, that the court will find the motion meritorious, and will treat that issue as conceded. But respectfully, that is simply not what happened here.

17

CREW sought a specific injunction—seeking production of documents by March 10, based on alleged irreparable harm specifically tied to the March 14 expiration of the current government funding bill—a date passing today—that this Court unequivocally rejected. Had CREW sought the injunction that this Court issued—based on the very different theory of irreparable harm this Court embraced—USDS would have litigated the motion differently. Party presentation is a vital aspect of litigation and USDS was entitled to litigate the case CREW presented rather than a different or broader one. Particularly given the importance of the issue the Court analyzed without the benefit of adversarial briefing—analysis that, again and as the Court freely recognized, was based significantly on media reports—basic principles of fair notice and party presentation warrant reconsideration of these aspects of the Court's opinion and order to permit a highly expedited summary judgment process.

In its opinion, the Court deemed the relief it granted to be within the scope of CREW's preliminary injunction motion—seeking processing of its FOIA request in advance of March 14 because of the appropriations process—based on a colloquy with CREW's counsel at the hearing in which CREW's counsel agreed with the Court that such a preliminary injunction would indeed be within the scope of its original motion. PI Opinion at 14.

Respectfully, this was error. In the ordinary course in a FOIA case, a court does not direct expedited processing or any other relief *at least* before the agency responds to the Complaint. In its motion, CREW sought a deviation from that ordinary procedure based on a specific reason—supposed irreparable harm tied to the then-imminent debate surrounding the March 14 expiration of funding—that this Court unequivocally rejected.

Put another way, if CREW had not moved for a preliminary injunction, USDS would have been entitled to move to dismiss on the agency question at the time its response to the Complaint

was due—and would not have been required to take any steps before it filed that motion. The only thing that was different in this case is that CREW asked for a preliminary injunction to produce all records by March 10. The Court denied that relief. Yet the Court nonetheless reached out to issue a functional merits ruling that will require USDS to begin processing and producing records before its agency status is resolved. Respectfully, the Court erred in doing so when the predicate for CREW's motion—that it was entitled to an injunction requiring processing of its requests in advance of March 14—had no merit, as the Court recognized in rejecting it.

And although this Court acknowledged that USDS had stated in opposing the preliminary injunction that it did not need to brief the issue at that stage "because CREW's "motion fails for multiple independent reasons," *id.* at 27 (quoting PI Opp. at 20 n.4), the Court suggested that its ultimate decision suggested that "USDS did not have a slam-dunk argument after all," *id.* at 28. With great respect for the Court, this was fundamentally unfair to USDS. As to the preliminary injunction it actually opposed on February 27, USDS did have slam-dunk arguments: that, among other reasons, there was no risk of the documents CREW sought going stale after March 14, that the appropriations process was fundamentally unlike the one-off or infrequent events under which similar relief had been granted, and that in any event the documents CREW sought were not essential to (if they were even relevant to) that process. *See supra* pp. 8-9. The Court accepted all these arguments—as Defendants were confident the Court would. USDS had no reasonable notice that this Court would entertain a very different preliminary injunction based on a very different theory of irreparable harm—a supposed generalized public interest in the documents CREW sought that was not tied to the appropriations process or, indeed, to any specific imminent event.

Finally, we feel compelled to address the Court's suggestion that USDS's decision not to brief the agency question in opposing the preliminary injunction motion may have been

19

"strategic." *Id.* at 28 n.3. Again, respectfully, this suggestion is unwarranted. Initially and contrary to the Court's suggestion, there is no conflict between the position taken in this case—that USDS is not an agency subject to FOIA—and its argument in *American Federation of Labor* (that it qualifies as an instrumentality under the broader language in the Economy Act). In any event, the decision not to brief the agency issue for the first time on an expedited basis in opposing CREW's preliminary-injunction motion was not a strategic ploy. It was a considered decision that doing so was unnecessary because CREW's preliminary injunction motion was meritless for other reasons.[5] Having rejected that motion for substantially the reasons USDS provided in its briefing, it was error to decide that important legal issue against USDS while granting starkly different relief on a starkly different theory of irreparable harm, without adversarial briefing or fair notice to USDS. Reconsideration is warranted.

## IV.    A Partial Stay or Extension is Warranted

Finally, this Court should issue an immediate stay or extension of the March 20 and March 27 deadlines as applied to USDS only, pending consideration of this motion and the partial summary judgment motion USDS intends to file next week. Although the Court's opinion and order does not finally resolve the legal question whether USDS is subject to FOIA, it as a practical matter will likely require USDS to begin processing and producing documents pursuant to the USDS Request, notwithstanding USDS's operational closeness to the President and its role advising and assisting the President—all as a result of a ruling on an expedited motion where

---

[5] Indeed, USDS and OMB's administrative and litigation conduct in this case has been marked by candor and transparency. OMB forthrightly acknowledged that its own miscommunication resulted in CREW sending the USDS request to it rather than USDS. In opposing the preliminary injunction motion, USDS did not argue that the motion should be denied because it did not receive the request until February 25—as it almost surely would have if not for the unique circumstances of this case. And in advance of the preliminary-injunction hearing, USDS formally denied the Request and made clear at the hearing that this meant USDS did not intend to process the request.

USDS did not and had good reasons not to brief this important issue. In addition, as Administrator Gleason explains, if USDS is required to comply with the Court's order, it will have to (as a Presidential Records Component) now create a FOIA operation from scratch; it "has adopted no FOIA regulations, hired no document processors or reviewers, and has no dedicated budget for these activities." Gleason Decl. ¶ 28. "To complete all of these tasks will divert significant time and resources from an organization that is charged with advising the President and others on high-priority projects of this Administration." *Id.*

Of course, if USDS is ultimately determined to be subject to FOIA, these will all be tasks USDS will need to undertake. But that should not happen before the Court resolves that important question on the merits in response to USDS's forthcoming summary judgment motion—or at least before the Court resolves the substantial grounds for reconsideration set forth in this motion. And the minimal delay associated with the requested stay or extension does not compare to the concern that animated the Court's preliminary-injunction order: that CREW would suffer irreparable harm from "indefinite delay" in the release of USDS records. PI Opinion at 22, 31-32.

## CONCLUSION

For the foregoing reasons, the Court should grant reconsideration of the above-referenced portions of its opinion and order and, in the interim, issue a stay or extension of those portions pending its consideration of this motion and consideration of USDS's forthcoming motion for summary judgment.

Dated: March 14, 2025                     Respectfully submitted,

Respectfully submitted,

                                          YAAKOV M. ROTH
                                          Acting Assistant Attorney General

                                          ELIZABETH SHAPIRO

21

Deputy Branch Director

*/s/ Andrew M. Bernie*
Andrew M. Bernie
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 353-7203
andrew.m.bernie@usdoj.gov

*Attorneys for Defendant*