**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>U.S. DOGE SERVICE, *et al.*,<br><br>　　　　　　Defendants. | Case No. 1:25-cv-00511-CRC |

<u>**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S
MARCH 10, 2025 OPINION AND ORDER, FOR AN ORDER SETTING AN
EXPEDITED BRIEFING SCHEDULE, AND FOR A STAY OR EXTENSION OF THIS
COURT'S MARCH 10, 2025 OPINION AND ORDER**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT .......................................................................................................................... 5

I.      DOGE's motion for reconsideration should be denied.................................................. 5

    A.      Legal standard ...................................................................................................... 5

    B.      The Court's irreparable harm ruling was not clearly erroneous. ................................. 6

    C.      DOGE waived its new arguments and its "new" evidence is neither new nor
        timely. ................................................................................................................... 9

    D.      The Court's order was well within its equitable discretion and CREW's requested
        relief. ................................................................................................................... 13

II.     DOGE has failed to demonstrate that a stay is warranted. ................................................. 16

III.    If the Court grants reconsideration, CREW is entitled to expedited discovery prior to
    any summary judgment briefing on whether DOGE wields substantial independent
    authority. ................................................................................................................... 19

**CONCLUSION** ................................................................................................................... **23**

# TABLE OF AUTHORITIES

## CASES

*AARP v. EEOC,*
    292 F. Supp. 3d 238 (D.D.C. 2017) ........................................................................ 5

*Anyanwutaku v. Moore,*
    151 F.3d 1053 (D.C. Cir. 1998) ............................................................................. 5

*Aracely, R. v. Nielsen,*
    319 F. Supp. 3d 110 (D.D.C. 2018) ...................................................................... 13

*Armstrong v. Exec. Off. of the President,*
    90 F.3d 553 (D.C. Cir. 1996) .......................................................... 11, 19, 20, 21

*Banks v. Booth,*
    518 F. Supp. 3d 57 (D.D.C. 2021) ................................................ 1, 5, 6, 9, 11

*Brennan Ctr. for Just. at NYU Sch. of L. v. U.S. Dep't of Com.,*
    498 F. Supp. 3d 87 (D.D.C. 2020) ................................................................. 14, 16

*Cause of Action Inst. v. Off. of Mgmt. & Budget,*
    10 F.4th 849 (D.C. Cir. 2021) ............................................................................. 22

*Comm. on the Judiciary v. McGahn,*
    407 F. Supp. 3d 35 (D.D.C. 2019) ................................................................. 16, 17

*CREW v. Office of Admin.,*
    566 F.3d 219 (D.C. Cir. 2009) .................................................................. 19, 21, 22

*CTS Corp. v. EPA,*
    759 F.3d 52 (D.C. Cir. 2014) ............................................................................... 9

*Cuomo v. U.S. Nuclear Regul. Comm'n,*
    772 F.2d 972 (D.C. Cir. 1985) ............................................................................ 16

*EPIC v. Off. of Homeland Sec.,*
    No. 02-cv-00620-CKK (D.D.C. Dec. 26, 2002) ........................................... 20, 21

*Firestone v. Firestone,*
    76 F.3d 1205 (D.C. Cir. 1996) ..................................................................... 5, 9, 11

*First Am. Bank, N.A. v. United Equity, Corp.,*
    89 F.R.D. 81 (D.D.C. 1981) .................................................................................. 8

*Greenlaw v. United States*,
    554 U.S. 237 (2008) ............................................................................................. 13

*Hisp. Affs. Project v. Perez*,
    319 F.R.D. 3 (D.D.C. 2016) ................................................................................... 6

*Islamic Am. Relief Agency v. Gonzales*,
    477 F.3d 728 (D.C. Cir. 2007) ............................................................................ 22

*Johnson v. District of Columbia*,
    266 F. Supp. 3d 206 (D.D.C. 2017) ..................................................................... 11

*Lucia v. SEC*,
    585 U.S. 237 (2018) ............................................................................................. 21

*Meyer v. Bush*,
    No. 88-cv-3112-JHG, 1991 WL 212215 (D.D.C. Sept. 30, 1991) ....................... 21

*Meyer v. Bush*,
    981 F.2d 1288 (D.C. Cir. 1993) ........................................................................... 21

*N.S. v. Hughes*,
    No. 20-cv-101-RCL, 2020 WL 4260739 (D.D.C. July 24, 2020) .................... 5, 12

*Nat'l Trust v. U.S. Dep't of State*,
    834 F. Supp. 453 (D.D.C. 1993) ............................................................................ 9

*New Mexico v. Musk*,
    No. 25-cv-429-TSC, 2025 WL 783192 (D.D.C. Mar. 12, 2025) ..................... 18, 22

*New York v. United States*,
    880 F. Supp. 37 (D.D.C. 1995) .............................................................................. 6

*Niedermeier v. Off. of Baucus*,
    153 F. Supp. 2d 23 (D.D.C. 2001) ....................................................................... 12

*Nippon Shinyaku Co., Ltd. v. Iancu*,
    369 F. Supp. 3d 226 (D.D.C. 2019) ....................................................................... 5

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................................. 16

*Oceana, Inc. v. Evans*,
    389 F. Supp. 2d 4 (D.D.C. 2005) ........................................................................... 6

*Owen-Williams v. BB & T Inv. Servs., Inc.*,
    797 F. Supp. 2d 118 (D.D.C. 2011) ................................................................ 1, 9

*Protect Democracy Project, Inc. v. U.S. Dep't of Justice*,
    498 F. Supp. 3d 132 (D.D.C. 2020) .................................................................. 15

*Shvartser v. Lekser*,
    330 F. Supp. 3d 356 (D.D.C. 2018) ................................................................ 1, 9

*Soucie v. David*,
    448 F.2d 1067 (D.C. Cir. 1971) ....................................................................... 10

*Steele v. United States*,
    657 F. Supp. 3d 23 (D.D.C. 2023) ................................................................. 5, 16

*Trump v. Int'l Refugee Assist. Proj.*,
    582 U.S. 571 (2017) ...................................................................................... 13, 16

