UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

    Plaintiff,

    v.

U.S. DOGE SERVICE, et al.,

    Defendants.

Case No. 25-cv-511 (CRC)

**OPINION AND ORDER**

    Citizens for Responsibility and Ethics in Washington ("CREW") filed two Freedom of Information Act ("FOIA") requests with the Office of Management and Budget ("OMB") and another request (the "USDS Request") with the newly formed United States DOGE Service ("USDS") seeking information about USDS. This unit within the Executive Office of the President has reportedly led the charge on personnel cuts across federal agencies, eliminated government contracts, and sent teams of employees to federal agencies to gain access to sensitive and classified data. CREW sought preliminary relief ordering production of all three of its requests by March 10, 2025, to enable Congress to use the requested information in its upcoming appropriations cycle.

    On March 10, 2025, the Court declined to order production of any of CREW's requested records requests by that date. But after the government indicated that it would not process the USDS Request at all, based on its view that USDS is not subject to FOIA, the Court entered a preliminary injunction finding that USDS is likely subject to FOIA and ordering production of the USDS Request based on an expedited schedule to be determined. The government now requests reconsideration of that injunction. Because the government's arguments could all have

been raised during the last round of briefing, none of them supplies a basis for reconsideration. USDS has also failed to show that it will experience an irreparable injury if it simply begins to process the USDS Request in accordance with the Court's order, without having to yet disclose any records, while merits briefing proceeds. The Court will, however, grant USDS a modest extension of the deadlines set forth in its prior order to ensure that USDS can provide meaningful responses to CREW's inquiries.

## I.   Background

The Court incorporates the factual and procedural background from its memorandum opinion partially granting CREW's motion for a preliminary injunction. See Citizens for Resp. & Ethics in Washington v. U.S. Doge Serv. ("CREW I"), No. 25-cv-511 (CRC), 2025 WL 752367, at *1–6 (D.D.C. Mar. 10, 2025). To briefly summarize: Since the start of President Trump's second term, USDS, a newly formed unit within the Executive Office of the President, has reportedly helmed efforts to drastically reduce the size and budget of the federal government. Seeking to learn more about this novel organization, CREW lodged two FOIA requests with OMB and one with USDS from December 2024 to January 2025. Then, in February 2025, CREW filed a motion for preliminary relief requiring OMB and USDS to fully process and produce, by March 10, 2025, all non-exempt records as to all three of its requests. Id. at *5. The Court granted CREW's motion in part and denied it in part. First, the Court held that CREW was not entitled to processing of any of the three requests by March 10, reasoning that the requested information "will not go 'stale' for CREW's own asserted purpose after March 10—to the contrary, it will likely remain valuable and relevant to all congressional funding decisions in the near future." Id. at *10.

The Court did, however, enter a preliminary injunction ordering expedited processing of the USDS Request. At oral argument, the government indicated that it did not plan to process that request at all based on its view that "USDS is not subject to FOIA." Id. at *5. Contrary to the government's position, the Court concluded that USDS is likely subject to FOIA because it is endowed with and is apparently exercising "substantial authority independent of the President." Id. at *11. Moreover, the relevant statutory factors likely entitled CREW to expedited processing of its request—consistent with the treatment OMB provided to its two requests. Id. at *13–14.

Next, as required to award preliminary relief, the Court considered whether a delay in processing while the case was litigated on a standard timeline would cause CREW irreparable harm. The Court concluded that CREW had made the necessary showing, reasoning that "Congress needs the requested information in a timely fashion to use it effectively," as does the electorate, who "may seek to influence congressional representatives to take action responsive to USDS at any point along the road." Id. at *15. And "the potential for irreparable harm under these circumstances exist[ed] because ongoing public and congressional debates about issues of vital national importance cannot be restarted or wound back." Id. at *14 (citation omitted). Again, these findings were consistent with OMB's implicit determination when it agreed to expedite CREW's request to it. The Court also exercised its inherent authority to enter a preservation order as to all documents responsive to CREW's three FOIA requests. Id. at *17. In accordance with its supervisory role, the Court directed the government to file a status report by March 20, 2025 setting forth "the estimated number of documents responsive to CREW's three requests." Id. at *17. The Court further ordered the parties to meet and confer and file a

joint status report by March 27 "proposing a schedule for expedited processing and rolling production of responsive records," in the near future. Id.

