UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br>          Plaintiff,<br><br>          v.<br><br>U.S. DOGE SERVICE, *et al.*,<br>               Defendants. | Case No. 1:25-cv-00511-CRC |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT AS TO CLAIMS AGAINST THE UNITED
STATES DOGE SERVICE, AMY GLEASON, AND ELON MUSK**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 3

I.      The Establishment of USDS and Its Limited Advisory Responsibilities......................... 3

II.     Procedural Background ........................................................................................... 7

ARGUMENT ................................................................................................................... 12

        SUMMARY JUDGMENT SHOULD BE GRANTED AS TO USDS BECAUSE
        USDS IS NOT AN "AGENCY" SUBJECT TO FOIA OR THE FRA ......................... 12

I.      Standard of Review ............................................................................................... 12

II.     A Component of the Executive Office of the President Must Wield "Substantial
        Independent Authority" to Qualify As An "Agency" Under FOIA or the PRA ............. 14

III.    USDS Does Not Have Substantial Independent Authority ............................................ 20

IV.     Application of the *Meyer* Three-Part Test Confirms that USDS Is Not an "Agency"
        Under FOIA and the FRA ....................................................................................... 25

V.      Summary Judgment is Warranted on the Claims Against Elon Musk ........................... 28

CONCLUSION................................................................................................................. 29

# TABLE OF AUTHORITIES

## Cases

*American Federation of Labor & Congress of Industrial Organizations v. Department of Labor*,
--- F. Supp. 3d ----, 2025 WL 542825 (D.D.C. Feb. 14, 2025) ................................................ 22

*Armstrong v. EOP*,
90 F.3d, 553 (D.C. Cir. 1996) ............................................................................ 15, 17, 26, 27

*Armstrong v. Executive Office of the President*,
1 F.3d 1274 (D.C. Cir. 1993) ........................................................................................ 13

*Bond v. United States*,
572 U.S. 844 (2014) ......................................................................................................... 14

*CREW v. Office of Administration*,
566 F.3d 219 (D.C. Cir. 2009) .................................................................. 13, 15, 16, 18, 19, 26

*Democracy Forward Found. v. White House Office of American Innovation*,
356 F. Supp. 3d 61 (D.D.C. 2019) ................................................................................ 19

*Department of Justice v. Tax Analysts*,
492 U.S. 136 (1989) ....................................................................................................... 13

*Diamond v. Atwood*,
43 F.3d 1538 (D.C. Cir. 1995) ...................................................................................... 12

*Kissinger v. Reporters Committee for Freedom of the Press*,
445 U.S. 136 (1980) ................................................................................................. 13, 15

*Leopold v. CIA*,
106 F. Supp. 3d 51 (D.D.C. 2015) ................................................................................ 12

*Main Street Legal Services Inc. v. National Security Council*,
811 F.3d 542 (2d Cir. 2016) .......................................................................................... 23

*Marin Audubon Society v. Federal Aviation Administration*,
121 F.4th 902 (D.C. Cir. 2014) .................................................................................... 19

*Meyer v. Bush*,
981 F.2d 1288 (D.C. Cir. 1993) .................................................................. 15, 16, 17, 26, 27

*National Security Archive v. Archivist of the United States*,
909 F.2d 541 (D.C. Cir. 1990) ................................................................................ 17, 29

*Pacific Legal Found. v. Council on Environmental Quality*,
636 F.2d 1259 (D.C. Cir. 1980) .................................................................................... 19

*Reliant Energy Power Generation, Inc. v. FERC*,
520 F. Supp. 2d 194 (D.D.C. 2007) ......................................................... 12

*Rushforth v. Council of Economic Advisers*,
762 F.2d 1038 (D.C. Cir. 1985) .............................................................. 16

*Sierra Club v. Andrus*,
581 F.2d 895 (D.C. Cir. 1978) ........................................................... 19, 21

*Soucie v. David*,
448 F.2d 1067 (D.C. Cir. 1971) .......................................................... 15, 19

*Sweetland v. Walters*,
60 F.3d 852 (D.C. Cir. 1995) ................................................................. 18

## Statutes and Executive Orders

3 U.S.C. § 105(b)(1) ............................................................................... 18

3 U.S.C. § 109 ....................................................................................... 18

3 U.S.C. § 110 ....................................................................................... 18

5 U.S.C. § 552 ....................................................................................... 13

5 U.S.C. § 552(f) .................................................................................... 14

5 U.S.C. § 706(1) ..................................................................................... 9

5 U.S.C. § 3161 ....................................................................................... 4

15 U.S.C. § 1023 .................................................................................... 16

28 U.S.C. § 1361 .................................................................................... 10

42 U.S.C. § 4342 .................................................................................... 21

44 U.S.C. § 2201(2)(B) ........................................................................... 13

Exec. Order No. 14158,
90 Fed. Reg. 8441 (Jan. 29, 2025) ................................. 3, 5, 12, 20, 22, 24, 27, 28

*Exec. Order No. 14170,
90 Fed. Reg. 8621 (Jan. 30, 2025) ..................................................... 4, 20

*Exec. Order No. 14210,
90 Fed. Reg. 9669 (Feb. 11, 2025) ..................................................... 5, 20

iii

*Exec. Order No. 14218,
    90 Fed. Reg. 10,581 (Feb. 19, 2025) ...................................................................... 6, 20

*Exec. Order No. 14219,
    90 Fed. Reg. 10583 (Feb. 19, 2025) ......................................................................... 6

*Exec. Order No. 14222,
    90 Fed. Reg. 11095 (Feb. 26, 2025) ...................................................................... 6, 21

## Other Authority

*Presidential Memorandum,
    *Hiring Freeze* ...................................................................................................... 7, 21

## INTRODUCTION

Plaintiff Citizens for Responsibility and Ethics in Washington (CREW) brought this action under the Freedom of Information Act (FOIA) seeking disclosure of records in response to FOIA requests it submitted to the United States DOGE Service (USDS) and the Office of Management and Budget (OMB). On the theory that USDS is an "agency," CREW also brought an action under the Federal Records Act (FRA) seeking the initiation of a record recovery action. The law is settled, however, that a component of the Executive Office of the President (EOP) whose function is to advise and assist the President, and that wields no substantial authority independently of the President, is not an "agency" for purposes of either FOIA or the FRA.

Defendant USDS is such an EOP component. It is a non-statutory entity that indisputably has no statutory authorities. It has only the limited responsibilities set forth in a January 20, 2025 Executive Order reconstituting the former United States Digital Service as a freestanding component within EOP, as well as a series of additional Executive Orders and a presidential memorandum issued shortly thereafter. These documents underscore that USDS's responsibilities are purely advisory, to help advise the President and consult with and collect information from certain governmental components on specifically identified topics. Although the Executive Orders also provide for Department of Government Efficiency (DOGE) teams within federal agencies, these documents establish that those agency DOGE teams are located entirely within federal agencies, answer to agency leadership (not USDS), and implement the President's DOGE agenda alongside with (and subject to oversight and approval from) agency leadership. As agency employees and detailees, the DOGE agency teams may create federal records subject to FOIA. But with respect to USDS, neither Congress (which had no role in creating this non-statutory entity in the first place) nor the President has delegated to it any federal program responsibilities.

