**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. DOGE SERVICE, *et al.*,<br><br>    Defendants. | Case No. 1:25-cv-00511-CRC |

**PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY**

Pursuant to Federal Rules of Civil Procedure 56(d) and 26, and the Court's March 19 Order, ECF No. 23, Plaintiff Citizens for Responsibility of Ethics ("CREW") respectfully moves for limited, expedited discovery from Defendants U.S. DOGE Service ("DOGE") and the DOGE Administrator. The requested discovery seeks information on DOGE's authority and operations for purposes of determining whether it is subject to the Freedom of Information Act ("FOIA") and Federal Records Act ("FRA"). CREW's proposed discovery requests are submitted as Exhibit 1, and its entitlement to Rule 56(d) discovery is supported by the attached Declaration of Jonathan Maier, attached as Exhibit 2.

Counsel for CREW conferred with Defendants' counsel. Defendants oppose the relief requested in this motion.

**INTRODUCTION**

The Court and the parties agree: "it would be preferable for the Court (and the D.C. Circuit on any appeal) to review the question of whether" DOGE is subject to FOIA and the FRA "based on a more complete record following expedited summary judgment proceedings." 3/19/25 Op. & Order at 4, ECF No. 23. To develop that "more complete record," CREW needs

an opportunity to conduct limited discovery on the fact-dependent question of whether DOGE wields "substantial independent authority." Courts have permitted such discovery to aid the analysis of whether components of the Executive Office of the President ("EOP")—including DOGE—are subject to FOIA and other federal laws.[1] This Court should do the same.

Defendants acknowledge that DOGE's agency status is a "threshold" question that is both "novel and significant." Defs.' Recons. Mem. at 2, 3, ECF No. 20-1. Yet they seek to deprive CREW of any opportunity to develop the factual record on the issue. Without having answered CREW's complaint or allowed any opportunity for discovery, Defendants immediately moved for summary judgment on the applicability of FOIA and the FRA to DOGE and on all claims against Defendant Elon Musk, DOGE's de facto leader. Defendants' motion rests on counter-textual readings of the executive orders chartering DOGE and disregards a voluminous public record—detailed in this Court's preliminary injunction opinion—showing that DOGE is, in fact, wielding "unprecedented" authority "over vast swaths of the federal government." 3/10/25 Mem. Op. at 23-28, 34, ECF No. 18.

By way of evidence, Defendants offer only a cursory declaration of DOGE's purported Acting Administrator, Amy Gleason. But the Court has already found that Ms. Gleason's representations about DOGE's operations are "called into question by contradictory evidence in the record." 3/19/25 Op. & Order at 10 (quoting *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013)). Because Ms. Gleason's dubious declaration raises more questions than it answers, it only *confirms* the need to develop "a more fulsome summary-judgment record." *Id.* at 15.

---

[1] *See, e.g.*, *CREW v. Off. of Admin.*, 566 F.3d 219, 224 (D.C. Cir. 2009) [hereinafter *OA*]; *EPIC v. Off. of Homeland Sec.*, No. 02-cv-00620-CKK, ECF No. 11 (D.D.C. Dec. 26, 2002); *AFL-CIO v. Dep't of Labor*, No. 25-cv-339, ECF No. 48 (D.D.C. Feb. 27, 2025); *AFL-CIO v. Dep't of Labor*, No. 25-cv-339, ECF No. 71 (D.D.C. Mar. 19, 2025).

Accordingly, CREW seeks to serve a narrow set of discovery requests (consisting of 13 interrogatories, 11 requests for admission, and 14 requests for production) and to conduct three depositions regarding the fact-bound question of whether DOGE wields substantial independent authority. *See* Ex. 1. CREW requires such discovery to meaningfully oppose Defendants' early summary judgment motion, test Defendants' flimsy factual assertions, and develop an adequate factual record for Defendants' proposed "highly expedited summary judgment process." Defs.' Recons. Mem. at 18; *see also* Defs.' Recons. Reply at 3, ECF No. 22 (stating desire to "complete briefing expeditiously" and "tee up the issue for the D.C. Circuit with all dispatch").

The proposed discovery is narrowly tailored to seek directly relevant, non-privileged information on an expedited basis. Prompt compliance should cause Defendants minimal burden, and expedition is indeed necessitated by Defendants' own proposed accelerated schedule.

## BACKGROUND

CREW filed this action on February 20, 2025, asserting FOIA and FRA claims against DOGE (among other claims). On the same day, CREW moved for a preliminary injunction to compel immediate processing of CREW's FOIA request to DOGE and for a document preservation order. *See generally* CREW PI Mem., ECF No. 2-1. Central to CREW's complaint and motion was the assertion, established by a voluminous public record that included public statements from Defendants, demonstrating that DOGE exercises substantial authority independent of the President, bringing it within the definition of an "agency" subject to both FOIA and the FRA. *Id.* at 8-12, 18-25. DOGE chose not to dispute the "important threshold legal issue" of its substantial independent authority, which had been briefed "at length" by CREW. Defs.' Recons. Mem. at 3, 12; 3/19/25 Op. & Order at 6, 14.

