# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DOGE SERVICE, *et al.*,<br><br>Defendants. | Case No. 1:25-cv-00511 |

## DECLARATION OF JONATHAN E. MAIER

I, JONATHAN E. MAIER, hereby declare as follows:

1. I am Senior Litigation Counsel at Citizens for Responsibility and Ethics in Washington ("CREW") and counsel for CREW in the above-captioned action. I make this declaration based on my personal knowledge.

2. I submit this declaration in support of *Plaintiff's Motion for Expedited Discovery* in the above-captioned action, and in compliance with Federal Rule of Civil Procedure 56(d) and the Court's March 19, 2025 Opinion and Order, ECF No. 23 at 23 (citing *U.S. ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F. 3d. 19, 26 (D.C. Cir. 2014) (internal quotations omitted), which directed that "any such declaration should 'outline the particular facts [CREW] intends to discover and why those facts are necessary to the litigation,' 'explain why [CREW] could not produce the facts in opposition to the motion for summary judgment,' and 'show the information is in fact discoverable.'"

**Background**

3.     On January 24, 2025, CREW submitted an expedited FOIA request to the United States DOGE Service ("DOGE") seeking, among other things, records related to changes to the operations of USDS, organizational charts, financial disclosures, communications involving the USDS Administrator, OMB, agencies outside of the Executive Office of the President, and Congress, and budget information and other information relevant to the newly-formed USDS. CREW submitted the USDS Request through OMB's FOIA office. On January 29, 2025, OMB granted expedited treatment of CREW's FOIA request but did not guarantee that the requested documents would be produced by a date certain. 3/10/25 Mem. Op. at 10-11, ECF No. 18.

4.     CREW initiated this litigation on February 20, 2025, asserting claims against Defendants under the Freedom of Information Act ("FOIA") and the Federal Records Act ("FRA"). *See generally* Compl., ECF No. 1. CREW simultaneously filed a motion for preliminary injunction that sought, among other things, processing and production of CREW's FOIA request to DOGE by March 10 and an order to DOGE, Defendant Administrator of the U.S. DOGE Service, and Defendant Elon Musk to preserve all documents until the case was resolved. *See generally* CREW PI Mem., ECF No. 2-1. Both CREW's complaint and motion alleged that DOGE is an "agency" under FOIA and the FRA because it is a component of the Executive Office of the President ("EOP") that exercises substantial authority independent of the President. Compl. at 13-27; CREW PI Mem. at 18-25.

5.     CREW based its claim that DOGE exercised substantial independent authority on an extensive record of press reports, public statements by Defendant Musk and the President, and the text of various executive orders and presidential memoranda establishing DOGE's

authority and giving it power over the operations of the executive branch. Compl. at 13-27; CREW PI Mem. at 18-25.

6. DOGE opposed that motion but did not dispute that DOGE exercised substantial independent authority, instead asserting that because DOGE is a stand-alone component of the EOP, it is not subject to FOIA or the FRA. 3/10/25 Mem. Op. at 27-28. DOGE offered no evidence in opposition to CREW's motion. In CREW's reply, it narrowed the specific documents from its FOIA request for which it was seeking preliminary injunctive relief. CREW PI Reply at 15-16, ECF No. 13.

7. On March 10, the Court partially granted CREW's motion and issued a preliminary injunction requiring DOGE to begin expedited processing of CREW's FOIA request, DOGE to provide an estimate the number of responsive documents by March 20, and the parties to meet and confer and submit a joint status report by March 27 with a proposed processing and rolling production schedule for the narrowed set of documents sought by CREW. 3/10/25 Mem. Op. at 37.

8. On March 14, DOGE filed a motion for reconsideration of the Court's March 10 order. Defs.' *See generally* Defs.' Recons. Mem., ECF No. 20-1. In support of that motion, it submitted a declaration from DOGE's purported Acting Administrator Amy Gleason that made various conclusory statements about her role and DOGE's operations, but that did not indicate when she became Administrator, provide details or evidence to support her factual assertions, or address any of the reported actions taken by DOGE cited in CREW's complaint and motion for preliminary injunction. *See generally* 1st Gleason Decl., ECF No. 20-2. Ms. Gleason's declaration also stated that she was a "full-time, government employee at" DOGE. *Id.* ¶ 3.