*United States v. Burwell*,
    253 F. Supp. 3d 283 (D.D.C. 2017) .................................................................... 5

*United States v. Navarro*,
    No. 22-cv-2292-CKK (D.D.C. Sept. 27, 2022) ................................................... 8

*Winter v. Nat. Res. Def. Couns., Inc.*,
    555 U.S. 7 (2008) ............................................................................................. 13

*Wood v. Milyard*,
    566 U.S. 463 (2012) ..................................................................................... 9, 10

**STATUTES**

5 U.S.C. § 552 ...................................................................................................... 14

**OTHER AUTHORITIES**

Wright et al., 11A Federal Practice and Procedure (2013) ...................................... 13

Wright & Miller, 10A Federal Practice and Procedure Civil (West 2022) ................. 8

**RULES**

Fed. R. Civ. P. 56 ................................................................................................. 22

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. II, § 2, cl. 2 .................................................................................. 21

## INTRODUCTION

The U.S. DOGE Service wants a do-over.[1] It made a strategic decision to withhold certain arguments and evidence in opposing CREW's motion for a preliminary injunction because it assumed the motion would fail on other grounds. That assumption proved incorrect. So DOGE now seeks another bite at the apple. Unfortunately for DOGE, a "motion for reconsideration [is not] an avenue to 'present theories or arguments that could have been advanced earlier.'" *Banks v. Booth*, 518 F. Supp. 3d 57, 63 (D.D.C. 2021) (quoting *Shvartser v. Lekser*, 330 F. Supp. 3d 356, 360 (D.D.C. 2018)). Nor may it "be used to rescue a litigant from strategic choices that later turn out to be improvident." *Owen-Williams v. BB & T Inv. Servs., Inc.*, 797 F. Supp. 2d 118, 128 (D.D.C. 2011).

DOGE's blunderbuss motion—which seeks three discrete forms of relief—should be denied in full. DOGE's request for reconsideration on irreparable harm merely accuses the Court of clear error for not addressing arguments DOGE chose not to make. Its demand for reconsideration on the "important threshold legal issue" of DOGE's substantial independent authority tries to excuse its odd (but purposeful) choice not to dispute the issue by offering largely irrelevant evidence that DOGE chose to withhold until now. And its plea of manifest injustice would require the Court to close its eyes to its own equitable powers, DOGE's conduct, and the record. Finally, DOGE's cursory request for a stay does not attempt to satisfy its heavy burden for one, offering only forfeited arguments that exaggerate DOGE's burden if it complies with the Court's narrow March 10 Order.

---

[1] CREW refers here to the U.S. DOGE Service as "DOGE," rather than "USDS," per the Court's stated preference during the March 7, 2025 preliminary injunction hearing. The term "DOGE" is coterminous with the term "USDS" in CREW's prior briefing and includes the U.S. DOGE Service, its temporary organization, its detailees, and others who work on its behalf.

If the Court nonetheless grants reconsideration, it should permit CREW to conduct limited discovery before the parties proceed to summary judgment briefing on whether DOGE wields substantial independent authority. Recognizing that this is a fact-intensive inquiry, judges in this District have allowed such discovery to aid the analysis of whether components of the Executive Office of the President ("EOP") are subject to FOIA. If the Court is inclined to grant DOGE another bite at the apple (and it should not), then it should at least afford CREW the opportunity to fully develop the factual record on this threshold question.

## BACKGROUND

On January 24, 2025, CREW submitted an expedited Freedom of Information Act ("FOIA") request to DOGE seeking various records that would shed public light on its secretive structure and operations. PI Mem. Op. at 10, ECF No. 18. CREW submitted the request through the Office of Management and Budget ("OMB"), per OMB's instructions. *Id*. OMB granted expedited processing of the DOGE request on January 29. *Id.* at 10-11.

On February 7, CREW sent a letter to DOGE requesting expedited production of the requested documents by March 1, because members of Congress had begun to signal that DOGE's rapid and unprecedented takeover of federal operations would play a central role in the upcoming negotiations to fund the government beyond March 14. Compl. Ex. J, ECF No. 2-12. By February 20, the situation had become desperate. Given DOGE's escalating control over federal functions and employees, members of Congress made clear that they required basic information about DOGE's ongoing and planned activities to responsibly determine how to fund the government. CREW PI Mem. at 1-10, ECF No. 2-1.

On February 19, CREW emailed Defendants' counsel to inform them of CREW's intent to file this suit under FOIA and the Federal Records Act ("FRA"), and a motion for preliminary

2

injunction compelling DOGE to produce documents on an expedited basis. CREW PI Reply Supp. Ex. C, ECF No. 13-4. CREW attached its FOIA request to DOGE, the letter it received granting expedition, and its February 7 letter, and asked DOGE's counsel for its position. *Id.* CREW received an acknowledgment email and nothing else. *Id.*

On February 20, CREW filed its complaint and motion. The motion laid out the extensive public record of DOGE's unprecedented operations and the Congressional and public outcry about it. CREW PI Mem. at 1-12, 17-38. The motion also argued at length that the executive orders establishing and empowering DOGE and the public record of its conduct made clear that DOGE wields "substantial independent authority" from the President, making it a de facto "agency" subject to FOIA and the FRA under longstanding precedent. *Id.* at 18-25.

The Court ordered DOGE to respond by February 27 and set a hearing for March 7. Min. Order (Feb. 22, 2025). In its February 27 opposition to CREW's preliminary injunction motion, DOGE did not object to CREW's submission of its FOIA request through OMB or OMB's grant of expedition, did not dispute its substantial independent authority for purposes of FOIA and the FRA, and made no argument regarding any burdens it would face in complying with CREW's request. *See generally* Defs.' PI Opp., ECF No. 10. DOGE chose to make only cursory assertions—buried in footnotes—that it was exempt from FOIA as a component of the Executive Office of the President ("EOP"), and insisted that whether FOIA applied to it was "a question for the merits . . . once Defendants have had an opportunity to answer the complaint in the ordinary course" that "should not be decided in the context of a preliminary-injunction motion." *Id.* at 8 n.2, 20 n.4. DOGE further argued that CREW would not suffer irreparable harm absent a preliminary injunction because the requested records would retain their value even after Congress determined how to fund the government. *Id.* at 13-16. CREW filed its reply on March

4, providing more evidence from the public record on the public debate about DOGE and narrowing the requests for which it sought relief. CREW PI Reply at 6-20, ECF No. 13.