The government has chosen not to appeal to the Court's preliminary injunction order, which it had a right to do. See 28 U.S.C. § 1292(a)(1). Instead, USDS has now filed a motion for partial reconsideration. It asks the Court to reconsider the portions of its opinion directing USDS to (1) process the USDS Request; (2) provide, by March 20, 2025, an estimate of the volume of responsive records; and (3) propose, by March 27, 2025, a schedule for expedited processing and rolling production of responsive records. Mot. for Recons. at 1. USDS also asks the Court to enter an expedited summary-judgment briefing schedule directing USDS to file a motion for summary judgment on or before March 19, 2025 (which it says it intends to do in any case); CREW to file its opposition on or before March 24, 2025; and USDS to file any reply on or before March 26, 2025. Id. Lastly, USDS also seeks a stay or extension of the Court's March 20 and March 27 deadlines, pending consideration of its motion for reconsideration and forthcoming summary-judgment motion. Id. at 1, 3.[1] CREW opposes the motion for reconsideration.

For the reasons that follow, the Court will deny the government's motion for reconsideration and for a stay. The Court agrees with the government, however, that it would be preferable for the Court (and the D.C. Circuit on any appeal) to review the question of whether USDS is subject to FOIA on the merits based on a more complete record following expedited summary judgment proceedings. The government is free to file its summary judgment motion imminently, as it has indicated it will do. Once filed, the Court will entertain a motion from

---

[1] USDS does not seek reconsideration of the Court's document preservation order. Mot. for Recons. at 1 n.1.

CREW under Rule 56(d) to conduct limited discovery to develop facts relevant to USDS's status as an agency under FOIA. Summary judgment briefing would be completed promptly upon the conclusion of any limited discovery period.

## II. Legal Standards

"Although the Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration, courts generally analyze them under the standards for a motion to alter or amend judgment under Rule 59(e) or a motion for relief from a judgment or order under Rule 60(b)." S.E.C. v. Bilzerian, 729 F. Supp. 2d 9, 12 (D.D.C. 2010). Under Federal Rule of Civil Procedure 59(e), a party may move to "alter or amend a judgment no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quotation marks omitted).

However, "once the parties have 'battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" Banks v. Booth, 518 F. Supp. 3d 57, 63 (D.D.C. 2021) (quoting Hispanic Affairs Project v. Perez, 319 F.R.D. 3, 6 (D.D.C. 2016). Importantly, a "motion under either Rule 54(b) or Rule 59(e) is not 'simply an opportunity to reargue facts and theories upon which a court has already ruled.'" Id. (citation omitted). "Nor is a motion for reconsideration an avenue to "present[ ] theories or arguments that could have been advanced earlier." Id. (alteration in original) (citation omitted).

The government also seeks a stay of the Court's preliminary injunction ruling while the Court considers the motion for reconsideration and forthcoming summary judgment motion. A

5

party seeking a stay carries the "burden of showing that exercise of the court's extraordinary injunctive powers is warranted." Comm. on the Judiciary v. McGahn, 407 F. Supp. 3d 35, 38 (D.D.C. 2019) (citation omitted). "There are four 'traditional' factors that govern a request for a stay: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" Id. (citing Nken v. Holder, 556 U.S. 418, 426 (2009)).