USDS's charter documents—and the record in this case—make clear that USDS simply

does not have anything like the substantial independent authority that was found sufficient to make the Office of Science and Technology Policy, Council on Environmental Quality, and OMB agencies subject to FOIA. Those EOP components are subject to FOIA and the FRA because they have independent authority to, inter alia, issue regulations, coordinate and evaluate federal programs, oversee certain activities of other federal agencies, or perform other significant statutory duties, and have otherwise been recognized by Congress as endowed with substantial independent authority (as evidenced by, among other things, Congress requiring Senate confirmation of one or more of the officials serving in those components). By contrast, USDS does not have any substantive authority over federal agencies or third parties, much less the type of substantial independent authority possessed by these entities.

The conclusion that USDS lacks the independent authority needed to subject it to FOIA does not conflict with FOIA's purposes. CREW and other requestors may seek records from the agencies themselves related to the work of the DOGE teams at those agencies, including some of the same kinds of documents they seek from USDS in this case.

This total absence of substantial independent authority is itself sufficient as a matter of law to resolve USDS's FOIA and FRA status. But other features of USDS—which the D.C. Circuit has recognized as potentially important in assessing whether a component qualifies as an agency— confirm that USDS is not an agency. USDS is operationally close to the President (reporting directly to the White House Chief of Staff), it is a relatively small entity with no rigid structure, and the handful of responsibilities it has been assigned are limited and purely advisory.

Accordingly, USDS is not subject to FOIA's disclosure requirements or to the FRA's preservation requirements (though USDS does have preservation obligations under the Presidential Records Act, by which it abides). This Court should accordingly grant summary

judgment to USDS and USDS Administrator Amy Gleason[1] on CREW's claims against those defendants.[2]

Finally, the Court should grant summary judgment to Elon Musk on the claims asserted against him in his official capacity. Mr. Musk does not work for USDS. And any FOIA or FRA claim asserted against Mr. Musk in his capacity as a White House Advisor fails because it is well established that the White House Office is not an agency for purposes of FOIA or the FRA either.

## BACKGROUND

### I.    The Establishment of USDS and Its Limited Advisory Responsibilities

Shortly after President Trump took office on January 20, 2025, the President signed a series of Executive Orders and a presidential memorandum concerning USDS. As USDS notes, "[c]umulatively, these orders and memorandum set forth the responsibilities assigned to USDS, the U.S. DOGE Service Temporary Organization, agency DOGE Teams, and agency DOGE Team Leads." Declaration of Amy Gleason (Gleason Decl.) ¶ 25. "As an entity created by Executive Order, USDS has no other independent sources of legal authority" *Id.* Because these Executive Orders and memorandum are critical to—indeed, dispositive of—USDS's FOIA and PRA status, we discuss them individually here.

*Executive Order 14,158*: On January 20, 2025, President Trump signed Executive Order 14,158, which directs changes to the previously established United States Digital Service in order to implement the President's agenda of "improv[ing] the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems." 90 Fed. Reg.

---

[1] Plaintiff's Complaint brings claims against "John Doe" in their official capacity as Administrator of USDS. We construe these claims as claims against Administrator Gleason.

[2] Defendants do not through this motion seek summary judgment on the claims against OMB and other Defendants, though they reserve the right to seek summary judgment on those claims at a later point.

8441, § 4. This Executive Order redesignated the United States Digital Service as the Department of Governmental Efficiency Service, or U.S. DOGE Service, and moved it out of OMB and made it a free-standing component of EOP reporting to the White House Chief of Staff. *Id.* § 3(a). Similarly, it established a "U.S. DOGE Service Temporary Organization" within USDS pursuant to 5 U.S.C. § 3161, which will terminate on July 4, 2026. *Id.* § 3(b). "The U.S. DOGE Service Temporary Organization shall be headed by the USDS Administrator and shall be dedicated to advancing the President's 18-month DOGE agenda." *Id.*

Agency heads are required to "establish *within their respective Agencies* a DOGE Team of at least four employees, which may include Special Government Employees." *Id.* § 3(c) (emphasis added). "Each DOGE Team will typically include one DOGE Team Lead, one engineer, one human resources specialist, and one attorney." *Id.* The Executive Order tasks agency DOGE teams to "coordinate their work with USDS and *advise* their respective Agency Heads on implementing the President's DOGE Agenda." *Id.* (emphasis added).

Section 4 of the Executive Order further tasks USDS with "commenc[ing] a Software Modernization Initiative to improve the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems" and directs agency heads to "take all necessary steps, in coordination with the USDS Administrator and to the maximum extent consistent with law, to ensure USDS has full and prompt access to all unclassified agency records, software systems, and IT systems," while also noting that "USDS shall adhere to rigorous data protection standards." *Id.* §§ 4(a)-(b).

*Executive Order 14,170*: Also on January 20, President Trump signed Executive Order 14,170, *Reforming the Federal Hiring Process and Restoring Merit to Government Service*, 90 Fed. Reg. 8621 (Jan. 20, 2025). That Executive Order directs the Assistant to the President for

Domestic Policy, "in consultation with the Director of [OMB], the Director of the Office of Personnel Management, and the Administrator of" USDS to "develop and send to agency heads a Federal Hiring Plan that brings to the Federal workforce only highly skilled Americans dedicated to the furtherance of American ideals, values, and interests." *Id.* § 2(a). The Executive Order further states that the resulting federal hiring plan "shall provide specific best practices for the human resources function in each agency, which each agency head shall implement, *with advice and recommendations* as appropriate from" USDS. *Id.* § 2(d) (emphasis added).

*Executive Order 14,210*: Next came Executive Order 14,210, *Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative*, 90 Fed. Reg. 9669 (Feb. 11, 2025). That Executive Order directs OMB to submit a plan to reduce the size of the Federal Government's workforce, *id.* § 3(a), and directs *agency heads* to, among other things, "promptly undertake preparations to initiate large-scale reductions in force," *id.* § 3(c).

The Executive Order tasks each "DOGE Team Lead," defined as "the leader of the Department of Government Efficiency (DOGE) Team *at each agency*, as defined in Executive Order 14158," *id.* § 2(c) (emphasis added), with several limited responsibilities. First, the DOGE Team Lead consults with each agency head on establishing a hiring plan. *See id.* § 3(b) ("Each Agency Head shall develop a data-driven plan, in consultation with its DOGE Team Lead, to ensure new career appointment hires are in highest-need areas."). Second, under the hiring plan, "new career appointment hiring decisions shall be made in consultation with the agency's DOGE Team Lead, consistent with applicable law." *Id.* § 3(b)(i). Third, "[t]he agency shall not fill any vacancies for career appointments that the DOGE Team Lead assesses should not be filled, unless the Agency Head determines the positions should be filled." *Id.* § 3(b)(ii). And fourth, "[e]ach DOGE Team Lead shall provide the" USDS Administrator "with a monthly hiring report for the

agency." *Id.* § 3(b)(iii).