On March 10, 2025, the Court partially granted CREW's motion and ordered Defendants to provide an estimate of the total volume of documents responsive to a previously-narrowed set of CREW's FOIA requests by March 20, the parties to meet and confer on a processing and rolling production schedule, and the parties to submit a joint status report on the same by March 27. 3/10/25 Mem. Op. at 37, ECF No. 18. The Court determined that DOGE "is likely exercising substantial independent authority much greater than other EOP components held to be covered by FOIA" based on three sources of information: (1) the text of applicable executive orders, (2) Defendant Elon Musk's and the President's public statements, and (3) reports of DOGE's actions "demonstrat[ing] its substantial authority over vast swathes of the federal government." *Id.* at 23-28. In determining that FOIA required expedited processing, the Court also noted "the rapid pace of [DOGE's] actions," its "unusual secrecy," and the "unprecedented" nature of the "authority exercised by [DOGE] across the federal government and the dramatic cuts it has apparently made with no congressional input." *Id.* at 34, 36.

On March 14, DOGE filed a scattershot motion for reconsideration of the Court's preliminary injunction ruling and a stay based on arguments and evidence it chose to withhold in opposing CREW's motion. *See* 3/19/25 Op. & Order at 8-14. In that motion, DOGE promised to soon file a pre-answer motion for partial summary judgment on its agency status and sought an expedited briefing schedule. Defs.' Recons. Mem. at 1.

DOGE also asserted that the Court would commit a manifest injustice if it did not consider "new evidence," which was actually a declaration by DOGE's purported Acting Administrator Amy Gleason that DOGE could have offered before the Court granted CREW's motion. 3/19/25 Op. & Order at 9-12. Ms. Gleason's March 14 declaration attested that she "currently serve[s] as the Acting Administrator" of DOGE, that she joined DOGE "on December

30, 2024, and that she is a "full-time, government employee at [DOGE]." 1st Gleason Decl. at 1, ECF No. 20-2. The declaration did not specify *when* Ms. Gleason became DOGE's Acting Administrator, however. The declaration otherwise offered conclusory characterizations about DOGE's purported legal authorities and operations, and exaggerated claims about the burden to DOGE if it were required to comply with the Court's narrow order on March 10. *See id.*

On March 18, after CREW filed its opposition to DOGE's motion for reconsideration, the government was forced to publicly file (after losing a motion to seal) a document in another case that revealed Ms. Gleason's March 14 declaration in this case omitted material facts. *See infra* Part I.B. Specifically, the unsealed document was a Form 61 Office of Personnel Management Appointment Affidavit for Ms. Gleason, attached as Exhibit 3, that showed she was appointed as an "Expert/Consultant" in the Office of the Secretary of the Department of Health and Human Services on March 4, 2025, when she also swore in this case that was a "full-time" DOGE employee.

On March 19, the Court denied DOGE's motion for reconsideration. *See* 3/19/25 Op. & Order. The Court held that Ms. Gleason's declaration was not only untimely, but "contradicted" by the vast public record of DOGE's conduct and public statements by both Defendant Musk and the President. *Id.* at 10-12, 15-17. The Court further indicated it would entertain expedited summary judgment briefing on the issue of DOGE's agency status, as well as a motion for limited discovery by CREW, to ensure that "expedited resolution of this question [is] based on a more fulsome summary judgment record." *Id.* at 14-15.

Also on March 19, Defendants filed their promised motion for partial summary judgment. Defs.' SJ Mem., EFC No. 24. Defendants rely almost entirely on counter-textual readings of various executive orders and presidential memoranda chartering DOGE. *Id.* Their motion does

not address any of the widely-reported instances of DOGE wielding substantial authority. Instead, Defendants offer a second cursory declaration by Ms. Gleason, which again omits *when* she became DOGE's Acting Administrator and fails to acknowledge her simultaneous employment at HHS. *See* Gleason 2d Decl., ECF No. 24-2. Yet this time, Ms. Gleason states only that she is a "full-time, government employee"—and not a "full-time, government employee *at [DOGE]*," as sworn in her March 14 declaration. *Compare* Gleason 2d Decl.    3, *with* 1st Gleason Decl.    3 (emphasis added). Defendants also offer a February 17, 2025 declaration (filed in another case) by the Director of the White House Office Administration, stating that Defendant Musk is not the DOGE Administrator. *See* Fischer Decl.    6, ECF No. 24-3.