9. On March 18, CREW opposed DOGE's motion. CREW Recons. Opp., ECF No. 21. Also on March 18, CREW learned through a public filing in another case that Ms. Gleason had been appointed to a position at the Department of Health and Human Services (HHS) on March 4, 2025, contradicting her sworn statement that a "full-time, government employee at [DOGE]." 1st Gleason Decl. ¶ 3.

10. On March 19, the Court denied DOGE's motion for reconsideration. *See generally* 3/19/25 Op. & Order, ECF No. 23. In so doing, it found that DOGE's submission of Ms. Gleason's declaration was untimely and that her sworn statements about DOGE's operations and leadership were contradicted by statements by Mr. Musk and the President, the observations of other courts that have evaluated DOGE's conduct, and public reports of its conduct. *Id.* at 9-12.

11. Also on March 19, Defendants DOGE, its Administrator, Mr. Musk filed a motion for partial summary judgment asserting that DOGE was not an agency under FOIA or the FRA because it does not wield substantial independent authority. *See generally* Defs.' SJ Mem., ECF No. 24-1. To support their motion, Defendants attached a second declaration by Ms. Gleason that repeated the conclusory factual assertions that the Court noted on March 19 contradicted known facts. *See generally* 2d Gleason Decl., ECF No. 24-2. Ms. Gleason also revised the description of her employment to say only that she was a "full-time, government employee." *Id.* ¶ 3. Ms. Gleason's second declaration, like the first, provided no detail and attached nothing to support her assertions.

### The Particular Facts Sought by CREW and Why They Are Necessary

12. All of the facts sought by CREW are necessary to the determination of whether DOGE exercises substantial independent authority.

13. Interrogatory Nos. 1 and 2 seek facts regarding the DOGE employees and DOGE Teams discussed in Ms. Gleason's second declaration, including information on the nature of their positions, to whom they report, with what DOGE entity they are employed, under whose authority they were hired, their physical locations, and the extent to which they also work with other federal agencies. Each of these facts are necessary to determine the extent to which DOGE has a defined structure, the extent to which Ms. Gleason or others actually supervise DOGE employees to ensure that their work is within DOGE's authority, who is making personnel decisions, and the extent to which DOGE personnel are also working for other agencies. Each of these facts relates directly to the scope and nature of DOGE's work and the extent to which it actually exercises substantial independent authority.

14. Interrogatory Nos. 3 and 4 seek facts regarding the identity of each DOGE Administrator, the manner in which DOGE Administrators have been selected, the contours of DOGE's management and leadership, and how DOGE employees and DOGE Teams are selected and overseen. These facts are necessary to ascertain the veracity of and basis for the factual assertions in Ms. Gleason's second declaration, the extent to which the DOGE Administrator is free to actually influence the operations of DOGE and how the Administrator might be influenced, the extent to which DOGE operations might be influenced in a manner not reflected in its formal structure, how DOGE leadership monitors and influences the work of DOGE employees, and whether DOGE leadership would be aware of efforts by DOGE employees to control the actions of federal agencies.

15. Interrogatory Nos. 5, 6, 7, and 8 and Request for Admission Nos. 1 through 10 seek facts regarding which federal agency contracts, grants, leases, or similar instruments DOGE or DOGE Teams have directed or recommended to be cancelled or rescinded, which federal

agency employees or positions DOGE or DOGE Teams have directed or recommended to be terminated, placed on leave, changed, or left open, and the extent to which federal agencies follow DOGE's recommendations. These facts are necessary because of the extensive public record of such terminations, cancellations, and adverse employment decisions reportedly undertaken by DOGE in CREW's complaint, Compl. 3, 19, which Ms. Gleason's second declaration does not address. Contract administration, grant administration, real property management, reducing the size of the federal workforce, and influencing individual employment decisions are also areas in which DOGE has been granted specific authority by executive order and presidential memorandum. *See, e.g.* Establishing and Implementing the President's "Department of Government Efficiency," Exec. Order No. 14158 (Jan. 20, 2025), 90 Fed. Reg. 8441 (Jan. 29, 2025); Hiring Freeze, Presidential Mem. (Jan. 20, 2025), 90 Fed. Reg. 8247 (Jan. 28, 2025); Reforming the Federal Hiring Process and Restoring Merit to Government Service, Exec. Order No. 14170 (Jan. 20, 2025), 90 Fed. Reg. 8621 (Jan. 30, 2025); Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative, Exec. Order. No. 14210 (Feb. 11, 2025), 90 Fed. Reg. 9669 (Feb. 14, 2025); Implementing the President's Department of Government Efficiency" Cost Efficiency Initiative, Exec. Order 14222 (Feb. 26, 2025), 90 Fed. Reg. 11095 (Mar. 3, 2025). The extent and nature of DOGE's directives and recommendations relate directly to both its substantial independent authority, specifically its interactions with federal agencies, and the assertions in Ms. Gleason's second declaration about the nature of DOGE's work.