On March 6, DOGE reversed course and denied CREW's FOIA request by email to counsel. Ex. A; *see also* Hr'g Tr. 3:23-4:4, Ex. B. During the Court's March 7 hearing on CREW's motion, DOGE offered no new arguments and explained that it did not dispute its substantial independent authority because it assumed its other arguments would carry the day. *See* Ex. B at 86:5-87:6. DOGE's gamble was wrong. On March 10, the Court partially granted CREW's motion, ordered DOGE to begin expedited processing of CREW's narrowed requests and the parties to meet and confer on a proposed production schedule, set a deadline of March 20 for DOGE to provide an estimate of the total number of responsive documents, and ordered the parties to report back on March 27. PI Order, ECF No. 17.

DOGE now seeks partial reconsideration and a stay of the Court's March 10 Order, and expedited summary judgment briefing solely on the question of whether it is subject to FOIA. DOGE's motion advances arguments and evidence that it chose to withhold in opposing CREW's motion. Defs.' Mem. at 10-21, ECF No. 20-1. It claims the Court's ruling on irreparable harm was clearly erroneous because, in its estimation, CREW's FOIA claim could be fully litigated (inclusive of appeals) before any irreparable harm from nondisclosure materializes. *Id.* at 11-13. DOGE argues it did not previously know that it needed to dispute the "important threshold legal issue" of its substantial independent authority, even though "CREW briefed" the issue "at length in its preliminary injunction motion." *Id.* at 12-17. It further claims that a declaration of DOGE's purported Acting Administrator—which it easily could have submitted in opposition to CREW's preliminary injunction motion—constitutes newly available evidence. *Id.*

And it insists the Court worked a manifest injustice by granting equitable relief within the scope

of (though not precisely the same as) that sought by CREW. *Id.* at 17-20.

DOGE's motion should be denied in full and this Court's March 10 Order should remain

in effect, including DOGE's imminent March 20 deadline to "provide an estimate of the volume

of responsive records to CREW's FOIA requests." PI Order.

## ARGUMENT

**I.    DOGE's motion for reconsideration should be denied.**

### A.  Legal standard

"Rule 59(e) is the appropriate standard by which to assess a motion to reconsider a

preliminary injunction." *N.S. v. Hughes*, No. 20-cv-101-RCL, 2020 WL 4260739, at *1 (D.D.C.

July 24, 2020). "Rule 59(e) [motions] are 'disfavored' and 'the moving party bears the burden of

establishing "*extraordinary circumstances*" warranting relief.'" *Banks*, 518 F. Supp. 3d at 62-63

(quoting *United States v. Burwell*, 253 F. Supp. 3d 283, 285 (D.D.C. 2017)). Such "extraordinary

circumstances" are limited to (1) an "intervening change of controlling law," (2) "the availability

of new evidence," or (3) "the need to correct a . . . manifest injustice." *Firestone v. Firestone*, 76

F.3d 1205, 1208 (D.C. Cir. 1996).[2]

Whether brought "under either Rule 54(b) or Rule 59(e)," a motion for reconsideration

"is not 'simply an opportunity to reargue facts and theories upon which a court has already

ruled.'" *Banks*, 518 F. Supp. 3d at 63 (quoting *New York v. United States*, 880 F. Supp. 37, 38

---

[2] DOGE appears to agree Rule 59(e) governs its reconsideration request. Although its motion fails to identify the rule on which it is based, it cites cases applying Rule 59(e). *See* Defs.' Mem. at 10-11 (first citing *AARP v. EEOC*, 292 F. Supp. 3d 238, 241 (D.D.C. 2017); and then citing *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057-58 (D.C. Cir. 1998)). DOGE is foreclosed from arguing that a different rule, such as Rule 54(b), should apply. *See Steele v. United States*, 657 F. Supp. 3d 23, 44 (D.D.C. 2023) (quoting *Nippon Shinyaku Co., Ltd. v. Iancu*, 369 F. Supp. 3d 226, 239 n.8 (D.D.C. 2019)) ("Arguments raised for the first time in a reply brief are waived.").

(D.D.C. 1995)). "Nor is a motion for reconsideration an avenue to 'present[] theories or arguments that could have been advanced earlier.'" *Id.*; *see also Oceana, Inc. v. Evans*, 389 F. Supp. 2d 4, 8 (D.D.C. 2005) ("Rule 59 was not intended to allow a second bite at the apple."). Indeed, "once the parties have 'battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Banks*, 518 F. Supp. 3d at 63 (quoting *Hisp. Affs. Project v. Perez*, 319 F.R.D. 3, 6 (D.D.C. 2016)).

Here, DOGE fails to identify any intervening change of controlling law, new evidence, or need to correct a manifest injustice. It simply wants a do-over. Specifically, it seeks another chance to offer arguments and evidence it had ample notice and opportunity to submit the first go-round, before the Court ruled on CREW's motion. DOGE thus falls far short of its heavy burden to show that "extraordinary circumstances" warrant reconsideration. Its motion should be summarily denied.

### B.  The Court's irreparable harm ruling was not clearly erroneous.

DOGE asserts that the Court's irreparable harm ruling rested on a flawed premise—which the Court stated explicitly at the March 7 hearing without objection from DOGE's counsel, *see* Ex. B at 7:15-21—that resolving DOGE's "FOIA status before ordering processing and production would take years, resulting in indefinite delay." Defs.' Mem. at 11. Not so, DOGE now asserts, because the question of DOGE's FOIA status can be fully litigated (inclusive of appeals) with only "modest delay" to any processing and release of records, and because CREW could have sought expedited consideration of the question by filing a procedurally irregular summary judgment motion at the outset of the case. Defs.' Mem. at 12-13. Neither argument withstands scrutiny.