### III. Analysis

USDS seeks reconsideration of the Court's holding that it is likely subject to FOIA based on a host of arguments that were available to USDS in the last round of briefing, all of which it deliberately chose to forego. USDS's litigation choice does not entitle it to a do-over, and the Court will accordingly deny its motion for reconsideration. The Court will, however, order an expedited briefing schedule once USDS files its motion for summary judgment. USDS has also failed to make a showing of irreparable injury required to justify a stay of the Court's preliminary injunction while summary-judgment briefing proceeds. But to ensure meaningful responses, the Court will grant USDS a seven-day extension until March 27, 2025, to provide an estimate of the number of documents responsive to the USDS Request, and an extension until April 3, 2025, for the parties to file a joint status report governing production.

### A. Motion for Reconsideration

USDS mounts several lines of attack in support of its motion for reconsideration. All are unavailing. And each argument could have been raised in USDS's initial opposition to CREW's motion for a preliminary injunction, so a motion for reconsideration is not the appropriate avenue through which to present them. See Banks, 518 F. Supp. 3d at 63.

      1. *Irreparable Harm*

  USDS first argues that the Court clearly erred in its analysis of irreparable harm because "the question of USDS's FOIA status would not take years to resolve and could be litigated on an expedited basis, as USDS now proposes." Mot. for Recons. at 11. This is a new argument. In its opposition and at oral argument, USDS did not propose an expedited summary judgment schedule, as it now has. See Mar. 7, 2025 Hrg. Tr. Nor did it premise its opposition to CREW's irreparable-harm argument on the difference between an expedited briefing schedule and immediate processing of the USDS Request. Instead, counsel for the government represented only that it would not process the USDS Request at all on the ground that USDS is not subject to FOIA. Id. at 3:23–4:1 ("Last night the Court -- the DOGE made a determination on that request. DOGE sent an email to plaintiff saying that the request was denied on the grounds that USDS is not an agency subject to FOIA."). Counsel advanced the position as to all three requests that "the Court should just treat it like it would sort of an ordinary FOIA case, perhaps a case where we would have arguments about how quickly to -- with plaintiffs about how to expedite[.]" Id. at 55:1–4. In response, the Court noted that proceeding along a regular schedule, motions for summary judgment would likely fall approximately six months after the government's 36-month processing estimate for the OMB requests. Id. at 55:5–12. Such a timeline, the Court observed, would seemingly tee up litigation over whether USDS is subject to FOIA "four years down the road." Id. at 55:12.

  Counsel for the government did not disagree with the Court's general timeline. Instead, counsel remarked that the parties "could submit status reports, perhaps competing status reports," and the Court could "order processing on a schedule" "based on discovery from the parties." Id. at 55:17–20. To be sure, counsel added that it was within *the Court's* prerogative to order

7

expedited briefing on the question whether USDS is subject to FOIA. Id. at 56:13–16. But the government did not propose such an expedited schedule as way of reducing the potential harm imposed by a processing delay. Accordingly, USDS's reliance on its newly proposed expedited schedule to mitigate the delay in releasing documents in the ordinary course is an "argument[] that could have been advanced earlier" and thus not an appropriate basis on which to seek reconsideration. Banks, 518 F. Supp. 3d at 63.

Moreover, if USDS does not even begin processing the request until after the question of whether it is subject to FOIA is litigated on the merits, a decision in CREW's favor will likely be followed by additional processing delays. Meanwhile, USDS appears to be taking new actions every day—for instance, earlier this week, USDS representatives reportedly "took over the U.S. Institute of Peace on Monday after threatening its officials with criminal prosecution." Karen DeYoung & Derek Hawkins, *DOGE plays hardball in U.S. Institute of Peace takeover*, Wash. Post (Mar. 19, 2025), https://www.washingtonpost.com/ national- security /2025 /03/18/ doge-institute-of-peace-takeover-musk-trump/. USDS must at least begin its processing efforts now, even if any actual production is deferred until after the Court's ruling on its motion of summary judgment, for Congress and the public to have a hope of receiving the requested information while it remains timely. This is especially so given USDS's suggestion that it has little infrastructure in place to handle FOIA requests. See infra at 15–17.