*Executive Order 14,218*: On February 19, 2025, President Trump issued Executive Order 14,218, *Ending Taxpayer Subsidization of Open Borders*, 90 Fed. Reg. 10,581 (Feb. 19, 2025). That Executive Order directs the Director of OMB and the Administrator of USDS, in coordination with the Assistant to the President for Domestic Policy, to "identify all other sources of Federal funding for illegal aliens," and to "*recommend* additional agency actions to align Federal spending with the purposes of this order, and, where relevant, enhance eligibility verification systems." *Id.* § 2(b)(i)-(ii) (emphasis added).

*Executive Order 14,219*: The same day, President Trump also issued Executive Order 14,219, *Ensuring Lawful Governance and Implementing the President's "Department of Government Efficiency" Deregulatory Initiative*, 90 Fed. Reg. 10583 (Feb. 19, 2025). That Executive Order directs that "Agency heads shall, in coordination with their DOGE Team Leads and the Director of [OMB], initiate a process to review all regulations subject to their sole or joint jurisdiction for consistency with law and Administration policy" and identifies certain classes of regulations that agency heads must identify. *Id.* § 2. "Additionally, agency heads shall consult with their DOGE Team Leads and the Administrator of [the Office of Information and Regulatory Affairs] on potential new regulations as soon as practicable." *Id.* § 4. This Executive Order does not mention USDS or assign any duties to it.

*Executive Order 14,222*: Finally, Executive Order 14,222, *Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative*, 90 Fed. Reg. 11095 (Feb. 26, 2025), states that "[e]ach Agency Head shall, with assistance as requested from the agency's DOGE Team Lead," among other steps "build a centralized technological system within the agency to seamlessly record every payment issued by the agency." *Id.* § 3(a); *see also id.* §§ 3(a)(i),

(3)(b), 3(c), 3(d)(i) (identifying additional steps to be taken by agency heads in consultation with the agency's DOGE Team Lead). The Executive Order also directs each DOGE Team Lead to provide the Administrator with "a monthly informational report on contracting activities," *id.* § 3(d)(ii), and, "to the extent consistent with law, provide the Administrator with a monthly informational report listing each agency's justifications for non-essential travel," *id.* § 3(e).

*Hiring Freeze Presidential Memorandum*: In addition to these Executive Orders, a January 20, 2025 presidential memorandum directs the OMB Director, "in consultation with" the Office of Personnel Management (OPM) Director and USDS Administrator, to "submit a plan to reduce the size of the Federal Government's workforce through efficiency improvements and attrition." Presidential Memorandum, *Hiring Freeze*, *available at* https://www.whitehouse.gov/presidential-actions/2025/01/hiring-freeze/. The memorandum further states that the hiring freeze the memorandum directs remains in place for the Internal Revenue Service (IRS) "until the Secretary of the Treasury, in consultation with the Director of OMB and the Administrator of USDS, determines that it is in the national interest to lift the freeze." *Id.*

## II.    Procedural Background

This case concerns three FOIA requests, two to OMB and one to USDS. Those requests and their administrative history are discussed at length in Defendants' opposition to CREW's motion for a preliminary injunction, ECF No. 10 (PI Opp.), and in USDS's memorandum in support of its motion for reconsideration of the court's subsequent opinion and order, ECF No. 20-1 (Reconsideration Mem.). Because this motion does not seek summary judgment as to OMB and the content of the USDS FOIA Request is not directly relevant to this motion, we discuss these topics more briefly here.

On December 19, 2024, CREW submitted a FOIA request to OMB (First OMB Request) for certain records from November 5, 2024, to the date the request is processed. The next day,

OMB acknowledged receipt of the First OMB Request and assigned it tracking number 2025-373. Maier Decl. Ex. B. On January 24, 2025, CREW submitted another FOIA request to OMB (Second OMB Request), Maier Decl. Ex. C, and a request to USDS (USDS Request), Maier Decl. Ex. D. The USDS Request sought certain broad categories of information, such as "[a]ll communications" of any kind between the USDS Administrator and USDS staff for a specified period and "[a]ll communications" of any kind "between USDS personnel and personnel of any federal agency outside of the Executive Office of the President." Maier Decl. Ex. D at 2. Both the Second OMB Request and the USDS Request also covered additional, broad categories of documents spanning more than eleven years (from January 1, 2014, to January 19, 2025); Maier Decl. Ex. C at 2-3; Maier Decl. Ex. D at 2-3.

CREW requested (at the time of each request, on January 24) expedited processing for both the Second OMB Request and the USDS Request. OMB granted both expedition requests on January 29. Maier Decl. Ex. H at 2; Maier Decl. Ex. I at 2. In each instance, OMB explained:

> Please understand, however, that the granting of expedited processing does not guarantee that your request will be completed by a date certain. OMB has a significant backlog of FOIA requests and we are doing our best to respond to each request as quickly as possible.

Maier Decl. Ex. H at 2; Maier Decl. Ex. I at 2. CREW sent a follow-up letter on February 7, 2025, requesting that OMB finish processing both requests by March 1, 2025. Maier Decl. Ex. J at 3.

On February 11, 2025, CREW requested expedited processing of the First OMB Request, submitted on December 19, 2024, and further requested that OMB complete processing that request by March 1, 2025. Maier Decl. Ex. K at 2. On February 14, 2025, OMB granted that expedition request as well but did not promise to complete processing by March 1 as CREW requested, instead including the same language quoted above. Maier Decl. Ex. L.

On February 11, 2025, CREW requested expedited processing of the First OMB Request, submitted on December 19, 2024, and further requested that OMB complete processing that request by March 1, 2025. Maier Decl. Ex. K at 2. On February 14, 2025, OMB granted that expedition request as well but did not promise to complete processing by March 1 as CREW requested, instead including the same language quoted above. Maier Decl. Ex. L.

OMB subsequently determined that the USDS Request had been misdirected to OMB. In a

8

February 25 letter to CREW, OMB explained that, because USDS is not housed within OMB, it was administratively closing the FOIA Request within OMB (as Defendants noted in opposing the preliminary injunction motion, OMB appears to have told CREW to submit the USDS Request through OMB, and OMB regrets the misunderstanding). Although OMB is not required to forward misdirected requests outside OMB, it nonetheless forwarded the USDS Request to USDS given the extenuating circumstances.

Separately, on January 15, 2025, CREW sent a letter to the National Archives and Records Administration (NARA) as well as OMB demanding that NARA and OMB "investigate the potential unauthorized destruction of federal or presidential records." Maier Decl. Ex. M at 2. On January 27, 2025—after the new Administration took office—CREW again sent a letter to NARA and OMB (as well as USDS). Maier Decl. Ex. N.