## LEGAL STANDARDS

"When the party opposing a summary judgment motion shows that it 'cannot present facts essential to justify its opposition,' a court may (a) defer consideration of or deny the motion, (b) allow time for discovery, or (c) grant any other appropriate relief." *United States v. Bolton*, 514 F. Supp. 3d 158, 165 (D.D.C. 2021) (Cooper, J.) (citing Fed. R. Civ. P. 56(d)). "A Rule 56(d) motion requires (1) a specific affidavit about why additional discovery is necessary, (2) an explanation of why the evidence could not be obtained before the motion for summary judgment, and (3) a showing that the information sought can be obtained through additional discovery." *Id*. at 165 (citing *Convertino v. Dept. of Justice*, 684 F.3d 93, 99-100 (D.C. Cir. 2012)). Because "summary judgment is premature unless all parties have 'had a full opportunity to conduct discovery,'" the D.C. Circuit "directs trial courts to grant 56(d) motions 'as a matter of course.'" *Id*. at 164-65 (quoting *Convertino*, 684 F.3d at 99 (D.C. Cir. 2012)).

Beyond the Rule 56(d) context, district courts have "broad discretion over the structure, timing, and scope of discovery." *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1208 (D.C. Cir. 2020). The Federal Rules of Civil Procedure typically provide for discovery pursuant to a discovery plan, developed after the parties confer prior to a scheduling conference. *See* Fed. R. Civ. P. 26(f). However, courts may in their discretion grant expedited discovery without a Rule 26(f) conference, where the court concludes such discovery is reasonable. *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97-98 (D.D.C. 2014). Reasonableness is a discretionary inquiry, to be considered "in light of all of the surrounding circumstances," including "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.*

## ARGUMENT

The parties and Court agree that whether DOGE wields substantial independent authority and is thus an "agency" under FOIA and the FRA is an "important threshold legal issue" that must be resolved expeditiously. *See* Defs.' Recons. Mem. at 3; 3/19/25 Op. & Order at 4. Any determination of that fact-intensive issue requires a functional analysis of the activities DOGE actually "performs or is authorized to perform." *OA*, 566 F.3d at 224. But while Defendants moved for summary judgment on that issue based on purported facts available to them alone (prior to filing an answer),[2] CREW indisputably has had no opportunity to conduct discovery on

---

[2] Pre-answer motions for summary judgment are disfavored in this District. *See* Minute Order, *United States v. Navarro*, No. 22-cv-2292-CKK (D.D.C. Sept. 27, 2022) (summarily denying a pre-answer summary judgment motion and explaining that "the longstanding practice of this jurisdiction" is to "defer consideration of any motion for summary judgment until after the filing of Defendant's answer") (citing *First Am. Bank, N.A. v. United Equity, Corp.*, 89 F.R.D. 81, 87 (D.D.C. 1981); Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2717 (West 2022)). And Defendants previously acknowledged that the subject matter of its motion for summary judgment is "a question for the merits . . . *once Defendants have had an opportunity to answer the complaint in the ordinary course.*" Defs.' PI Opp'n at 20 n.4, EFC No. 10 (emphasis added).

that (or any) issue in this case, which was filed merely one month ago. Expedited discovery is thus necessary not only for CREW to meaningfully oppose Defendants' motion for summary judgment, *see* Rule 56(d); *Bolton*, 514 F. Supp. 3d at 164-65, but also for the Court to expeditiously determine, as requested by Defendants, whether DOGE wields substantial independent authority based on an appropriately robust factual record, *see Strike 3 Holdings*, 964 F.3d at 1208; *Guttenberg*, 26 F. Supp. 3d at 97-98.

I.    **CREW is entitled to discovery on the fact-bound question of whether DOGE wields substantial independent authority, especially given Defendants' unreliable and contradicted evidence.**

A.    **Expedited discovery is necessary given the issue in dispute and the posture of the case.**

The D.C. Circuit has made clear that whether an EOP component wields substantial independent authority raises questions of fact that require a functional analysis of the activities the component actually "performs *or* is authorized to perform." *OA*, 566 F.3d at 224 (emphasis added). An understanding of both the EOP component's "authority *and* operations" are "critical for determining whether [it] is subject to FOIA." *Id.* at 225 (emphasis added); *see also Armstrong v. EOP*, 90 F.3d 553, 560 (D.C. Cir. 1996) (court must evaluate whether the EOP component "*could* exercise substantial independent authority" and whether it "*does in fact* exercise such authority") (emphasis added).