16.   Interrogatory Nos. 9 and 10 seek the identification of each federal agency database or data management system to which DOGE employees have obtained or planned to obtain access since January 20, 2025 and facts about DOGE's use or threatened use of federal

law enforcement authority against federal agency employees. These facts are necessary because of an extensive public record of DOGE's access to sensitive agency systems and its invocation of federal law enforcement authority when gaining access to those systems and government offices cited in CREW's complaint, Compl. at 2-3, 19-23, which Ms. Gleason's second declaration does not address. These facts relate directly to DOGE's control of federal agency systems and facilities and the extent to which DOGE has invoked law enforcement to assert its authority in the face of agency resistance, both of which are central to whether DOGE wields substantial independent authority and the veracity of the characterizations of DOGE's work in Ms. Gleason's second declaration.

17. Interrogatory Nos. 11 and 12 seek facts regarding the use of non-governmental systems by DOGE employees and DOGE Team members to conduct government business. These facts are necessary to test the veracity of Ms. Gleason's representations about DOGE's record retention practices, to determine the extent to which DOGE employee conduct is even subject to the supervision of DOGE leadership, who is speaking on behalf of DOGE, and whether these modalities could be used by DOGE employees to direct the conduct of federal agencies, particularly given the fact that CREW's complaint contains allegations based on a public record of DOGE's use of X and Signal to conduct official business, Compl. at 24-27, that Ms. Gleason's second declaration does not address.

18. Interrogatory No. 13 seeks facts regarding the basis for Defendants' responses to CREW's Requests for Admission. These facts are necessary to determine the scope and true meaning of the Defendants' admissions and denials, particularly because CREW has not received Defendants' initial disclosures or been able to propound initial discovery before now.

19. Request for Admission No. 11 seeks information regarding the $41 million that the Office of Management and Budget has apportioned to the "United States DOGE Service" account since January 20, 2025. This fact is necessary because apportionments to DOGE relate directly to the likelihood that DOGE is engaged in work beyond merely advising the President and different in nature than providing reimbursable consulting services to federal agencies, the basis on which the apportionments were made, the resources available to DOGE in the course of responding to CREW's discovery requests, and to test the veracity of assertions in Ms. Gleason's first and second declarations regarding DOGE's resources and the extent of burdens that it claims.

20. Request for Production No. 1 seeks Interagency Agreements and Memoranda of Understanding between DOGE and other federal agencies. These documents are necessary to test the veracity of the characterizations of DOGE's work and relationships to federal agencies in Ms. Gleason's second declaration, to determine the extent to which formal agreements exist between DOGE and the federal agencies with which it interacts, and to determine the scope of any such agreements, each of which relates directly to DOGE's role with, and direction of, federal agencies and thus its independent authority.

21. Request for Production Nos. 2, 3, and 4 seek DOGE's Visitor Access Requests and General Terms and Conditions Invoices, commonly referred to as G-invoices, and timekeeping records of DOGE employees and DOGE Team members reflecting DOGE-related work. These documents are necessary to test the veracity of the characterizations of DOGE's work in Ms. Gleason's second declaration and because they reflect the extent to which DOGE employees are working at or otherwise accessing the facilities of federal agencies. They also reflect the extent and nature of the work performed by DOGE employees and DOGE Teams,

which is of particular importance because even Ms. Gleason, DOGE's purported Administrator, also holds a position at another federal agency. They are particularly important given the fact that CREW's complaint contains numerous allegations regarding specific instances of DOGE directing federal agency decisions, Compl. at 17-25, that Ms. Gleason's second declaration does not address.