The Court and all parties are well aware of how litigation and FOIA processing works. It defies experience and logic to expect that piecemeal litigation of DOGE's FOIA status could be

fully resolved—by this Court, the Court of Appeals, and potentially the Supreme Court—with only "modest delay" to the potential release of DOGE's records. The Court's finding that irreparable harm would befall CREW and the public without expedited processing of CREW's FOIA request was plainly correct—and certainly comes nowhere close to "clear error" or "manifest injustice." The Court's order was fully consistent with case law holding that the public must receive timely information pertaining to debates about issues of vital national importance to which it is entitled, particularly given the rapid pace, nature, and impact of DOGE's work and the overwhelming public interest in it. *See* PI Mem. Op. at 31-34. The Court rightly determined that DOGE must expedite processing and production for a small number of documents now so that their production is not delayed until they become stale. *Id.*

All DOGE musters to avoid that obvious conclusion is bald speculation that its agency status could be fully litigated with only "modest delay." Defs.' Mem. at 11. Full stop. DOGE offers no facts, no commitments, and no case law on which the Court could conceivably rely to evaluate DOGE's position. And it conspicuously avoids committing any resources to ensure timely processing and production if CREW were to prevail in establishing FOIA's applicability to DOGE after fully litigating the issue.[3]

Instead, DOGE attempts a bait-and-switch in which it chides *CREW* for failing to take the unusual step of filing a pre-answer summary judgment motion on DOGE's agency status. *See*

---

[3] That DOGE may be acting with dilatory motives is a genuine concern. CREW noted in its briefing the furtiveness and at times outright hostility with which DOGE and the wider Administration has approached routine questions about how DOGE operates, CREW PI Reply at 10, and the Court likewise noted DOGE's "unusual secrecy," PI Mem. Op. at 35-36. Now, rather than cooperating with CREW as envisioned in the Court's order, DOGE is wasting time and resources by belatedly raising arguments that it easily could have raised earlier, all in an attempt to avoid an initial disclosure. As described below, it is doing so based in part on a declaration that appears to drastically overstate the burden to DOGE in complying with what, in the end, was a narrow order. *See infra* Part II.

Defs.' Mem. at 12. This argument gets things backwards. Moving for a preliminary injunction—
and specifically *not* filing a pre-answer motion for summary judgment—is the proper procedure
in this District for preventing irreparable harm caused by delayed release of FOIA records. *See*
CREW PI Mem. at 15 n.45 (citing ten cases from this District granting such motions); Minute
Order, *United States v. Navarro*, No. 22-cv-2292-CKK (D.D.C. Sept. 27, 2022) (summarily
denying a pre-answer summary judgment motion and explaining that "the longstanding practice
of this jurisdiction" is to "defer consideration of any motion for summary judgment until after
the filing of Defendant's answer," but indicating that a preliminary injunction motion would
have been permitted) (citing *First Am. Bank, N.A. v. United Equity, Corp.*, 89 F.R.D. 81, 87
(D.D.C. 1981); Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2717 (West 2022)). DOGE itself
claimed in earlier briefing that its agency status was "a question for the merits . . . *once
Defendants have had an opportunity to answer the complaint in the ordinary course*." Defs.' PI
Opp. at 20 n.4 (emphasis added). Now, by contrast, DOGE insists that a pre-answer summary
judgment motion would have been the "ordinary course." But that is not the rule in this District.

        Nor is it apparent why DOGE believes that the Court could not address its agency status
in the context of a preliminary injunction motion. Likelihood of success *on the merits* is, of
course, the first step in the preliminary injunction analysis, *id.* at 10, and DOGE recognized that
CREW "devote[d] significant space to arguing that [DOGE] is an agency subject to FOIA," *id.* at
20 n.4. Courts routinely address merits questions of first impression when ruling on preliminary
injunction motions. A party opposing such a motion is not excused from addressing the
likelihood of success on the merits of a claim simply because it is novel or complex.

        Moreover, if DOGE genuinely thought that expedited summary judgment briefing was
the proper mechanism for resolving its agency status, it could have filed a motion requesting

such a briefing schedule prior to the March 10 Order. It did not. Instead, it waited until after it

lost the motion to raise the proposal. This is the very definition of using "reconsideration [as] an

avenue to 'present[] theories or arguments that could have been advanced earlier.'" *Banks*, 518

F. Supp. 3d at 63 (quoting *Shvartser*, 330 F. Supp. 3d at 360).

> ### C. DOGE waived its new arguments and its "new" evidence is neither new nor timely.

DOGE seeks to relitigate whether FOIA applies to it on the ground that it lacked

sufficient notice and opportunity to litigate that issue. *See* Defs.' Mem. at 13-20. That argument

does not pass the laugh test, let alone approach "manifest injustice." *Firestone*, 76 F.3d at 1208

(quoting *Nat'l Trust v. U.S. Dep't of State*, 834 F. Supp. 453, 455 (D.D.C. 1993)).

As the Court explained, DOGE was faced with a fully briefed threshold legal issue that it

chose not address because it assumed CREW's motion would fail on other grounds. *See* PI Mem.

Op. at 27-28. That assumption proved incorrect. DOGE cannot now "escape the consequences of

refusing its opportunity to refute any of CREW's allegations suggesting that USDS is acting with

substantial independent authority," especially where this "decision" appears to have been

"strategic." *Id.* at 28 & n.3. DOGE's willful refusal to respond to CREW's arguments on this

threshold merits question resulted in waiver (or at least forfeiture) of the issue for purposes of

CREW's preliminary injunction motion. *See Wood v. Milyard*, 566 U.S. 463, 474 (2012)

(waiver); *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) (forfeiture).

A "motion for reconsideration [is not] an avenue to 'present theories or arguments that

could have been advanced earlier.'" *Banks*, 518 F. Supp. 3d at 63 (quoting *Shvartser*, 330 F.