The government also faults *CREW* for not "immediately mov[ing] for summary judgment" and thereby avoiding any "modest delay." Mot. for Recons. at 12. This argument is beside the point. CREW believed it was entitled to preliminary relief and filed a motion seeking just that. It is the government who now requests expedited summary-judgment briefing as an alternative to the preliminary relief that CREW already won from this Court. CREW was well

within its rights to seek preliminary relief, and its decision to do so rather than file an expedited summary-judgment motion reflected its view of the severity of the potential harms. See Opp'n at 8 ("Moving for a preliminary injunction— and specifically *not* filing a pre-answer motion for summary judgment—is the proper procedure in this District for preventing irreparable harm caused by delayed release of FOIA records."). For all these reasons, the Court concludes that it did not clearly err in holding that the delay in releasing documents responsive to the USDS request if this case were treated as a run-of-the-mine FOIA case—the government's only alternative proposal to the Court at the time—would impose irreparable harm on CREW and the public.

    2. *New Evidence*

The government next asks the Court to grant its motion for reconsideration to consider new evidence: a declaration from USDS Administrator Amy Gleason. Mot. for Recons. at 13–17. For the purposes of a motion for reconsideration, however, "newly raised" evidence is not considered "new" evidence if it was "previously available." Olson v. Clinton, 630 F. Supp. 2d 61, 63 (D.D.C. 2009) (quoting Schoenbohm v. FCC, 204 F.3d 243, 250 (D.C. Cir. 2000)). The government offers no reason why Administrator Gleason's declaration was not available to it when it briefed its opposition to CREW's preliminary-injunction motion. Gleason has occupied her role as USDS Administrator since at least February 25, 2025. CREW I, 2025 WL 752367, at *2. No doubt USDS could have obtained a declaration from her to submit along with its opposition to CREW's preliminary-injunction motion, which it filed on February 27.

USDS admits as much. It nowhere suggests it had any trouble obtaining the declaration on which it now bases its argument or that Gleason was unavailable to provide it. Instead, USDS argues only that declining to brief the question of whether USDS is subject to FOIA "was a

considered decision that doing so was unnecessary because CREW's preliminary injunction motion was meritless for other reasons." Mot. for Recons. at 20. As noted in its prior opinion, the Court disagreed with this assessment, finding at least part of CREW's preliminary-injunction motion to have merit. CREW I, 2025 WL 752367, at *12 ("[A]s the Court's granting of partial preliminary relief indicates, USDS did not have a slam-dunk argument after all."). And the government's overestimation of its argument on the merits does not supply a basis on which to introduce new evidence through a motion for reconsideration.

In any event, Gleason's declaration does not establish without question that USDS is not exercising substantial independent authority. Instead, the declaration appears to be subject to factual disputes that may provide a basis for CREW to seek discovery under Rule 56(d). Although "[d]iscovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains," Baker & Hostetler LLP v. U.S. Dep't of Com., 473 F.3d 312, 318 (D.C. Cir. 2006) (citation omitted), parts of Gleason's declaration appear to be "called into question by contradictory evidence in the record," Jud. Watch, Inc. v. U.S. Secret Serv., 726 F.3d 208, 215 (D.C. Cir. 2013).

For instance, Gleason states that Elon Musk does not work at USDS. Mot. for Recons., Decl. of Amy Gleason ("Gleason Decl.") ¶ 6. But this statement is contradicted by President Trump's and Musk's own statements: Musk "noted publicly that he plans to use USDS to reduce the federal budget by $2 trillion." CREW I, 2025 WL 752367, at *11. And President Trump identified Musk as the leader of USDS and recently praised his efforts to cut spending through the department. Colleen Long & Jill Colvin, *Trump says Musk, Ramaswamy will form outside group to advise White House on government efficiency*, AP News (Nov. 12, 2024),

10

https://apnews.com/article/donald-trump-president-elon-musk-vivek-ramaswamy-2f0f76bb6440231f2504b77cb117d988; Taylor Penly, *Trump praises 'real patriot' Elon Musk for 'opening a lot of eyes' with DOGE*, Fox Business, https://www.foxbusiness.com/media/trump-praises-real-patriot-elon-musk-opening-lot-eyes-doge (Mar. 9, 2025).