CREW filed suit on February 20, 2025. ECF No. 1 (Compl. or Complaint). The Complaint contains three counts. Count One contends that Defendants violated FOIA by failing to timely release all requested records in full, and failing to process CREW's requests expeditiously. Compl. ¶¶ 107-113. Count Two contends that "[o]n information and belief, USDS has unlawfully deleted or failed to preserve federal records in violation of the [Federal Records Act] and NARA regulations, including but not limited to communications on Signal and emails from personal accounts," *id.* ¶ 117, contends on the basis of this allegation that USDS, OMB, and NARA have nondiscretionary obligations to initiate an FRA enforcement action through the Attorney General, and contends that Defendants' failure to initiate such an enforcement action constitutes unlawfully withheld agency action for purposes of the Administrative Procedure Act under 5 U.S.C. § 706(1) (in addition to being actionable under the APA's prohibition on arbitrary and capricious agency action, see id. § 706(2)(A)). Compl. ¶¶ 114-122. Count Three seeks a writ of mandamus against

all three Defendants, *see* 28 U.S.C. § 1361, based on substantially the same allegations, Compl. ¶¶ 123-128.

The same day CREW filed its Complaint, CREW filed a motion for a preliminary injunction. *See* ECF No. 2 (Motion); ECF No. 2-1 (PI Mem.). CREW requested that this Court enter a preliminary injunction directing Defendants to "fully process and produce all non-exempt records responsive to" all three FOIA requests no later than March 10, 2025, and to direct Defendants to "preserve all potentially responsive and relevant records pending final resolution of the case, inclusive of appeals." ECF No. 2-17 (Proposed Order).

Defendants filed their opposition to the preliminary injunction motion on February 27, arguing that CREW had not demonstrated the type of irreparable harm that courts within this District have required to grant a preliminary injunction requiring FOIA processing by a date certain. *See* PI Opp. at 11-18. The United States further argued that CREW was unlikely to succeed on the merits because, in addition to the same considerations, the date certain it proposed was manifestly unreasonable. Because Defendants believed that CREW's motion seeking processing of its FOIA Requests by March 10, 2025 based on the then-pending process to pass a new government-funding bill plainly lacked merit, it stated USDS's position that USDS was not an agency subject to FOIA but did not further brief the issue, contending instead that the Court did not need to decide it for purposes of resolving the preliminary injunction motion. *See* PI Mem. at 20 n.4 ("This is a question for the merits, however, once Defendants have had an opportunity to answer the complaint in the ordinary course. It should not be decided in the context of a preliminary-injunction motion seeking accelerated processing, particularly when CREW's motion fails for multiple independent reasons.").

CREW filed its reply on March 4. ECF No. 13. That reply continued to seek an injunction

requiring processing of documents by a date certain, and continued to base the alleged irreparable harm justifying this request on the appropriations process. *See, e.g.*, *id.* at 6, 8, 11. In the same reply, CREW submitted, for each component of its requests, "narrowed versions of its FOIA requests to OMB and USDS that focus on the subsets of requested records most crucial to informing the public about USDS's operations before March 14." *Id.* at 12. CREW contended that "each category of high-priority records bear directly on the ongoing appropriations debate." *Id.*

On March 6, 2025, USDS sent an email to CREW denying its FOIA Request. In that email, USDS reiterated the position it stated in opposing the preliminary injunction—that it was subject to the Presidential Records Act and was not an agency subject to FOIA. Undersigned counsel informed the Court of this development at the hearing on CREW's preliminary injunction motion the next day.

Following the March 7 hearing on CREW's preliminary injunction motion, this Court issued its opinion and order on the motion on March 10. ECF No. 17 (PI Order); ECF No. 18 (PI Opinion). The Court concluded that CREW "satisfies none of the factors entitling it to preliminary relief ordering production of its OMB requests by today's date." PI Opinion at 15. The Court further elaborated "that CREW has established neither a likelihood of success on the merits that the requested information will go stale after March 10 nor irreparable harm from failing to receive the documents until after the impending appropriations process has concluded." *Id.* at 16.

But having rejected the notion that CREW was entitled to the preliminary injunction it sought (requiring processing of documents by a date certain), and having further rejected CREW's theory of irreparable harm (based on the funding debate), the Court held that CREW demonstrated that it was "entitled to preliminary relief ordering USDS to process the [USDS] request on an expedited basis" and, in reaching that conclusion, held that USDS was likely an agency subject to

FOIA. *Id.* at 22-28.

As to that conclusion, the Court relied significantly on media reports. *Id.* at 27. The Court also gave considerable weight to prefatory language in Executive Order 14,158 stating that USDS, the USDS temporary organization, and the agency DOGE Teams were established to "implement the President's DOGE agenda." PI Opinion at 23-24. The Court also noted that "President Trump's subsequent executive order directs that agencies shall not fill any vacancies for career appointments that the DOGE Team Lead assesses should not be filled, unless the Agency Head determines the positions should be filled." PI Opinion at 24. As discussed further below, the Court respectfully misconstrued this language (which is a delegation within agencies, not to USDS) and, in any event, neither of these points demonstrates that USDS wields substantial authority independent of the President. The Court also found it significant that USDS had not briefed the agency question in detail in its expedited briefing opposing the PI motion.

On March 14, USDS moved for reconsideration of the order as applied to it, on three grounds. Shortly before the undersigned filed this motion, the Court denied the reconsideration motion.

## ARGUMENT

## SUMMARY JUDGMENT SHOULD BE GRANTED AS TO USDS BECAUSE USDS IS NOT AN "AGENCY" SUBJECT TO FOIA OR THE FRA

### I.    Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). FOIA actions are typically resolved on summary judgment. *See Leopold v. CIA*, 106 F. Supp. 3d 51, 55 (D.D.C. 2015); *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007).

FOIA requires that "[e]ach agency" make available to the public non-exempt agency records, 5 U.S.C. § 552, and "confers jurisdiction on the district courts 'to *enjoin the agency* from withholding agency records and to order the production of any agency records improperly withheld.'" *Department of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)) (emphasis added). In *Kissinger v. Reporters Committee for Freedom of the Press*, the Supreme Court held that "federal jurisdiction [under FOIA] is dependent upon a showing that *an agency* has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" 445 U.S. 136, 150 (1980) (emphasis added).[3]

In addition, the Presidential Records Act specifies that its coverage and the coverage of FOIA are mutually exclusive. *See* 44 U.S.C. § 2201(2)(B). Based on this specification, the D.C. Circuit has treated the scope of the term "agency" for purposes of the FRA as coterminous with FOIA's definition of the term. *Armstrong v. Executive Office of the President*, 1 F.3d 1274, 1293 (D.C. Cir. 1993).

For the reasons discussed in the subsequent sections, USDS is not an agency for purposes of FOIA (and thus also is not an agency for purposes of the FRA).

---

[3] In *CREW v. Office of Administration*, the D.C. Circuit stated that a dismissal based on the ground that a component does not qualify as an agency under FOIA should not be treated as a dismissal for lack of jurisdiction unless the plaintiff's claims were "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit to warrant dismissal for lack of subject-matter jurisdiction." 566 F.3d 219, 225 (D.C. Cir. 2009) (quotation marks and alterations omitted). For the reasons provided in this brief, USDS and the other two Defendants are entitled to summary judgment because USDS is not an agency under FOIA and the PRA, regardless of whether that is viewed as a jurisdictional or non-jurisdictional defect.