Judges in this District have thus granted discovery into EOP components' authority and operations to determine whether they wield substantial independent authority in multiple contexts similar to this one. *See, e.g.*, *OA*, 566 F.3d at 221, 225-26 (describing court-ordered discovery, including 1,300 pages of documents and a deposition of OA's Director declarant, "to explore 'the authority delegated to [OA] in its charter documents and any functions that OA in fact carries out" to determine "whether 'OA acts with the type of substantial independent

authority that has been found sufficient to make' other EOP units 'subject to FOIA"); *EPIC*, No. 02-cv-00620-CKK, ECF No. 11 at 12 (ordering discovery to determine the Office of Homeland Security's FOIA agency status partly because "the language" of the executive order "establishing the entity's power [was] broad and lacking in firm parameters"); *AFL-CIO*, No. 25-cv-339, ECF No. 48 (D.D.C. Feb. 27, 2025) (ordering discovery on DOGE's structure, authority, and operations for purposes of determining whether "it is an agency within the meaning of the Economy Act of 1933"); *see also Armstrong*, 90 F.3d 553 (considering National Security Council staff testimony and declarations regarding its interactions with agencies and structure to determine its FOIA agency status); *Meyer v. Bush*, No. 88-cv-3112-JHG 1991 WL 212215 (D.D.C. Sept. 30, 1991), *rev'd on other grounds*, 981 F.2d 1288 (D.C. Cir. 1993) (relying on letters, memoranda, and Vice President's public statements in considering FOIA's applicability to Presidential Task Force on Regulatory Relief).

Discovery into DOGE's authority and operations is equally necessary here. As in other cases where discovery was granted, Defendants' motion for summary judgment relies entirely on its slanted reading of broad delegations of authority across multiple executive orders and memoranda, tethered to a declaration consisting of equally broad and conclusory factual assertions by DOGE's purported Acting Administrator, Ms. Gleason. *See OA*, 566 F.3d at 221, 225-26; *EPIC*, No. 02-cv-00620-CKK, ECF No. 11 at 9-12. That would entitle CREW to discovery under the best circumstances, but it makes discovery all-the-more important here, where Defendants' answer does not meaningfully respond to the issue, CREW does not have the benefit of even initial disclosures, and, as discussed below, Defendants' declaration is utterly unreliable.

Expedited discovery is also eminently reasonable, even outside the context of Rule 56(d), "in light of all of the surrounding circumstances" in which DOGE's substantial independent authority has come before the Court. *See Guttenberg*, 26 F. Supp. 3d at 97-98 (noting that whether a preliminary injunction is pending, the purpose of requesting discovery, and the timing of discovery are factors for the reasonableness of expedited discovery); *see also infra* Part I.C (discussing scope of the requested discovery and burden to DOGE). First, CREW seeks expedited discovery not in aid of a forthcoming motion for preliminary injunction, but after winning one that is effectively being held in abeyance pending Defendants' proposed expedited summary judgment briefing. *See* 3/19/25 Op. & Order at 14-15; *Guttenberg*, 26 F. Supp. 3d at 97. Second, the purpose of requesting expedited discovery is not only to fairly resolve Defendants' summary judgment motion, but to reach the ultimate conclusion of FOIA and the FRA's applicability to DOGE as soon as possible, at Defendants' own request. *See* Defs.' Recons. Mem. at 1, 11-12; *Guttenberg*, 26 F. Supp. 3d at 97-98.

**B.    Substantial factual uncertainty about DOGE's authority and operations heightens the need for the requested discovery.**

Factual uncertainty about DOGE's authority and operations—which is directly attributable to the government's incomplete disclosures, shifting positions, and unprecedented secrecy—further underscores the need for the requested discovery. Ms. Gleason's declaration, which puts the full breadth of DOGE's operations squarely at issue, is both facially incomplete and contradicts known facts about DOGE's operations. As a starting point, the Court has already noted that a substantially similar (though, as discussed below, notably different) declaration by Ms. Gleason in support of DOGE's motion for reconsideration did "not establish without question that [DOGE] is not exercising substantial independent authority" because, among other things, her assertions about DOGE leadership are "contradicted by President Trump's and

10

Musk's own statements," her assertions that DOGE does not exercise decision-making authority over agencies are "at odds with other cases finding that [DOGE] 'has taken numerous actions without any apparent advanced approval by agency leadership,'" and her declaration was inconsistent with still-undisputed news reports about DOGE's conduct about which Ms. Gleason remains silent. 3/19/25 Op. & Order at 10-12.