22. Request for Production Nos. 5, 6, and 7 seek directives or announcements of them from DOGE to DOGE Teams or federal agencies, DOGE Teams to federal agencies, and the DOGE Administrator to DOGE or DOGE Teams. They are necessary to test the veracity of the characterizations of DOGE's work and its scope in Ms. Gleason's second declaration and because they reflect how directives pass from DOGE leadership to DOGE components and from DOGE to federal agencies, which is crucial to determining the extent to which DOGE directs federal agency decisions. They are particularly important given the fact that CREW's complaint contains numerous allegations regarding specific instances of DOGE directing federal agency decisions, Compl. at 17-25, that Ms. Gleason's second declaration does not address.

23. Request for Production Nos. 8 and 9 seek documents formalizing DOGE's structure and authority and describing what it understands to be the scope of its and the DOGE Teams' authority, functions, and operations. These documents are necessary to establish DOGE's organization, oversight structure, and understanding of its own authority and the authority of DOGE Teams, and whether that authority has been made clear to DOGE leadership or rank-and-file employees as they have worked with federal agencies. These issues relate directly to the extent to which DOGE personnel do, or believe they can, exert control of federal agencies. They are also necessary to ascertain the extent to which DOGE has made any effort to formalize its operations or their scope, which is particularly significant because Defendants'

9

motion for partial summary judgment and Ms. Gleason's second declaration cite executive orders and presidential memoranda as the only guideposts for DOGE's conduct. They are particularly important given the fact that CREW's complaint contains numerous allegations regarding specific instances of DOGE directing federal agency decisions, Compl. at 17-25, that Ms. Gleason's second declaration does not address.

24.     Request for Production No. 10 seeks announcements to DOGE employees and DOGE Team members regarding the appointment of the DOGE Administrator. These documents are necessary to determine the extent to which the DOGE Administrator was even identified to DOGE employees and whether any such announcement described the role of the Administrator, how to reach the Administrator, or the extent of Administrator's oversight of their work. These facts relate directly to the veracity of the characterizations of DOGE's operations in Ms. Gleason's second declaration, whether DOGE adheres to the authority provided to it by executive order, and whether any person other than the DOGE Administrator is actually administering it. They are also particularly important given the facts that press reports from shortly before Ms. Gleason became DOGE Administrator indicated that DOGE employees did not know who the Administrator was and DOGE was unable to identify the Administrator who preceded her when asked by the court in other litigation, CREW PI Reply at 10, and Ms. Gleason's second declaration does not indicate when she became Acting Administrator.

25.     Request for Production Nos. 11 and 12 seek copies of documents that are ultimately produced by DOGE in other litigation regarding the scope of its work and the legal authority of its employees. These documents are necessary because they bear on DOGE's structure, authority, and interactions with federal agencies and CREW must ensure that the information provided by DOGE in response to CREW's discovery requests is accurate and

consistent with its statements in other litigation. As described in CREW's motion for expedited discovery, DOGE and Ms. Gleason have already made misleading statements to the Court in an effort to convince it to reconsider its March 10 order requiring DOGE to begin processing requested documents for production. As also noted in CREW's Motion for Expedited Discovery, in at least one other DOGE-related case, the court learned that a government declarant made a sworn statement that conflicted with that declarant's live testimony in another case and held that there was reason "to be cautious of concluding what defendants put forward [in opposing discovery] is the whole story." Mem. Op. and Order, *AFL-CIO v. Dept. of Labor*, No. 25-cv-339 at 13 (D.D.C. Mar. 19, 2025), ECF No. 71.

26. Request for Production No. 13 seeks all direct messages sent by the @DOGE X account relaying any final directives to a federal agency since January 20, 2025. These messages are necessary because the public record cited in CREW's complaint, Compl. at 24-27, establishes that DOGE is conducting official business on its X account, and its directives to federal agencies on that platform are direct evidence of its control of federal agencies.

27. Request for Production No. 15 seeks all documents describing DOGE's record retention and preservation policies. These documents are necessary to test the veracity of assertions regarding DOGE's record retention in Ms. Gleason's second declaration and to ascertain whether records potentially responsive to CREW's discovery requests have been lost, and are particularly important given the DOGE's "unusual secrecy." 3/10/25 Mem. Op. at 8-9, 34-35.