Supp. 3d at 360). Nor may it "be used to rescue a litigant from strategic choices that later turn

out to be improvident." *Owen-Williams*, 797 F. Supp. 2d at 128. And yet, DOGE is now seeking

to do just that on what it now admits is an "important threshold legal issue" that "CREW briefed

. . . at length in its preliminary injunction motion." Defs.' Mem. at 3, 12. In fact, DOGE now asserts that whether DOGE is covered by FOIA is so important, and DOGE's opposition to it so predictable, that CREW should have taken the unusual step of immediately moving for summary judgment on that issue. *See supra* Part I.B.

Three additional considerations confirm that DOGE's decision not to address DOGE's substantial independent authority was purely strategic. First, CREW's motion sought the first preliminary ruling that DOGE, a newly-created EOP component, is subject to FOIA. *Of course* the Court was likely to consider FOIA's applicability to DOGE and, under longstanding Circuit precedent, that necessarily requires an inquiry into whether DOGE wields substantial independent authority. *See, e.g.*, *Soucie v. David*, 448 F.2d 1067, 1073 (D.C. Cir. 1971). As DOGE itself notes, the issue had already been raised peripherally in other litigation. *See* Defs.' Mem. at 12.

Second, DOGE argued that it was not subject to FOIA to the extent it found it strategically useful, asserting that (1) DOGE is not subject to FOIA because it is a standalone component of the EOP, and (2) the question of FOIA's applicability to DOGE was a question for the merits (again proving that DOGE knew the importance of the issue at the time). Defs.' PI Opp. at 8 n.2, 20 n.4. DOGE's problem is not that it was not aware of or failed to appreciate that FOIA's applicability to it was in dispute; its problem is that it recognized and raised the issue but chose not to make an essential argument "After expressing its clear and accurate understanding of the . . . issue," DOGE "deliberately steered the District Court away from the question" of its status as an agency, thus waiving arguments it belatedly seeks to litigate now, *Wood*, 566 U.S. at 474.

10

Third, DOGE also needed to dispute its substantial independent authority to oppose CREW's FRA claim and chose not to do so. *See* CREW PI Mem. at 18 (citing *Armstrong v. Exec. Off. of the President*, 90 F.3d 553, 556 (D.C. Cir. 1996) ("[T]he coverage of the FRA is coextensive with the definition of 'agency' in the FOIA.")). CREW's FRA claim was based on a separate irreparable harm theory and was untethered to the particulars of CREW's FOIA requests. DOGE may (wrongly) claim that the nature of its dispute over the FOIA claim excuses its failure to brief that threshold issue, but nothing but a strategic choice could explain its failure to brief the issue on CREW's FRA claim.

For the same reasons, the Court should also disregard DOGE's new argument, discussed further below, that complying with the Court's order to produce a limited number of documents is so burdensome to DOGE that it should outweigh the public interests established by FOIA and in understanding how DOGE operates. Defs.' Mem. at 20-21. DOGE chose silence on this point in its opposition to CREW's motion, apparently on the mistaken belief that the Court would not reach it, leaving the Court to issue its order on the record before it. Again, DOGE's strategic miscalculation results in a waiver, and falls far short of the high bar for reconsideration under either Rule 59(e) or Rule 54(b). *See Banks*, 518 F. Supp. 3d at 62-63; *Firestone*, 76 F.3d at 1208.

Nor does the belated declaration of DOGE's purported Acting Administrator, Amy Gleason, provide grounds for reconsideration. Recall that reconsideration requires the movant to establish "extraordinary circumstances." *Banks*, 518 F. Supp. 3d at 63. New evidence can only meet that high bar where it is both new and previously unavailable to the movant. *Firestone*, 76 F.3d at 1208; *see also Johnson v. District of Columbia*, 266 F. Supp. 3d 206, 211 (D.D.C. 2017) ("Rule 59(e) motions on the basis of new evidence are restricted to evidence that is 'newly discovered or previously unavailable despite the exercise of due diligence.'") (quoting

11

*Niedermeier v. Off. of Baucus*, 153 F. Supp. 2d 23, 29 (D.D.C. 2001)). Ms. Gleason's declaration fails on both counts.

Nothing in Ms. Gleason's declaration is new in any sense. "Courts routinely deny Rule 59(e) motions where all relevant facts were known by the party prior to the entry of judgment and the party failed to present those facts." *Niedermeier*, 153 F. Supp. 2d at 29. Ms. Gleason's declaration provides nothing more than spin on the plain text of multiple executive orders pertaining to DOGE's work, legal conclusions, and conclusory factual assertions that (if true) should have been known to DOGE well before the Court's March 10 Order. Gleason Decl. at 1-5, ECF No. 20-2. DOGE's "complete omission" of facts that were "solely in the government's possession" "is indicative of just how far-fetched this request for reconsideration really is." *N.S.*, 2020 WL 4260739, at *2.

DOGE also does not and cannot attempt to claim that Ms. Gleason's declaration and its contents were previously unavailable. DOGE instead admits it chose not to submit the declaration because it thought it had "good reasons for not offering [it] earlier." Defs.' Mem. at 13. As noted, those "good reasons" were a strategic miscalculation. *See supra* at 9-11.[4]

Even if the Court forgives DOGE's choice to withhold this information until this late date and considers Ms. Gleason's declaration, it would not move the needle on reconsideration. As described below, Ms. Gleason's declaration raises more questions than it answers. Most significantly for purposes of reconsideration, her declaration does not purport to dispute the accuracy of any of the dozens of public reports cited in CREW's FOIA requests and briefing of

---

[4] Although Ms. Gleason's declaration conspicuously omits the date on which she became Acting DOGE Administrator, she reportedly held that position before DOGE opposed CREW's motion on February 27. *See* CREW PI Reply at 10. And while DOGE has refused to tell other judges of this Court who, if anyone, the DOGE Administrator was before Ms. Gleason, that person was previously available to DOGE to submit a declaration as well. *See id.*

DOGE exercising substantial independent authority. It provides only Ms. Gleason's conclusory characterizations of DOGE's purported operations, some of which (most notably, Ms. Gleason's conclusory statement that DOGE merely advises the President) are inconsistent with DOGE's charter documents. Gleason Decl. at 1-4. Ms. Gleason's declaration offers far too little, far too late.