Gleason also states that each DOGE Team Lead is an "an agency employee" and "reports to agency personnel," Gleason Decl. ¶ 15, apparently indicating that USDS employees do not direct agency decisions. But this statement is at odds with other cases finding that USDS "has taken numerous actions without any apparent advanced approval by agency leadership." Does 1-26 v. Musk, No. 25-cv-462, 2025 WL 840574, at *3 (D. Md. Mar. 18, 2025). For instance, USDS reportedly surprised agency officials by "execut[ing] cuts to billions of dollars of funding from the National Institutes of Health to universities and research organizations" and "terminat[ing] personnel at the Department of Agriculture ("USDA") and the Department of Energy, National Nuclear Security Administration ("NNSA")"). Id. USDS also reportedly "played a leading role" in shutting down USAID and DOGE Team members "reportedly demanded that all USAID senior managers be barred from authorizing payments and that the DOGE Team Members be the exclusive authorizers." Id. at *1, 4.

Gleason's description of USDS's authority further conflicts with reports suggesting that the President has "ordered cabinet secretaries to cooperate with DOGE on staffing," CREW I, 2025 WL 752367, at *11 (citation omitted), and that USDS employees have gained access to classified information over the objection of officials within those agencies. Ellen Knickmeyer & Matthew Lee, *USAID Security Chiefs Put on Leave After Trying to Stop Musk's Team From Accessing Classified Info, Officials Say*, PBS News (Feb. 2, 2025), https://www.pbs.org/ newshour /politics/ usaid-security-chiefs-put-on-leave-after-trying-to-stop-musks-team-from-

11

accessing-classified-info-officials-say. Given the apparent factual disputes evident from the face of Gleason's declaration, even were the Court to consider it, it would not displace the Court's prior holding on likelihood of success on the merits without further development.

    3. *Manifest Injustice*

USDS next argues that reconsideration of the court's order is warranted to prevent manifest injustice. Mot. for Recons. at 17–20. "A 'manifest injustice requires at least (1) a clear and certain prejudice to the moving party that (2) is fundamentally unfair in light of governing law.'" New LifeCare Hosps. of N. Carolina LLC v. Azar, 466 F. Supp. 3d 124, 129 (D.D.C. 2020) (citation omitted).

USDS bases this argument on its view that the Court rejected the specific preliminary injunction sought by CREW and awarded preliminary relief beyond what CREW sought. Mot. for Recons. at 18. Thus, USDS says it was unprepared to oppose the entry of the injunction that the Court ultimately issued. But when considering preliminary relief, a court "need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular case." Trump v. Int'l Refugee Assistance Project, 582 U.S. 571, 580 (2017) (citation omitted). The "Court's discretion in granting preliminary injunctive relief is therefore not constrained by the relief Plaintiffs explicitly seek." Aracely, R. v. Nielsen, 319 F. Supp. 3d 110, 133 (D.D.C. 2018). Given the Court's broad discretion to fashion equitable relief, the government cannot show that the Court's injunction was "fundamentally unfair in light of governing law" merely because it did not award CREW all the relief it explicitly sought. New LifeCare Hosps., 466 F. Supp. 3d at 129.