II.    **A Component of the Executive Office of the President Must Wield "Substantial Independent Authority" to Qualify As An "Agency" Under FOIA or the PRA**

As amended in 1974, FOIA defines the term "agency" to include:

> any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency.

5 U.S.C. § 552(f). Although the text references the "Executive Office of the President," it does not include every component in that office, but only components that fall within the specified list items ("department," "corporation," or "other establishment"). An EOP component that does not qualify as a department, corporation, or establishment is not subject to FOIA. That understanding is consistent with the term being defined, "agency," which does not naturally refer to entities that lack formal structure or independent authority, like the White House Office, the National Security Council, or the Office of Administration. *See, e.g.*, *Bond v. United States*, 572 U.S. 844, 861 (2014) (noting that it is reasonable to consider the ordinary meaning of a defined term in interpreting the scope of a statutorily provided definition).

Accordingly, the Conference Committee Report accompanying the 1974 amendments to FOIA, which added the reference to the "Executive Office of the President," explains that the term "Executive Office of the President" is "not to be interpreted as including the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President." S. Conf. Rep. No. 1200, 93d Cong., 2d Sess. 15 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6293; H.R. Conf. Rep. No. 1380, 93d Cong., 2d Sess. 14 (1974) (same). Citing this "unambiguous" legislative history, the Supreme Court held in *Kissinger v. Reporters Committee for Freedom of the Press* that the "'Executive Office' does not include the Office of the President" and that "'the President's immediate personal staff or units in the Executive Office whose sole

14

function is to advise and assist the President' are not included within the term 'agency' under the FOIA." 445 U.S. at 156 (quoting H.R. Conf. Rep. No. 1380, 93d Cong., 2d Sess., at 15 (1974)); accord *Meyer v. Bush*, 981 F.2d 1288, 1293 n.3 (D.C. Cir. 1993) (FOIA excludes "at least those approximately 400 individuals employed in the White House Office" who are the President's immediate personal staff).

The legislative history also makes clear that Congress intended to codify the D.C. Circuit's decision in *Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971). *See* 1974 U.S.C.C.A.N. 6293; H.R. Conf. Rep. No. 1380, 93d Cong., 2d Sess. 14 (1974) (stating that "with respect to the meaning of the term 'Executive Office of the President' the conferees intend the result reached in *Soucie v. David*, 448 F.2d 1067"); see also *Armstrong v. EOP*, 90 F.3d, 553, 558 (D.C. Cir. 1996) ("That the Congress intended to codify *Soucie* is clear enough."); *accord Meyer*, 981 F.2d at 1291. *Soucie* involved whether the Office of Science and Technology (OST), an EOP component now known as the Office of Science and Technology Policy (OSTP), was an "agency" subject to FOIA. The D.C. Circuit held that it was, because, beyond its duties of advising the President, OST also had "the independent function of evaluating federal [scientific] programs." 448 F.2d at 1075. When OST inherited that function from one of its predecessor organizations, the court further noted, both Congress and the President contemplated that Congress would "retain control over information on federal programs accumulated by the OST, despite any confidential relation between the Director of the OST and the President." *Id.* OST was found to be a FOIA agency because it did not have the "sole function" of advising and assisting the President, and instead, had "substantial independent authority in the exercise of specific functions." *Id.* at 1073. OST was covered by FOIA in light of its "independent authority to evaluate federal scientific research programs, initiate and fund research projects, and award scholarships." *CREW v. Office of Administration*, 566 F.3d 219,

15

223 (D.C. Cir. 2009); *see also Rushforth v. Council of Economic Advisers*, 762 F.2d 1038, 1041 (D.C. Cir. 1985) (summarizing *Soucie*: "OST could take direct action and thus was deemed to be an administrative agency"); *Meyer*, 981 F.2d at 1292 ("OST was a FOIA agency because it could act directly and independently beyond advising and assisting the President.").

In subsequent years, the D.C. Circuit has set forth "several tests for determining whether an EOP unit is subject to FOIA." *CREW v. Office of Administration*, 566 F.3d at 222. But "[h]owever the test has been stated, common to every case in which we have held that an EOP unit is subject to FOIA has been a finding that the entity in question wielded substantial authority independently of the President." *Id.* (quotation marks omitted).

Consistent with that formulation the D.C. Circuit has repeatedly refused to hold that EOP components that lack substantial independent authority are subject to FOIA. In *Rushforth*, for example, the court found that the Council of Economic Advisers (CEA) is not a FOIA agency because, although the CEA has duties prescribed by statute (unlike USDS), each of its enumerated statutory duties is directed at providing advice and assistance to the President,[4] and neither the governing statute nor any executive order gives CEA any regulatory power. 762 F.2d at 1043; *see also National Security Archive v. Archivist of the United States*, 909 F.2d 541, 545 (D.C. Cir. 1990) (the White House Counsel's Office is not a FOIA agency). In contrast to the Council on Environmental Quality, "CEA had no similar power to issue formal legally authoritative commands to entities or persons within or without the executive branch." *Meyer*, 981 F.2d at 1292.

---

[4] The CEA's governing statute, 15 U.S.C. § 1023, authorizes the CEA to (1) assist and advise the President in the preparation of the Economic Report; (2) gather, compile and submit to the President timely and authoritative information concerning economic developments and economic trends; (3) appraise the various programs and activities of the Federal Government and make recommendations to the President; (4) develop and recommend to the President national economic policies to foster and promote free competitive enterprise; and (5) make and furnish whatever material a President may request on matters of Federal economic policy.

Similarly, in *Armstrong v. EOP*, the D.C. Circuit found that the National Security Council (NSC) is not a FOIA agency because neither the President nor Congress has delegated any function to the NSC other than that of advising and assisting the President. 90 F.3d at 553. Although NSC is authorized, among other things, to review and provide guidance and direction for the conduct of intelligence activities, and to provide overall policy direction for the information security program, *see id.* at 561, there was no showing that the "NSC exercises meaningful non-advisory authority." *Id.* at 565. As the court found, "to the extent that the NSC assists the President in coordinating the activities of the various agencies with national security responsibilities, it exercises no authority of its own." *Id.* at 561.

Likewise, in *Meyer v. Bush*, the D.C. Circuit held that the President's ad hoc Task Force on Regulatory Relief was exempt from FOIA, even though the Executive Director of the Task Force (who was the OMB Director) had the authority, among other things, to review regulatory impact analyses (RIAs) and to issue guidelines both for filing the RIAs and for identifying major rules. 981 F.2d at 1290. In fact, the Executive Order creating the Task Force also gave the OMB Director—subject to the Task Force's guidance—the authority (1) to designate regulations as major rules; (2) to require agencies to seek additional information in connection with a regulation; (3) to require interagency consultation designed to reduce conflicting regulations; (4) to develop procedures for estimating the annual social costs and benefits of regulations; and (5) to prepare recommendations to the President for changes in agency statutes. *See* Exec. Order No. 12291, § 6. Nevertheless, the D.C. Circuit found that the Task Force lacked "substantial independent authority to direct executive branch officials." *Meyer*, 981 F.2d at 1297 (quotation marks omitted). As the court noted, the Executive Order creating the Task Force specified that the Order was "intended only to improve the internal management of the Federal Government." *Id.* at 1290 (quotation

marks omitted). And that Executive Order "did not confer any power to prevent an agency from carrying out its legal duty," as it "cautioned that the agencies must follow its provisions only 'to the extent permitted by law.'" *Id.* (citing Exec. Order No. 12291, § 2).