Ms. Gleason's new declaration makes the same contradictory assertions, each of which goes directly to the operational issues on which courts have granted discovery to determine FOIA's applicability. *See OA*, 566 F.3d at 225-26; *EPIC*, 02-cv-00620-CKK, ECF No. 11 at 12. It claims to address who functionally leads DOGE, the nature of their leadership, and the nature of Mr. Musk's association with DOGE. Gleason 2d Decl. ¶¶ 4, 6, 11, but repeats the assertions that the Court has observed are contradicted by Mr. Musk and the President, 3/19/25 Op. & Order at 10. It purports to address the balance of authority between DOGE and federal agencies, including whether agency heads have "ultimate decisionmaking authority with respect to the members of" the DOGE Teams embedded in their agency, the functional reporting lines and supervision of members of the agency DOGE Teams, and the nature of their "coordination" with DOGE, Gleason 2d Decl. ¶¶ 12-16, but repeats the assertions that the Court has observed are contradicted by the public record and findings about DOGE's authority in other cases. 3/19/25 Op. & Order at 11. And it takes pains to portray DOGE as merely a consultant to agencies on technological improvements, Gleason 2d Decl. ¶¶ 19-24, which, as the Court has noted, is contradicted by extensive (and undisputed) public reports. 3/19/25 Op. & Order at 11-12.

In granting expedited discovery against DOGE in another case, Judge Bates identified numerous unresolved questions and evidentiary inconsistencies regarding DOGE's reporting structure and operations, all of which gave reason "to be cautious of concluding what defendants

put forward [in opposing discovery] is the whole story." Mem. Op. and Order, *AFL-CIO v. Dept. of Labor*, No. 25-cv-339 at 13 (D.D.C. Mar. 19, 2025), ECF No. 71. For example, he noted incomplete information about DOGE's structure, including the reporting lines and chain of command for Ms. Gleason and other DOGE employees who work at other agencies for the purpose of "*carrying out the DOGE agenda* at those agencies," as well as, as DOGE has urged that court to consider, the "subject matter and purpose of [their] work, *their supervision*, and their physical worksite." *Id.* at 12 (emphasis in original). He further noted inconsistencies about the number of DOGE employees at agencies in a declaration submitted by the defendants and testimony by that declarant in another case, *id.* at 13-14, shifting and contradictory representations about whether DOGE employees were detailed to agencies, *id.* at 14, and the insufficiency of the averments by DOGE given its evolving nature, *id.* at 14-15. In the end, Judge Bates determined that "the consistent alterations and trickle of information caution[ed] the Court against accepting as certain" DOGE and the other defendants' assertions in opposing discovery. *Id.* at 15.

As Judge Bates indicated, facts concerning DOGE's functional control of agency DOGE Teams bear directly on whether DOGE wields substantial independent authority. If, as it appears, officials at DOGE's EOP headquarters wield control over agency DOGE Teams, then any authority of those agency teams actually belongs to DOGE. *See, e.g.*, 3/19/25 Op. & Order at 11 (citing court findings and reports indicating that DOGE has directed agency actions); Exec. Order No. 14158 (Jan. 20, 2025), 90 Fed. Reg. 8441 (Jan. 29, 2025) (establishing DOGE "to implement the President's DOGE Agenda" and requiring "DOGE Team Leads" at each agency to "coordinate their work with" DOGE); Exec. Order No. 14210 (Feb. 11, 2025), 90 Fed. Reg. 9669

(Feb. 14, 2025) (requiring each "DOGE Team Lead" to provide the DOGE Administrator "a monthly hiring report for the agency").

Ms. Gleason's revised declaration also breaks new ground that must be tested through discovery. For example, it offers crumbs of information about DOGE's composition and structure by describing a purported sophisticated technological operation that "consults" with agencies throughout the executive branch, but meekly asserts it has no "front office" or "organizational chart[s]." Gleason 2d Decl. ¶¶ 12-13. Those assertions necessarily raise the question of what structure DOGE *does* have, which can only be ascertained through discovery.

Similarly, Ms. Gleason insists that DOGE lacks sufficient "budget" and "resources" to respond to CREW's FOIA request. *Id.* ¶ 30. Yet she does not dispute the evidence cited by CREW that the Office of Management and Budget has apportioned more than $39 million in taxpayer funds to DOGE. *See* CREW PI Mem. at 2 & n.1 (citing government apportionment records). Given her sworn representations to the Court, Ms. Gleason should be required to answer clarifying questions about DOGE's budget, including why it cannot utilize some portion of that $39 million to respond to a single FOIA request.

Ms. Gleason's declaration's facial insufficiency reinforces the need for discovery in several other respects. First, the declaration asserts in passing that DOGE "advises the President" and "works closely with other Senior White House advisors on a regular basis" without any detail at all, contradicting the description of DOGE's operations Ms. Gleason provides elsewhere in her declaration. *Compare* Gleason 2d Decl. ¶¶ 30-31, *with* Gleason 2d Decl. ¶¶ 7-25. Equally important, Ms. Gleason's declaration does not even establish that she is qualified to make it. Although it purports to rely solely on Ms. Gleason's personal knowledge to describe the full scope of what DOGE does, has done, does not do, and has not done, it conspicuously omits the

date on which Ms. Gleason was appointed DOGE Acting Administrator (despite the fact that the White House confirmed that she was the Administrator on February 25, 2025), what role she had before that undisclosed date, the manner in which she oversees DOGE, and, as described further below, the fact that she is an employee of HHS. *See generally* Gleason 2d Decl.