28. The deposition of DOGE pursuant to Fed. R. Civ. P. 30(b)(6) is necessary to obtain DOGE's binding testimony regarding its substantial independent authority, which is both fact-intensive and has been placed squarely at issue by Defendants in their motion for partial

summary judgment and Ms. Gleason's second declaration. That deposition is also necessary to test the veracity of Ms. Gleason's second declaration, which is on its face incomplete and inconsistent.

29. The deposition of Ms. Gleason is necessary to allow CREW to test the veracity of her second declaration and understand her cursory assertions in it, particularly because she is DOGE's only declarant regarding its substantial independent authority. As Defendants' sole declarant and the purported leader of DOGE, her deposition will establish the factual basis, or lack thereof, for her declaration's assertions about DOGE's operations and Mr. Musk's DOGE role and, if she is in fact knowledgeable, will provide additional information regarding all manner of DOGE's operations.

30. The deposition of Steven Davis is the most efficient vehicle to discover the details of DOGE's operations and Mr. Musk's DOGE role, and is made a necessity by Ms. Gleason's lack of candor. Mr. Davis is a DOGE employee who has been widely reported to be the day-to-day manager of DOGE's operations and a close associate of Mr. Musk,[1] and former DOGE staff have reported that he "has always been articulated [by managers at DOGE] as the leader" and that managers at DOGE have said that he "is serving in chief of staff role."[2] Mr. Davis will thus have unique insight into DOGE's operations, particularly those relevant to whether it wields substantial independent authority, and Defendants Musk's role. Mr. Davis's deposition is also

---

[1] *See, e.g.*, Ryan Mac *et al.*, *Meet Elon Musk's Top Lieutenant Who Oversees DOGE*, NY Times (Mar. 20, 2025), https://www.nytimes.com/2025/03/20/technology/elon-musk-steve-davis-doge.html;  Ken Thomas *et al.*, *The Musk Deputy Running DOGE's Huge Cost-Cutting Drive*, Wall Street Journal (Feb. 10, 2025), https://www.wsj.com/politics/policy/steve-davis-elon-musk-cost-cutting-cc1dc7c9); Sarah McBride, *Elon Musk's Go-To Cost-Cutter is Working for DOGE*, Bloomberg (Dec. 26, 2024), https://www.bloomberg.com/news/articles/2024-12-26/who-is-steve-davis-elon-musk-s-go-to-cost-cutter-at-doge.
[2] Markena Kelly, *Not Even DOGE Employees Know Who's Legally Running DOGE*, Wired (Feb. 18, 2025), https://www.wired.com/story/doge-elon-musk-leadership-administrator/.

necessary to fill the factual gaps that will very likely emerge from Ms. Gleason's testimony, including with respect to any time period during which Ms. Gleason was not serving as DOGE's Acting Administrator.

### CREW Cannot Produce the Facts in Opposition to Defendants' Motion for Partial Summary Judgment

31. CREW is unable to produce the facts above in opposition to defendants' motion for summary judgment. Each of the facts and documents for which CREW seeks discovery is nonpublic and internal to DOGE and in DOGE's custody, control, and possession.

32. To date, CREW has had no opportunity for discovery in this case or any other matter in which those documents might be produced. CREW has also conducted diligent, repeated, and ongoing searches to identify if any of the information or documents described above, or other information or documents that may allow CREW to meaningfully respond to Defendants' motion for summary judgment, have been released by DOGE and are publicly available. To the best of my knowledge, DOGE has not provided to CREW or otherwise made publicly available any such facts or documents.

### The Information Sought by CREW is Discoverable

33. All of the information sought by CREW is discoverable. In accordance with Federal Rule of Civil Procedure 26(b)(1), each of its discovery requests seek non-privileged information or documents relevant to both CREW's FOIA and FRA claims against DOGE and Defendants' defense, raised in their pending motion for partial summary judgment, that DOGE is not an "agency" under FOIA and the FRA because it does not exercise substantial independent authority. Defendants have acknowledged that the issue is an "important threshold legal issue" in the litigation.

34.	CREW's requests do not seek information or documents that it expects will unreasonably interfere with any government function or have any impact on the overall operations of DOGE or other EOP components.

35.	CREW's requests direct that nothing in them "should be construed to apply to the President of the United States or direct communications with the President."

36.	All of the information and documents sought by CREW are within the custody, control, and possession of DOGE and its agents.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 27, 2025                              Respectfully submitted,

                                                   */s/ Jonathan E. Maier*
                                                   Jonathan E. Maier