### D.  The Court's order was well within its equitable discretion and CREW's requested relief.

DOGE's various arguments suggesting that the Court's March 10 Order was clearly erroneous or worked a manifest injustice do not withstand the slightest scrutiny. "Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assist. Proj.*, 582 U.S. 571, 579 (2017) (citing *Winter v. Nat. Res. Def. Couns., Inc.*, 555 U.S. 7, 20, 24 (2008)). "The purpose of such interim equitable relief is . . . to balance the equities as the litigation moves forward." *Id*. at 580. "In the course of doing so, a court 'need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular case.'" *Id.* (quoting Wright et al., 11A Federal Practice and Procedure § 2947, at 115 (2013)). "This Court's discretion in granting preliminary injunctive relief is therefore not constrained by the relief Plaintiff[] explicitly seek[s]." *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 133 (D.D.C. 2018).

Further, "[i]n our adversary system . . . we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). As described above, the Court's decision was correct and DOGE's new arguments should and would have been brought far earlier but for DOGE's own strategic choices. The relief granted by the

Court was well within its equitable powers and addressed issues that were before the Court but that DOGE chose to handle to its detriment.

The expedited processing ordered by the Court was a necessary element of the relief sought by CREW, made so by both FOIA itself and DOGE's own conduct. The Court in *Brennan Center for Justice at NYU School of Law v. U.S. Department of Commerce*, 498 F. Supp. 3d 87, 99-100 (D.D.C. 2020) (citing 5 U.S.C. § 552(a)(6)(E)(iii)), on which DOGE relied extensively in its opposition to CREW's motion, Defs.' PI Opp. at 12-14, explained that production by date certain is itself premised on the statutory language that, *after a grant of expedited processing*, production must be "as soon as practicable." Here, CREW filed its complaint and preliminary injunction based on a FOIA request to DOGE *for which expedited processing was granted* on January 29, 2025, legally obligating DOGE to respond as soon as practicable. *See* 5 U.S.C. § 552(a)(6)(e); PI Mem. Op. at 10-11. CREW notified DOGE's counsel of its intent to file and of the relief sought, before it brought this action, attaching both CREW's FOIA request to DOGE and the letter it received granting expedition, and requested its position on the motion. CREW PI Mem. Supp. Ex. B. DOGE's counsel merely acknowledged receipt and chose not to raise an issue with the grant of expedited processing. *Id.* CREW's preliminary injunction motion thus did not explicitly seek an order requiring expedited processing by DOGE because, at that point, expedited processing had already been granted.

DOGE, meanwhile, stayed silent. It chose not to dispute the grant of expedited processing that preceded CREW's motion in its opposition on February 27. Defs.' PI Opp. at 8 n.2.[5] Not until March 6—one day before it needed to address its handling of CREW's FOIA request at the

---

[5] DOGE's decision not to do so was intentional, as its Motion seeks credit for its choice not to raise the issue. Defs.' Mem. at 20 n.5.

Court's March 7 hearing—did DOGE change course and for the first time deny CREW's FOIA request in full, Ex. A, compelling the Court to address whether CREW was entitled to expedited processing as a predicate to determining whether DOGE should be compelled to produce documents. During the hearing on CREW's Motion, DOGE's counsel likewise did not object that a grant of expedited processing to compel the production of documents after March 10—a clear possibility given the progress of the hearing—would be beyond the scope of CREW's requested relief. Ex. B at 4:14-5:23. Only now does DOGE finally make that claim. That DOGE's strategy failed is a function of its own choices, not a clear error by the Court.

The Court's judgment also pertained to the central issue in the case. CREW's FOIA request to DOGE, its request for expedited treatment (as granted by OMB), its February 7 letter asking for production by a date certain, its preliminary injunction motion and its reply in support were all based on an ever-growing public record of DOGE's outsized influence on the federal government. The Court noted on March 10 that the parties cited "at least fifty" news articles about DOGE in their briefing alone. PI Mem. Op. at 29. Further, CREW's request for production by March 10 was premised on the need for both Congress and the public to have information about DOGE *specifically* because of its continued impact on the operations of the federal government, which CREW and the members of Congress it cited in its briefing believe is integral to the determination of how the government should be funded. CREW Pl. Mot. at 1-3, 8-12, 27-29, 32-38; CREW Pl. Rep. at 1-2, 6-12, 15-18.

Further, this Court's approach accords with several other cases that denied production by a date certain, but still ordered processing and production on an expedited basis—including cases cited by DOGE. For example, in *Protect Democracy Project, Inc. v. U.S. Department of Justice*, 498 F. Supp. 3d 132, 142 (D.D.C. 2020), cited in DOGE's opposition (*see* Defs.' PI Opp. at 16),

the court denied the plaintiff's request for documents regarding the Department of Justice's voter fraud task force but ordered them processed by an indeterminate date to ensure that they were available while any inquiries about voter fraud were ongoing. *See also Brennan*, 498 F. Supp. 3d at 99-100 (denying production of documents regarding census apportionment by November 2, 2020 but ordering production completed by January 25, 2021). DOGE should have anticipated a similar outcome here given its own argument that the requested records would retain their value to the public *after* March 10. *See* Defs.' PI Opp. at 12-15.

In sum, the Court acted well within its "discretion and judgment" in issuing a preliminary injunction tailored to "meet the exigencies of [this] particular case." *Trump*, 582 U.S. at 579.

## II.    DOGE has failed to demonstrate that a stay is warranted.

DOGE falls woefully short of its burden to obtain a stay of this Court's March 10 preliminary injunction.[6] "The party seeking a stay bears the 'burden of showing that exercise of the court's extraordinary injunctive powers is warranted.'" *Comm. on the Judiciary v. McGahn*, 407 F. Supp. 3d 35, 38 (D.D.C. 2019) (quoting *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)). "There are four 'traditional' factors that govern a request for a stay: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)).[7] DOGE's

---

[6] DOGE labels its request as one for a stay or an extension of time, but no matter the terminology used, the requested relief would function as a stay of the Court's March 10 Order.