And it was well within the Court's equitable discretion to issue a preliminary injunction tailored to the changing circumstances of this case—most of which are attributable to the

government.  Recall that OMB initially granted expedited processing of the USDS Request. CREW I, 2025 WL 752367, at *5.  Relying on that representation, CREW had no reason to ask for expedited processing of the USDS Request in its preliminary injunction motion.  Although the government suggested in its opposition that OMB had inadvertently accepted the USDS request, see Opp'n to PI Mot. at 8–9 n.2, it did not inform CREW of its decision not to process the USDS Request until the evening of March 6, when briefing in this case was already complete.  Tr. 3:23–4:1 ("Last night the Court -- the DOGE made a determination on that request.  DOGE sent an email to plaintiff saying that the request was denied on the grounds that USDS is not an agency subject to FOIA.").

Responding to this late-breaking development, the Court *the next day* explicitly requested and received confirmation from CREW that its "requested relief encompasses a preliminary order directing USDS (or OMB) to process the USDS request on an expedited basis as OMB originally agreed—but perhaps not by a date certain tied to Congress's ongoing appropriations debate."  CREW I, 2025 WL 752367, at *6 (citing Rough Tr. at 12:5–14).  The Court therefore fails to understand how USDS could be surprised by the injunction the Court entered.  The Court explicitly explored the possibility of this relief during argument in response to USDS's change in position on whether it would process the USDS Request.  Not once during oral argument did the government contend that such an injunction would fall outside the Court's authority.  With good reason.  Courts in this district have entered preliminary relief directing the expedited processing of FOIA requests while stopping short of ordering production by the requested dates certain. See, e.g., Protect Democracy Project, Inc. v. U.S. Dep't of Def., 263 F. Supp. 3d 293, 303 (D.D.C. 2017) (Cooper, J.) (granting preliminary injunction for expedited processing of FOIA request but declining to order production by date certain).

13

Moreover, whether USDS is subject to FOIA was central to both CREW's request for processing of the USDS Request by March 10 and its argument that Federal Records Act preservation obligations apply to USDS. After all, likelihood of success on the merits is a key consideration in whether to award a preliminary injunction. Nat'l Head Start Ass'n v. U.S. Dep't of Health & Hum. Servs., 297 F. Supp. 2d 242, 247 (D.D.C. 2004) ("[I]t is especially important for the movant to demonstrate a likelihood of success on the merits."). The government therefore cannot claim that this issue came out of left field. It was in the case from the beginning, and the government must live with the consequences of failing to brief the issue.

USDS also argues that the Court relied on an entirely different theory of irreparable harm than the one put forward by CREW to justify preliminary relief. Not so. USDS's argument slices CREW's theory of harm too thin. CREW did seek production by March 10, but it did so in order "that Congress, with public input, may consider information about USDS's structure and influence over OMB when making funding decisions." CREW I, 2025 WL 752367, at *10. Neither side ever argued that the requested information would become stale after March 10. And as the Court explained, CREW's own asserted purposes indicated that the requested information would "remain valuable and relevant to all congressional funding decisions in the near future." Id. The Court did not reject CREW's theory of harm entirely, it merely had a different view of how quickly that harm would come to pass. As the Court said, "although irreparable harm will not result if the requested records are not *immediately* released, there is a point in the not-too-distant future when continued delay will indeed impose such harm." Id. at *15.

B. Expedited Summary Judgment

Although the Court declines to grant USDS's motion for reconsideration, USDS is free to file a motion for summary judgment in short order and seek an expedited briefing schedule. The

14

Court agrees that expedited resolution of this question based on a more fulsome summary-judgment record is appropriate. After USDS files its motion for summary judgment, the Court will entertain a prompt motion by CREW under Rule 56(d) showing by affidavit or declaration that "for specified reasons, it cannot present facts essential to justify its opposition" and requesting limited discovery. Any such declaration should "outline the particular facts [the non-movant] intends to discover and describe why those facts are necessary to the litigation," "explain 'why [the non-movant] could not produce the facts in opposition to the motion for summary judgment," and "show the information is in fact discoverable." U.S. ex rel. Folliard v. Gov't Acquisitions, Inc., 764 F.3d 19, 26 (D.C. Cir. 2014) (alterations in original) (citation omitted).