In the court's next foray into this topic, the D.C. Circuit held that the staff of the Executive Residence, which the court analogized to an EOP unit for purposes of a FOIA analysis, is also not a FOIA agency because the staff's functions are "exclusively dedicated to assisting the President in maintaining his home and carrying out his various ceremonial duties." *Sweetland v. Walters*, 60 F.3d 852, 854 (D.C. Cir. 1995). As the court noted, "[t]he staff does not oversee and coordinate federal programs, as does the Office of Science and Technology, or promulgate binding regulations, as does the Council on Environmental Quality." *Id.* Even though the staff is charged by statute with specific obligations regarding the public property and furniture in the White House, *see id.* at 855, and is to "perform such official duties as the President may prescribe," *id.* (quoting 3 U.S.C. § 105(b)(1)), those duties are required to be carried out "under the direction" or "with the approval of the President." *Id.* (quoting 3 U.S.C. §§ 109, 110). The court concluded that, "[i]n short, neither Congress nor the President has delegated independent authority to these employees." *Id.* at 854.

The D.C. Circuit's most recent case addressing whether an EOP component was an agency for FOIA purposes is *CREW v. Office of Administration*. The D.C. Circuit explained there that "everything the Office of Administration does is directly related to the operational and administrative support of the work of the President and his EOP staff" and that the Office's "services include personnel management; financial management; data processing; library, records, and information services" as well as various office services and operations. 566 F.3d at 224. Accordingly, the D.C. Circuit "conclude[d] that [the Office] lacks substantial independent

18

authority and is therefore not an agency under FOIA." *Id.* And consistent with that decision, a more recent decision from this Court held that the Office of American Innovation was not a FOIA agency "because it is within the White House Office and because it does not exercise substantial authority independent of the President." *Democracy Forward Foundation v. White House Office of American Innovation*, 356 F. Supp. 3d 61, 64 (D.D.C. 2019)

By contrast, the D.C. Circuit has held EOP components to be agencies only when they wield significant authority independent of the President. In *Soucie*, as discussed, the D.C. Circuit held that OSTP was a FOIA agency because it had independent authority "to evaluate federal scientific research programs, initiate and fund research projects, and award scholarships." *CREW v. Office of Admin*, 566 F.3d at 223 (discussing *Soucie*, 448 F.2d at 1073-75). The court held that OMB was a FOIA agency because it has a statutory duty to provide budget information to Congress, along with "numerous other statutory duties." *Sierra Club v. Andrus*, 581 F.2d 895, 902 (D.C. Cir. 1978), *rev'd on other grounds*, 442 U.S. 347 (1979); *see also id.* at 902 n.25 (noting OMB's authority to "assemble, correlate, revise, reduce, or increase the requests for appropriations of the several departments or establishments"). And the court held that the Council on Environmental Quality (CEQ) is a FOIA agency because it has independent authority to coordinate federal environmental regulatory programs, issue guidelines for preparing environmental impact statements, and promulgate regulations—legally binding on the agencies[5]—for implementing the procedural provisions of the National Environmental Policy Act. *See Pacific Legal Foundation v. Council on Environmental Quality*, 636 F.2d 1259, 1262-63 (D.C. Cir. 1980).

---

[5] *But see Marin Audubon Society v. Federal Aviation Administration*, 121 F.4th 902, 908 (D.C. Cir. 2024) (holding that the "CEQ regulations, which purport to govern how all federal agencies must comply with the National Environmental Policy Act, are *ultra vires*"). We do not address the merits of that decision here.

Thus, as this discussion makes clear, D.C. Circuit precedent is unambiguous that an EOP unit is a FOIA agency only if it has substantial independent authority.

### III.     USDS Does Not Have Substantial Independent Authority

Under the foregoing precedent, USDS lacks the "substantial independent authority" that would render it an "agency" for purposes of FOIA. As the previous discussion of the relevant USDS Executive Orders and presidential memorandum makes clear, USDS has a limited set of advisory responsibilities, none of which even arguably involves the authority to direct agencies or other components of the Executive Branch. Specifically, USDS has the following tasks and responsibilities:

- Agency DOGE Teams—again, employees of the respective agency—are tasked generally with "coordinat[ing] their work with USDS" while "advis[ing] their respective Agency Heads on implementing the President's DOGE Agenda." Exec. Order 14,158, § 3(c).

- The USDS Administrator should "to the maximum extent consistent with law, "have full and prompt access to all unclassified agency records, software systems, and IT systems." *Id.* § 4(b).

- The USDS Administrator must commence a software modernization initiative and "work with Agency Heads to promote inter-operability between agency networks and systems, ensure data integrity, and facilitate responsible data collection and synchronization." *Id.* § 4(a).

- The Assistant to the President for Domestic Policy is directed to consult with USDS (among other entities) in developing a federal hiring plan. Exec. Order 14,170., § 2(a).

- In implementing that plan, USDS may provide "advice and recommendations as appropriate" concerning implementation. *Id.* § 2(d).

- USDS receives monthly hiring reports from each DOGE Team Lead. Exec. Order 14,210, § 3(b)(iii)

- The Administrator of USDS, with the OMB Director and in coordination with the Assistant to the President for Domestic Policy, is directed to identify sources of federal funding for illegal aliens and make various recommendations. Exec. Order 14,218, 2(b)(i)-(ii).

- USDS receives from each agency DOGE Team Lead "a monthly informational report on contracting activities," Exec. Order 14,222, § 3(d)(ii), as well as "to the extent consistent with law—. . . a monthly informational report listing each agency's justifications for non-essential travel," *id.* § 3(e).

- The OMB Director is directed to consult with the USDS Administrator (as well as the Director of the Office of Personnel Management), to submit a plan to reduce the size of the federal workforce. Presidential Memorandum, Hiring Freeze, *available at* https://www.whitehouse.gov/presidential-actions/2025/01/hiring-freeze/.

- The Secretary of the Treasury is directed to consult with the OMB Director and USDS Administrator in determining whether it is in the national interest to lift the current IRS hiring freeze. *Id.*

None of these limited responsibilities—which are purely advisory and/or consultative in nature—can plausibly be characterized as "authority" wielded by USDS, let alone authority that is independent of the President.