The need for thorough discovery both to test Ms. Gleason's vague declaration and to obtain accurate information about DOGE's operations is heightened by the government's broader pattern of obfuscation about DOGE. CREW made its FOIA request and filed suit specifically because DOGE has assiduously thwarted public disclosure of the most basic details of its internal operations, the facts of which are entirely in DOGE's possession and control. *See* CREW PI Reply at 4-10, ECF No. 13. This "unusual secrecy," has included, in addition to withholding information from the public and Congress, *see id.*, DOGE employees "reportedly declin[ing] to identify themselves to career officials on request," Defendant Musk's statement "that posters who released the names of [DOGE] employees online 'committed a crime,'" "using auto-deleting messaging apps like Signal," and "not even releas[ing]" the name of the DOGE Administrator "until February 25, more than a month into the new administration." 3/10/25 Mem. Op. at 8-9, 34-35.

And when pressed to identify the DOGE Administrator (and Defendants' sole declarant) the Administration first reveled in treating the inquiry like a game of cat-and-mouse rather than a serious question of public administration, only to then make repeated statements that Mr. Musk, and not Ms. Gleason, actually runs DOGE. CREW PI Reply at 10-11; CREW PI Mem. at 22-25. Most recently, Defendant Musk argued in a lawsuit against one of his companies that he should not be compelled to sit for a deposition because "[t]he White House has designated Musk a 'special government employee' *in charge of Establishing and Implementing the President's*

*Department of Government Efficiency ('DOGE')*" and he is too busy performing that "official task." Letter to Hon. Todd M. Hughes at 3, *Arnold v. X Corp.*, No. 23-cv-528 (D. Del. Mar. 19, 2025), ECF No. 144 (emphasis added) (attached as Exhibit 4). Ms. Gleason, meanwhile, has been kept conspicuously out of public view by the Defendants as DOGE has incessantly touted its work and Mr. Musk and the President have touted Mr. Musk's leadership of DOGE. Defendants' representations to this Court that Mr. Musk is *not* running DOGE are tantamount to legal gaslighting. At a minimum, they provide further grounds for discovery.

Defendants have also shown a stark lack of candor in this and other cases. In her March 14, 2025 declaration in support of DOGE's motion for reconsideration, Ms. Gleason swore, among other things, that she was a "full-time, government employee at USDS." 1st Gleason Decl.  3. She omitted that, unbeknownst to the Court and CREW, Ms. Gleason had, on March 4, accepted an appointment at HHS.

The timeline of Defendants' and Ms. Gleason's half-truths and material omissions is troubling in the extreme. On February 27, 2025, the court in *AFL-CIO*, No. 25-cv-339 (D.D.C. 2025), EFC No. 48, ordered expedited discovery because DOGE employees had apparently gained access to sensitive systems at various agencies, including HHS, in violation of federal law limiting such access to agency employees. On March 4, Ms. Gleason was officially appointed to HHS, and other DOGE members were appointed to other agencies at issue in that litigation. Ex. 3. On March 11, DOGE used those hirings to try to convince the court, in a sealed filing, to rescind its discovery order. Order at 6, *AFL-CIO*, No. 25-cv-339 (D.D.C. Mar. 19, 2025), ECF No. 71. DOGE requested that if the court did permit the filing under seal, that it permit DOGE to redact the names of the DOGE employees who were appointed to the agencies and those who administered their oaths. *Id.* at 8 n.7.

On March 14, while DOGE was using Ms. Gleason's appointment at HHS—temporarily under seal—to avoid its discovery obligations in *AFL-CIO*, DOGE was simultaneously using her sworn statement that she is a "full-time, government employee at USDS" to avoid its disclosure obligations pursuant to the Court's March 10 order, going so far as to accuse the Court of manifest injustice if it did not credit her inaccurate declaration. Defs.' Recons. Mem. at 13-19. Neither CREW nor the Court would have been aware of Defendants' and Ms. Gleason's double-dealing had the court in *AFL-CIO* not denied the government's motion to seal on March 18. Order, *AFL-CIO*, No. 25-cv-339, ECF No. 59. In so doing, that court also unsealed plaintiff's Notice of New Evidence, which made clear that Defendants and Ms. Gleason had withheld her sworn statement that she was a full-time employee of DOGE. Sealed Notice of New Evidence, *AFL-CIO*, No. 25-cv-00339, ECF No. 69. Their game exposed, Ms. Gleason's new declaration, while still omitting the material fact of her role at HHS, notably has changed her sworn description of her role from "full-time, government employee at USDS" to simply "full-time, government employee." Gleason 2d Decl. 3.