[7] DOGE again fails to identify any standard by which the Court should evaluate its request for a stay, thereby waiving any argument that another standard should apply. *See Steele*, 657 F. Supp. 3d at 44.

cursory, two-paragraph argument for a stay fails to meaningfully address any of these factors. *See* Defs.' Mem. at 20-21.

Although DOGE seeks a stay pending resolution of its motion for reconsideration and its forthcoming motion for summary judgment, it offers only dubious arguments for the former and no argument for why it is likely to succeed on the merits of the latter. *See Comm. on the Judiciary*, 407 F. Supp. 3d at 38-39. And despite recognizing that the "basis for injunctive relief in the federal courts has always been irreparable harm," Defs.' Mem. at 11, DOGE is entirely silent on what irreparable harm it would suffer if a stay is not issued. It is likewise silent on the substantial injury to CREW and the public if they continue to be kept in the dark about DOGE's operations, *see* PI Mem. Op. at 31-34, as well as the established public interests in the disclosure of the requested documents about DOGE specifically, *id.* at 35, fulfilling FOIA's purpose of informing the public generally, CREW PI Mem. at 42, and in ensuring that the government does not continue to act unlawfully through DOGE's evasion of its legal obligations, *id.* at 41. DOGE advances only conclusory assertions about the purported burden to DOGE, supported only by conclusory statements in Ms. Gleason's untimely declaration which, as described *supra* Part I.C, should be ignored.

DOGE's only argument—which it chose not to make when opposing CREW's motion— is that complying with the Court's order would unduly burden it because it would need to "create a FOIA operation from scratch" including "adopt[ing] FOIA regulations" and hiring "document processors or reviewers," without a dedicated budget to do so. Defs.' Mem. at 21. That is simply untrue and the latest example of DOGE's obstinance. As DOGE acknowledges immediately after listing these unnecessary costs to DOGE, the Court has not yet held that DOGE is subject to FOIA forever and all time. *Id.* It only ordered DOGE to produce a discrete set of organizational

charts, ethics documents, financial disclosures, directives, and communications regarding a specific set of topics as soon as practicable. PI Mem. Op. at 1. There is no reason such a limited production will require DOGE—which is led by purported technology and efficiency experts— to stand up a fully operational FOIA apparatus.[8]

Additional context underscores the argument's absurdity. First, the Court has given DOGE the opportunity to manage its burden by working with CREW to establish a schedule for the processing and rolling production of documents. PI Order. Yet DOGE's counsel has not acted on two requests from CREW's counsel to actually schedule that meet-and-confer, opting instead to circle the wagons and work to avoid its obligations under the March 10 Order. Second, two days after the Court's March 10 Order and two days before DOGE filed its motion, DOGE was ordered in *New Mexico v. Musk*, No. 25-cv-429-TSC, 2025 WL 783192 (D.D.C. Mar. 12, 2025), to produce documents and respond to interrogatories regarding its structure and operations. Surely whatever resources DOGE is utilizing to respond to that and other court orders should be available to respond to this one, which was issued first.

Third, DOGE does not dispute it was apportioned at least $39 million in funding in its first two months of existence. *See* CREW PI Mem. at 2. Yet based on Ms. Gleason's untimely declaration, DOGE apparently claims that that significant sum is going exclusively toward advising the President. *See* Defs.' Mem. at 21. While the record thoroughly refutes that characterization of DOGE's work, even if Ms. Gleason's declaration is credited, she offers no

---

[8] DOGE also suggests that the burden would be particularly pronounced given DOGE's role, according to more conclusory statements in Ms. Gleason's untimely declaration, of advising the President. Defs.' Mem. at 20-21. As explained *infra*, the accuracy of Ms. Gleason's characterizations of DOGE's work is doubtful and she also provides no detail that would allow the Court to evaluate how DOGE's substantial resources are actually allocated.

explanation why DOGE cannot spend a portion of that $39 million in taxpayer funds on compliance with its statutory obligations and this Court's Order.

Fourth, DOGE's entire premise is undercut by its continuous use of its resources to collect and publish public information from across the federal government on its website, DOGE.gov. At this point, DOGE is only increasing its costs by resisting its own promise to be transparent and increasing the number of communications that it will eventually need to produce.

### III.    If the Court grants reconsideration, CREW is entitled to expedited discovery prior to any summary judgment briefing on whether DOGE wields substantial independent authority.

If the Court grants reconsideration (and it should not), it should deny as premature Defendants' request to proceed immediately to summary judgment briefing on whether DOGE wields substantial independent authority. *See* Defs.' Mem. at 1. CREW has had no opportunity for discovery on this issue. Any summary judgment briefing would thus be based on Defendants' one-sided evidentiary presentation. *See, e.g.*, Gleason Decl. That would be improper because the D.C. Circuit has made clear that whether an EOP component wields substantial independent authority raises questions of fact. Specifically, the Circuit requires a functional analysis of activities the EOP component actually "performs *or* is authorized to perform." *CREW v. Office of Admin.* (*"OA"*), 566 F.3d 219, 224 (D.C. Cir. 2009) (emphasis added). An understanding of both the EOP component's "authority *and* operations" are "critical for determining whether [it] is subject to FOIA." *Id.* at 225 (emphasis added); *see also Armstrong*, 90 F.3d at 560 (court must evaluate whether the EOP component "*could* exercise substantial independent authority" and whether it "*does in fact* exercise such authority") (emphasis added).

For these reasons, judges in this District have granted discovery into EOP components' authority and operations to determine whether they are subject to FOIA. In *CREW v. OA*, "the district court allowed CREW to obtain more than 1300 pages of documents that shed light on

[the EOP's Office of Administration's ("OA's")] authority and operations," and CREW deposed OA's director—who submitted a sworn declaration in the case—"about OA's history of compliance with FOIA, *its interactions with federal agencies*, and the duties OA performs." 566 F.3d at 225-26 (emphasis added); *see also id.* at 221 (noting the district court allowed discovery "to explore 'the authority delegated to [OA] in its charter documents *and any functions that OA in fact carries out*'" in order to determine "whether 'OA acts with the type of substantial independent authority that has been found sufficient to make' other EOP units 'subject to FOIA.'") (emphasis added).