The Court will then set an expedited schedule to complete summary judgment briefing after any appropriate discovery has been completed. The Court will not require actual production of records until it reaches a decision on the government's forthcoming summary judgment motion. Thus, the Court sees little downside to granting USDS a seven-day extension of the March 20 and March 27 deadlines. The Court will grant these extensions not because there would be any prejudice or injury to USDS from meeting the Court's original deadlines, as discussed next, but to ensure that USDS is able to meaningfully respond to the Court's inquiries.

C. Request for Stay

The government also seeks a stay of the March 20 and 27 deadlines as applied to USDS only. Mot. for Recons. at 20–21. It satisfies none of the factors entitling it to a stay of the Court's preliminary injunction while summary judgment briefing proceeds, however. As just discussed, USDS has not shown a likelihood of success on the merits on its motion for

15

reconsideration. And it does not even argue that it is likely to succeed on the merits of its summary judgment motion.

The government's only assertion of irreparable injury is that if USDS is required to comply with the Court's order, "it will have to . . . create a FOIA operation from scratch." Id. at 21. The Court disagrees that (1) providing an estimate of responsive documents and (2) working with CREW to propose a production schedule while merits briefing is ongoing will so strain USDS's resources as to cause it irreparable harm.

Several factors inform this conclusion. First, the documents requested by CREW are limited in scope. See Reply (ECF No. 13), Attachment A. Estimating their volume would not seem to require the creation of an entire "FOIA operation." Mot. for Recons. at 21. Rather, it would seem to involve no more than keyword digital searches and searches for physical records. Reply (ECF No. 13), Attachment A at 2 (narrowing requests by specific topic, e.g., "treatment of probationary employees"). The Court has faith that the employees of a government organization charged with "modernizing Federal technology and software," who have reportedly gained access to databases and payment systems across federal agencies, are technologically sophisticated enough to perform these basic tasks. Executive Order 14158, Establishing and Implementing the President's "Department of Government Efficiency," Exec. Order No. 14158, 90 Fed. Reg. 8441 (Jan. 29, 2025). Indeed, reports suggest that many USDS employees are former software engineers. *The People Carrying Out Musk's Plans at DOGE*, NY Times (Mar. 14, 2025), https://www.nytimes.com/interactive/2025/02/27/us/politics/doge-staff-list.html.

Moreover, USDS has already been ordered to respond to discovery requests in other cases. See New Mexico v. Musk, No. 25-cv-429 (TSC), 2025 WL 783192, at *7 (D.D.C. Mar. 12, 2025). Presumably, then, USDS may capitalize on its existing efforts and will not need to

start from scratch in responding to CREW's request.  USDS also provides no reason why the existing FOIA office at OMB, or those elsewhere within the Executive Office of the President, could not assist with processing the narrow USDS Request.  Indeed, OMB appears to have been willing at one time to handle FOIA requests on USDS's behalf.  See Compl. ¶ 94 (OMB granting expedited processing of the USDS Request).  For all these reasons, USDS haS not demonstrated that it "will be irreparably injured absent a stay."  McGahn, 407 F. Supp. 3d at 38.

## IV. Conclusion

For these reasons, the Court will deny USDS's motion for reconsideration.  The Court also directs the government to file a status report by March 27, 2025 setting forth the estimated number of documents responsive to the USDS Request.  The parties are further ordered to meet and confer and file a joint status report by April 3, 2025, proposing a schedule for expedited processing and rolling production of responsive records should the Court deny USDS's forthcoming summary judgment motion.  It is hereby

**ORDERED** that [Dkt. No. 20] Defendant's Motion for Reconsideration and Motion for Stay is DENIED.

**SO ORDERED**.

                                                                                            _____
                                                                                            CHRISTOPHER R. COOPER
                                                                                            United States District Judge

Date: March 19, 2025