That is even more clear when one compares these limited responsibilities with the significant authorities possessed by those EOP components the D.C. Circuit has held *are* FOIA agencies. USDS is nothing like those EOP components. Unlike OMB's significant statutory responsibilities, USDS has no statutory responsibilities (and indeed, no specific statutory recognition). *Andrus* also noted that "Congress signified the importance of OMB's power and function, when it provided, also by amendment in 1974, for Senate confirmation of the Director and Deputy Director of the OMB." 581 F.2d at 902; *see also* 42 U.S.C. § 4342 (Senate confirmation of the head of CEQ); *id.* § 6612 (same for head of OSTP). The USDS Administrator is of course not a position that requires Senate confirmation; indeed, it is not even a statutorily created position. Unlike CEQ, USDS has no power to issue regulations, let alone regulations that apply throughout the Executive Branch. And USDS has no powers analogous to those OSTP has over research projects, scholarships, and scientific research programs.

In previously finding that USDS was likely an agency subject to FOIA, this Court briefly

discussed only two aspects of the multiple Executive Orders and presidential memorandum concerning USDS. Respectfully, neither establishes—nor even lends support to—the proposition that USDS is a FOIA agency.

First, this Court, like Judge Bates in a previous opinion (a non-FOIA opinion that did not directly decide the question)—gave significant weight to language in Executive Order 14,158 stating that USDS was established to "implement the President's DOGE agenda." PI Opinion at 23-24; *see also American Federation of Labor & Congress of Industrial Organizations v. Department of Labor*, --- F. Supp. 3d ----, 2025 WL 542825, at *3 (D.D.C. Feb. 14, 2025) (USDS's agenda "is to 'implement' the President's modernization agenda, not simply to help him form it"). Respectfully, there is a fundamental problem with this reliance: that language is not referring to USDS *in particular*. The Executive Order makes clear that the "DOGE Structure" it is creating to implement the President's DOGE agenda consists of USDS, the USDS temporary organization established within USDS, *and* agency DOGE Teams. Exec. Order 14,158, § 3(a)-(c). It is agency DOGE Teams, working with agency heads, who take actions within agencies.

Even putting aside this basic point, this language is not evidence that USDS wields substantial authority independent of the President. First, as noted in Defendants' motion for reconsideration (ECF No. 20-1), the word "implement"—even standing alone—is simply not instructive on this issue. This is purely prefatory language that explains *why* the President signed the Executive Order. By itself, this language does not do anything. And is perfectly consistent with the term "implement" to note that USDS implements the President's agenda by providing specifically delineated recommendations and consultations, collecting specified information, and advising the President. Or as we note in our reconsideration motion, "[t]he National Security Council helps implement the President's national security agenda; the Domestic Policy Council

helps implement the President's domestic policy agenda; [and] the Council of Economic Advisors helps implement the President's economic agenda" but "[t]hat does not make these presidential advisory bodies agencies." But second, even if the term "implement" standing alone was suggestive of something more, the term must be construed in light of the full Executive Orders and presidential memorandum, which assign to USDS specific and purely advisory responsibilities. Third, and most fundamentally (as exemplified by the OSTP, CEQ, and OMB decisions) the D.C. Circuit has found EOP components subject to FOIA based on specific powers delineated by statute or other sources demonstrating that the agency wields significant authority independent of the President—not extrapolation based on general language such as this. *Cf. Main Street Legal Services Inc. v. National Security Council*, 811 F.3d 542, 558 (2d Cir. 2016) (explaining that "presidential delegations of authority . . . may simply make the entity an extension of the President, a vehicle for assisting him in exercising his authority when he cannot do so in person").

The Court also noted that "President Trump's subsequent executive order directs that agencies shall not fill any vacancies for career appointments that the DOGE Team Lead assesses should not be filled, unless the Agency Head determines the positions should be filled." PI Opinion at 24. We have previously explained why reliance on this point is incorrect. For one, the "DOGE Team Lead" is herself an agency employee who reports to the agency head or an agency head's designee—not to USDS. Exec. Order 14,158, § 2(c). That itself is dispositive. And in any event, the fact that an *agency* employee can make an assessment that an agency head can freely countermand is the precise opposite of an "authority" held by USDS—let alone an authority held by USDS that it wields independent of the President.

The Court also suggested that USDS "exert[s] influence over employees across federal agencies." PI Opinion at 26. Even if true, influence is not the standard for agency status under

23

FOIA. Indeed, because the President is the head of the Executive Branch, the most inner-circle of components—such as the White House Chief of Staff (which is unquestionably not subject to FOIA)—undoubtedly have the power to influence federal agencies. As the D.C. Circuit observed in *Meyer*, "senior White House officials close to the President[] often give ad hoc directions to executive branch personnel" but when this occurs, "it is assumed that they merely are passing on the President's wishes." 981 F.2d at 1292-94.

Finally, as the Court itself acknowledged, it relied significantly on media reports (as well as statements from President Trump and other public figures). PI Opinion at 27. These sources do not create any issue of material fact concerning USDS's FOIA status. The news stories and public statements that CREW discusses in their complaint and that this Court discussed in its preliminary injunction opinion concern alleged activities *at* agencies, not within USDS. *See* PI Opinion at 24-26 (discussing, inter alia, events at USAID, and the Department of Education, as well as emails sent to federal employees by OPM). And with respect to statements by Elon Musk and President Trump, Mr. Musk does not work at USDS, he does not report to the USDS Administrator, and the USDS Administrator does not report to him. Gleason Decl. ¶ 6. Rather, he works at the White House Office where he is a Senior Advisor to the President. *See* Declaration of Joshua Fisher, attached as Exh. A to the Declaration of Andrew Bernie, ¶¶ 3-5. And to the extent agency DOGE Teams take actions consistent with President Trump's statements, it is of course unsurprising—indeed, expected—that they are acting consistent with the President's wishes.

Relatedly, and as all this makes clear, USDS's status as a non-agency not subject to FOIA does not interfere with the ability of CREW and other requesters to obtain records concerning agency activities. As CREW's filings in this case have made clear, the activities of agency DOGE Teams have been the subject of exhaustive media coverage. CREW is free, for example, to submit

FOIA requests to USAID, to the Treasury Department, or to OPM—concerning the specific controversies they identify or any other work of agency DOGE Teams. Indeed, as CREW's filings in this case have made clear, CREW has had little difficulty identifying subjects related to the work of agency DOGE Teams that interest them. They are free to seek records concerning those alleged public controversies and any other alleged matter within those agencies.

Indeed, a conclusion that USDS is not an agency would not even mean that all the alleged records CREW seeks from USDS *in this case* would be beyond the reach of FOIA. CREW's original FOIA request to USDS sought, among other things, communications between USDS and agencies outside EOP. Maier Decl. Ex. D. And the assertedly high-priority items CREW subsequently identified in its reply brief on the preliminary injunction motion include communications between USDS and agencies outside EOP on certain topics. ECF No. 13. Any agency records that do not fall within one of FOIA's exemptions can be obtained from the relevant agencies themselves. But FOIA does not compel the disclosure of documents from EOP entities that are not agencies for purposes of the statute.

In short, because USDS plainly does not wield the sort of substantial independent authority this Court has required before deeming an EOP component a FOIA/PRA agency, summary judgment is warranted.