In sum, discovery is necessary to permit the Court to properly examine DOGE's operations, fairly probe the full scope of issues put forth by Defendants and Ms. Gleason, test the veracity and basis of Ms. Gleason's incomplete declaration, and protect against Defendants' further concealment of the facts.

### C.   The proposed discovery is narrowly tailored to seek non-privileged information directly relevant to DOGE's agency status.

As described in the attached declaration of Jonathan Maier, the requested expedited discovery is necessary to oppose Defendants' motion for summary judgment and to obtain sufficient information to resolve the larger issue of DOGE's substantial independent authority and, thus, the applicability of FOIA and the FRA. *See* Fed. R. Civ. P. 56(d); *see generally* Maier

Disc. Decl. CREW's narrowly tailored discovery requests target information necessary for those purposes, *Bolton*, 514 F. Supp. 3d at 165 (noting that Rule 56(d) requires a showing that discovery will provide the necessary information), while avoiding information that is privileged, unnecessary to determine DOGE's substantial independent authority, and likely to unreasonably burden DOGE, *see* Fed. R. Civ. P. 56(d); *Guttenberg*, 26 F. Supp. 3d at 97-98 (identifying breadth and burden of production as factors in assessing reasonableness of expedited discovery requests).

CREW seeks discovery on four aspects of DOGE's operations that relate directly to whether it wields substantial independent authority and the assertions in Ms. Gleason's second declaration. The first area is DOGE's structure and leadership, which will simultaneously provide clarity into the scope of DOGE's work, Ms. Gleason's role within DOGE, and the veracity of her declaration. The second area is how DOGE interacts with and directs actions by federal agencies, through agency DOGE Teams or otherwise. The third area is the scope of DOGE's work, including the contradictions between DOGE's widely reported actions and Ms. Gleason's characterizations of its work and whether DOGE actually advises the President. And the fourth area is, to the extent not made clear otherwise, whether Ms. Gleason was qualified to have made the sworn statements she did in her declaration. CREW's proposed discovery requests are well-tailored to those issue areas.

The attached declaration describes in detail why each interrogatory, Maier Disc. Decl. ¶¶ 13-18, request for production, *id.* ¶¶ 19-26, request for admission, *id.*   15, and depositions of DOGE's designee, Ms. Gleason, and Steven Davis, *id.* ¶¶ 27-29, are necessary to allow CREW to respond to DOGE's motion and for the Court to expeditiously determine whether DOGE wields substantial independent authority. CREW's declaration further confirms the obvious fact

17

that CREW is unable to, without the requested discovery, obtain or produce any of those facts on its own, *id.* ¶¶ 30-31, and that the information that CREW is seeking is discoverable, *id.* ¶¶ 32-34. Rather than repeating the contents of the declaration in full here, CREW highlights several factors that, in addition to the necessity of the facts to resolve FOIA's and the FRA's applicability to DOGE, make discovery particularly important here.

First, as noted, CREW is being forced to seek expedited discovery without the benefit of initial disclosures to guide it or an answer by Defendants that meaningfully narrows or frames the factual disputes at issue. *See supra* note 2. Up until Defendants' motion for partial summary judgment, CREW's detailed allegations regarding DOGE's exercise of substantial independent authority were met first by a blanket and legally insufficient claim that DOGE's placement in the EOP exempts it from FOIA's plain text, Defs.' PI Opp'n at 8 n.2, and now CREW faces a summary judgment motion that relies on, but barely discusses, a facially incomplete and dubious declaration.[3] *See supra* Part I.B.

Defendants' answer, filed one week later, provides no clarity on whether DOGE wields substantial independent authority. While Defendants' answer generally denies that numerous actions taken at federal agencies were "activities of" or actions taken "by USDS," *see, e.g.*, Answer ¶¶ 60, 63-70, 74, 76, 82, EFC No. 26, that narrow denial does not, even if true, speak to the likelihood that DOGE was directing or otherwise controlling the activities of federal agencies. Similarly, Defendants' answer does not deny the accuracy of the many press reports underlying CREW's allegations about DOGE's control over government operations, instead merely referring the Court back to them. *See, e.g.*, *id.* ¶¶ 2-3, 41-45, 60-65, 71, 79-82, 84-88, 90,

---

[3] Defendants' motion only cites Ms. Gleason's declaration a handful of times, namely to offer legal characterizations of executive orders, Defs.' SJ Mem. at 3, ECF No. 24-1, insist that Mr. Musk is not a part of DOGE, *id.* at 24, 28, and claim that DOGE has a small staff and no "front office," *id.* at 27.