Similarly, in *EPIC v. Office of Homeland Security*, the district court granted limited discovery on whether an EOP component—the Office of Homeland Security—wielded substantial independent authority. *See* No. 02-cv-00620-CKK, ECF No. 11 (D.D.C. Dec. 26, 2002), (attached as Ex. C). The court rejected the government's attempt to confine the analysis to "statutes, executive orders and presidential directives," reasoning that "courts have looked beyond public documents in efforts to determine whether or not an entity was an agency for FOIA purposes." *Id.* at 12. The court added that "[s]uch evidence would be helpful especially in this case" because "the language" of the executive order "establishing the entity's power [was] broad and lacking in firm parameters." *Id.*

The *EPIC* court relied on *Armstrong v. Executive Office of the President*, 90 F.3d 553 (D.C. Cir. 1996), where the Circuit considered testimony of National Security Council ("NSC") staff members in deciding whether the NSC was a FOIA-covered agency. *See id.* at 561 (citing NSC staffer's deposition testimony that he did not "have the ability to issue instructions or directions to agencies" but "would merely convey a decision made by the President" or others on his behalf); *id.* at 559-60 (citing a different staffer's declaration in concluding that the "NSC has

a structure sufficiently self-contained that the entity could exercise substantial independent authority"). The *EPIC* court likewise cited the district court's decision in *Meyer v. Bush*, No. 88-cv-3112-JHG, 1991 WL 212215 (D.D.C. Sept. 30, 1991), *rev'd on other grounds*, 981 F.2d 1288 (D.C. Cir. 1993), which looked beyond executive orders and relied on letters, memoranda, and the Vice President's public statements in considering whether the Presidential Task Force on Regulatory Relief was an agency subject to FOIA. *See id.* at *4-*7.

These cases directly support CREW's entitlement to limited discovery on not only DOGE's "authority," but also its "operations"—*i.e.*, "any functions that [DOGE] *in fact* carries out." *CREW v. OA*, 566 F.3d at 225, 221 (emphasis added); *see Armstrong*, 90 F.3d at 560. As in *EPIC*, "[s]uch evidence would be helpful especially in this case" because "the language" of the executive orders establishing and empowering DOGE are "broad and lacking in firm parameters." *EPIC*, No. 02-cv-00620-CKK, ECF No. 11, at 12; *see* PI Mem. Op. at 23-24 (noting that executive orders broadly authorize DOGE "to implement the President's DOGE Agenda" and give it "the power to keep vacant career positions open unless an agency overrides their decision").[9]

Public statements of President Trump and Mr. Musk, as well as public reporting of DOGE's actions to date, further demonstrate that DOGE is in fact wielding "substantial authority

---

[9] Defendants wrongly seek to minimize the DOGE Team Leads' sweeping authority to hold open career vacancies at every executive branch agency, *see* Defs.' Mem. at 17—a power made all the more significant by the Trump administration's ongoing blitz of firings across the government. Defendants claim this power is insubstantial because agency heads can "freely veto" DOGE's decisions. *Id*. But in the analogous context of the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, the Supreme Court has made clear that the mere "capacity" to have the "last[]word" on agency decisions—even if subject to override by agency heads—constitutes "significant" federal authority. *See Lucia v. SEC*, 585 U.S. 237, 247-49 & n.4 (2018) (holding that SEC administrative law judges' authority to render decisions that "bec[a]me final" unless overridden by the SEC was "significant" and noting that "final decisionmaking authority is [not] a *sine qua non* of officer status").

over vast swathes of the federal government" and that Mr. Musk is DOGE's de facto leader. PI Mem. Op. at 24-27; *see* CREW PI Mem. at 20-25. These public statements and reports conflict with the untimely declaration of DOGE's purported Acting Administrator. *See* Gleason Decl. ¶¶ 6, 17-23 (stating "Elon Musk does not work at" DOGE and characterizing DOGE's functions as "limited"). Because Ms. Gleason's representations are cast into doubt by an extensive public record, including Defendant Musk's own admissible statements, *see* Fed. R. Evid. 801(d)(2), they should be tested through discovery. *See Cause of Action Inst. v. Off. of Mgmt. & Budget*, 10 F.4th 849, 858 n.4 (D.C. Cir. 2021) (recognizing that discovery may be granted in FOIA cases where agency affidavits are "called into question by contradictory evidence in the record").

Accordingly, if the Court grants reconsideration (and it should not), it should allow CREW to conduct limited written and oral discovery prior to summary judgment briefing, including depositions of Ms. Gleason and individuals publicly identified as wielding authority on behalf of DOGE. The requested discovery will be carefully tailored *not* to seek communications with the President or his immediate staff, which would not answer whether DOGE wields authority *independent* of the President. *E.g.*, *New Mexico v. Musk*, 2025 WL 783192, at *5 (granting such targeted discovery from DOGE).

To be sure, CREW will oppose in due course any summary judgment motion as premature under Fed. R. Civ. P. 56(d) (a "court may … allow time … to take discovery" where the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition"). But since the Court "has broad discretion in its handling of discovery," *CREW v. OA*, 566 F.3d at 225 (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 737 (D.C. Cir. 2007)), it may enter a discovery order now as a precursor to any summary judgment briefing.

## CONCLUSION

The Court should deny Defendants' motion for partial reconsideration, for an order setting an expedited briefing schedule, and for a stay of the Court's March 10, 2025 Memorandum Opinion and Order.

Dated: March 18, 2025

Respectfully submitted,

*/s/ Nikhel S. Sus*

Nikhel S. Sus (D.C. Bar No. 1017937)
Jonathan E. Maier (D.C. Bar No. 1013857)
Donald K. Sherman (D.C. Bar No. 90031810)
CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON
P.O. Box 14596
Washington, D.C. 20044
Telephone: (202) 408-5565
Fax: (202) 588-5020
nsus@citizensforethics.org
jmaier@citizensforethics.org
dsherman@citizensforethics.org

*Counsel for Plaintiff*