## IV.    Application of the *Meyer* Three-Part Test Confirms that USDS Is Not An "Agency" Under FOIA and the FRA

The above discussion makes clear that USDS is not subject to FOIA's disclosure requirements and thus is also not a FRA component. Notably, in certain contexts, the D.C. Circuit has applied a three-factor test to determine an EOP unit's agency status under FOIA. The test was first articulated in *Meyer v. Bush*, where, as discussed above, the D.C. Circuit held that a group of senior advisers to the President working within the EOP as the Task Force on Regulatory Relief

did not constitute an "agency" under FOIA, even though the group "evaluated agency regulatory efforts and had authority to provide some direction over agency rulemaking." 981 F.2d at 1292. The D.C. Circuit later applied the test to hold that the National Security Council, which is headed by the President and is authorized to provide guidance and policy direction for national security issues, is not an "agency" subject to FOIA. *Armstrong*, 90 F.3d at 567.

The court need not apply *Meyer*'s three-part test here. As the D.C. Circuit noted in *CREW v. Office of Administration*, "common to every case in which we have held that an EOP unit is subject to FOIA has been a finding that the entity in question wielded substantial authority independently of the President." 566 F.3d at 222 (quotation marks omitted). Finding that the Office of Administration did not wield such authority, the court did not proceed to analyze the *Meyer* factors. There is similarly no need to do so here. And in *Armstrong* and *Meyer*, the court suggested that the factors are relevant only insofar as a component supervises other components of the Executive Branch. *See Armstrong*, 90 F.3d at 558 (test is "relevant to determining whether those who both advise the President *and supervise others in the Executive Branch* exercise 'substantial independent authority' and hence should be deemed an agency subject to the FOIA" (emphasis added)); *Meyer*, 981 F.2d at 1293 (stating that "when we apply *Soucie* to those who help the President *supervise others in the executive branch*, we think it is necessary to focus on three interrelated factors") (emphasis added). Here, the work of USDS is not supervisory. Agency DOGE Teams do not report to the Administrator and USDS's interactions with other components do not amount to supervision either. And obligations to consult with USDS do not confer supervisory authority on USDS. *See supra* pp. 3-7.

In any event, application of the three-part test confirms that USDS is not subject to FOIA. The test requires consideration of "(1) 'how close operationally the group is to the President,' (2)

'whether it has a self-contained structure,' and (3) 'the nature of its delegate[d] authority.'" *Armstrong*, 90 F.3d at 558 (quoting *Meyer*, 981 F.2d at 1293). Each factor is not "weighed equally" but "warrants consideration insofar as it is illuminating in the particular case." *Id.*

As to the first, USDS is operationally quite close to the President—the Administrator reports directly to the White House Chief of Staff. Exec. Order 14,158, § 3(a)

The second factor asks whether the component has "a self-contained structure" such that it would be in a position to exercise independent authority if so delegated. *Armstrong*, 90 F.3d at 559; *see also Meyer*, 981 F.2d at 1296 ("FOIA, by declaring that only 'establishments in the executive branch' are covered, 5 U.S.C. § 552(e), requires a definite structure for agency status."). This factor appears to be the least important of the three. As the D.C. Circuit has explained, "while a definite structure may be a prerequisite to qualify as an establishment within the executive branch . . . not every establishment is an agency under the FOIA." *Armstrong*, 90 F.3d at 558 (quotation marks and citations omitted). Even when an office "has a structure sufficiently self-contained that the entity *could* exercise substantial independent authority . . . [t]he remaining question is whether the [entity] does *in fact* exercise such authority." *Id.* at 560 (emphases added). Thus, for example, while the D.C. Circuit found that the NSC has a self-contained structure, it ultimately concluded that the NSC does not, in fact, exercise substantial independent authority to qualify as an "agency" under FOIA. *See id.* at 560, 565.

Still, this factor supports USDS's position that it is not an agency. USDS is a non-statutory entity with a relatively small staff. Gleason Decl. ¶ 12. It "has no formal front office or organizational chart reflecting its current composition." *Id.* ¶ 13. And to the extent this Court meant to suggest in its preliminary injunction opinion that agency DOGE Teams are part of USDS's structure, *see* PI Opinion at 26, that is not the case. DOGE Teams are employees of the

agencies to which they are assigned. Exec. Order 14,158, § 3(c).

As to the third factor (the nature of the delegation), the few responsibilities USDS wields vis a vis other components of the Executive Branch are purely advisory and/or consultative in nature: for example, consulting with the Assistant to the President for Domestic Policy before the latter develops a federal hiring plan; coordinating with agency DOGE Team Leads; providing "advice and recommendations as appropriate" concerning implementation of the federal hiring plan; receiving monthly hiring reports from agency DOGE Team leads; receiving monthly reports on agency contracting activities; receiving, to the extent consistent with law, monthly reports on non-essential travel; identifying sources of federal funding for illegal aliens and making recommendations; consulting with the OMB Director before the latter develops a plan to reduce the size of the federal workforce; and consulting with the Secretary of the Treasury before the latter determines whether it is in the national interest to lift the current IRS hiring freeze. *See supra* pp. 20-21. USDS simply has no power to issue formal, legally authoritative commands to other Executive Branch components.

### V.    Summary Judgment is Warranted on the Claims Against Elon Musk

Finally, the Court should grant Mr. Musk summary judgment on the claims asserted against him in his official capacity. The Complaint asserts that "[o]n information and belief, Mr. Musk functionally directs and oversees USDS's operations and is its de facto Administrator." Compl. ¶ 13. But as explained, Mr. Musk is not USDS's Administrator, does not work for USDS, and does not report to Administrator Gleason (and Administrator Gleason does not report to him). Rather, he is a senior advisor to the President assigned to the White House Office. *See supra* p. 24. And Executive Order 14,158 makes clear that the USDS Administrator (Administrator Gleason) reports directly to the White House Chief of Staff. Exec. Order 14,158, § 3(a). And in any event, CREW's

assertion that Mr. Musk is the "de factor Administrator" of USDS—whatever that might mean—is not legally relevant to the question whether USDS is an agency for purposes of FOIA and the FRA. Finally, to the extent CREW intends to assert claims against Mr. Musk in his capacity as a White House advisor within the White House Office, the D.C. Circuit has held unequivocally that the White House Office is an "advise and assist" component of the EOP that is not an agency subject to FOIA. *National Security Archive*, 909 F.2d at 545. Accordingly, judgment should be entered in favor of Mr. Musk on the claims against him.

## CONCLUSION

The Court should grant USDS, Administrator Gleason, and Elon Musk's motion for summary judgment and terminate them as parties to this case.

Dated: March 19, 2025                           Respectfully submitted,

Respectfully submitted,

                                                YAAKOV M. ROTH
                                                Acting Assistant Attorney General

                                                ELIZABETH SHAPIRO
                                                Deputy Branch Director

                                                */s/ Andrew M. Bernie*
                                                Andrew M. Bernie
                                                Trial Attorney
                                                U.S. Department of Justice
                                                Civil Division, Federal Programs Branch
                                                1100 L Street, NW
                                                Washington, D.C. 20005
                                                (202) 353-7203
                                                andrew.m.bernie@usdoj.gov

                                                *Attorneys for Defendant*