97. DOGE also claims to lack sufficient information about its own operations, including if DOGE caused the U.S. Marshals to pressure federal judges to speed up the release of persons pardoned for crimes related to the attack on the U.S. Capitol, *id.*  73, if DOGE representatives appeared at the offices of USAID and threatened to call the U.S. Marshals in the course of obtaining access to a sensitive compartmented information facility over the objections of federal agency personnel, *id.*  74, or if DOGE personnel have refused to identify themselves to federal agency employees from whom they have demanded information, *id.*  76. CREW's proposed discovery seeks to facilitate expedited summary judgment briefing on these unanswered questions. Rule 56(d) and principles of equity require that CREW be given a meaningful opportunity to conduct expedited discovery now and to seek additional discovery at a later date, if needed.

Second, and relatedly, any burden on DOGE in responding to CREW's expedited discovery requests is a problem of its own making. DOGE *insisted on* taking the disfavored route of seeking summary judgment before filing an answer or allowing discovery to begin, specifically to accelerate a final determination on whether it is subject to FOIA and the FRA. *See supra* Part Note 2. And it presumably did so with full knowledge that the likely outcome of its filing would be expedited discovery that would potentially be more burdensome than discovery that would proceed in the normal course of litigation. Not only did counsel for CREW inform counsel for DOGE in a conferral email that it would seek discovery under Rule 56(d) if DOGE sought summary judgment at this point, but the Court also indicated that it would likely permit such discovery if DOGE did so. 3/19/25 Op. & Order at 14-15. DOGE cannot now claim undue burden in responding to discovery that it brought upon itself. And the Court should be skeptical of any claim of burden by DOGE, given its prior dubious claims that making a narrow, one-time

production ordered by the Court on March 10 would require it to create an entire permanent FOIA function. *Id.* at 16. The Court should continue to have "faith that the employees of a government organization charged with 'modernizing Federal technology and software' . . . are technologically sophisticated enough" to promptly and efficiently respond to CREW's targeted discovery requests. *Id.*

Third, CREW has narrowly tailored its discovery requests despite DOGE's total failure to narrow the scope of the facts at issue. As described above, determining whether DOGE wields substantial independent authority is a fact-intensive exercise that requires an examination of both what DOGE is authorized to do and what it actually does. *See supra* Part 1.A. Defendants, through Ms. Gleason's solitary declaration, have disputed virtually every aspect of DOGE's operations, including its administrative capabilities, its relationship to DOGE Teams, its leadership and oversight structure, and even the basic nature of its work. *See generally* Gleason 2d Decl. Despite this, CREW is seeking limited discovery that excludes, for example, all but a small number of email communications, depositions of numerous DOGE personnel identified in public reports as dictating the conduct of federal agencies, and communications or testimony of Defendant Musk, DOGE's self-identified leader. CREW's proposed discovery also specifically excludes communications with the President.

Finally, CREW's proposed expedited discovery requests seek to protect against, and CREW urges the Court to account for, DOGE and the wider government's track record of dilatory tactics and perfidy when faced with the possibility of public disclosure of information about DOGE. As described above, DOGE and Ms. Gleason have already submitted misleading sworn statements to the Court and Judge Bates has noted that there was reason to believe that the government was not providing his court with the "whole story" as it argued that he should

modify a modest order for expedited discovery in a separate case. *See supra* Part I.B. These are just the latest examples of the government's pattern of obfuscation whenever challenged about DOGE's operations. *See* CREW PI Reply at 9-10.

## CONCLUSION

For the reasons stated above, CREW respectfully requests that the Court grant its Motion for Expedited Discovery and issue an order: (1) requiring DOGE and the DOGE Administrator to serve written responses and any objections to CREW's written discovery requests within 7 days of the Court's order, produce documents responsive to CREW's request for production of documents within 14 days of the Court's order, and thereafter complete the depositions of Ms. Gleason, Mr. Davis, and DOGE's Rule 30(b)(6) designee within 10 days from the deadline for producing documents; (2) permitting additional discovery as needed, with leave of the Court; and (3) staying all briefing on Defendants' motion for partial summary judgment, ECF No. 24, pending completion of expedited discovery.

Dated: March 27, 2025

Respectfully submitted,

*/s/ Nikhel S. Sus*

Nikhel S. Sus (D.C. Bar No. 1017937)
Jonathan E. Maier (D.C. Bar No. 1013857)
Donald K. Sherman (D.C. Bar No. 90031810)
CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, D.C. 20044
Telephone: (202) 408-5565
Fax: (202) 588-5020
nsus@citizensforethics.org
jmaier@citizensforethics.org
dsherman@citizensforethics.org

*Counsel for Plaintiff*