# Exhibit 4

# Morgan Lewis

**Jody C. Barillare**
Partner
+1.302.574.7294
jody.barillare@morganlewis.com

March 19, 2025

**VIA ECF**

Hon. Todd M. Hughes
U.S. District Court for the District of Delaware

Re:   *Arnold v. X Corp.*, No. 1:23-cv-528
      Discovery Dispute re: Deposition of Elon Musk

Your Honor:

Consistent with this Court's standing discovery order involving discovery disputes § (g)(iii) and instructions from chambers, Respondents X Corp., X Holdings Corp., and Elon Musk respectfully submit the following three-page letter outlining the issues in dispute and Respondents' position on those issues.

                                    Respectfully submitted,

                                    /s/ Jody C. Barillare

                                    Jody C. Barillare (#5107)

**Morgan, Lewis & Bockius** LLP

1201 N. Market Street, Suite 2201
Wilmington, DE  19801          ☎ +1.302.574.3000
United States                   📠 +1.302.574.3001

Page 1

Respondents submit this letter opposing Plaintiffs' request to depose Elon Musk and seeking a protective order. Plaintiffs cannot satisfy the requirements to justify an "apex deposition" of X Corp.'s highest-ranking corporate executive, who is also a high-ranking government official. They have not identified any relevant, unique, non-repetitive personal knowledge they seek from Musk. Plaintiffs' counsel already possesses a transcript of a full-day deposition of Musk covering the layoffs that are the subject of this case. And Plaintiffs' counsel will himself depose Musk in the next two weeks in related arbitrations about issues relevant to this case. In addition to showing no need for Mr. Musk to be deposed a third time, Plaintiffs have not completed less intrusive discovery, *e.g.*, written requests to Musk or depositions of lower-ranking officials. Their failure to exhaust non-apex discovery and their counsel's public statements suggest Plaintiffs do not seek to depose Musk to develop new, relevant facts but to harass him—an abuse of the discovery process. Respondents request that the Court issue a protective order precluding this cumulative apex deposition or, at the very least: (i) delay decision on the protective order until after the pending motion to dismiss and motions to quash and (ii) strictly limit any deposition to defined, necessary topics and two hours at most.

## I. Background

As the Court knows, this case is proceeding in parallel with other cases and arbitrations arising from the same reorganization and layoffs beginning in November 2022. Many former employees are represented by Lichten & Liss-Riordan, P.C. ("LLR"), which deposed Musk for a full day on May 9, 2024, covering all relevant topics here: including layoffs, severance, alleged promises and contracts, the Merger Agreement, and alleged discrimination. By agreement, that transcript is being used in all LLR cases, and has been provided to Plaintiffs' counsel Mr. Cohen for use in his cases.

Nevertheless, Plaintiffs' counsel sought to depose Musk for seven hours on the same topics in his clients' bellwether arbitrations. An arbitration panel permitted only a two-hour deposition limited to non-cumulative topics. *See* Exhibit A (Panel Order). Then, Plaintiffs served a seven-hour deposition notice on Musk in this litigation—effectively seeking 16 hours of testimony total. *See* Exhibit B (Notice).

This extraordinary request is in keeping with Mr. Cohen's public letter to Musk posted on Twitter on December 1, 2022, which addressed Musk as "Chief Twit," accused Musk of "breaking [his] word and screwing over [his] ex-employees," threatened personal liability, and stated: "deposing you will be a joy." Exhibit C (Cohen Letter) at 1-2.

Sure enough, this case named Musk as a defendant. Musk moved to dismiss, and Magistrate Judge Burke recommended dismissal of seven claims in full and an eighth in part, including because the complaint does "not plead that *Musk himself* made a false representation." ECF No. 121 at 8. Musk has objected to the aspect of the R&R recommending not to dismiss Plaintiffs' veil-piercing claim, ECF No. 134, and this Court has scheduled argument for next month. *See* ECF Nos. 141, 142.

Despite having access to two Musk depositions and not yet deposing *any* other X Corp. witnesses, Plaintiffs' counsel now seeks the "joy" of deposing Musk multiple times. Ex. C at 2.

## II. The Court Should Issue A Protective Order.

Under the apex doctrine, "courts have held that depositions of high-ranking corporate and governmental officers will be allowed only upon a showing that those officers have particularly relevant information to offer that is not equally available from other, less burdensome sources." *Brit. Telecomms. PLC v. IAC*, 2020 WL 1043974, at *8-9 (D. Del. 2020) (citing cases) (quashing deposition of CEO given alternative source of information); *United Therapeutics Corp. v. Liquida Techs., Inc.*, 2024 WL 4791943, at *2 (D. Del. 2024) (doctrine "generally bars the deposition of a high-ranking official" if the official has no unique first-hand knowledge *or* there is an alternative source). The apex doctrine "recognizes that depositions of high-level officers severely burden[] those officers and the entities they represent, and that adversaries might use this severe burden to their unfair advantage." *Jessen v. Model N, Inc.*, 2024 WL 3371433, at *2 (D.N.J. 2024). The party seeking the deposition

Page 2

must show (1) that the executive has direct, unique, relevant knowledge and (2) the information cannot "be obtained from lower-level employees or through less burdensome means, such as interrogatories." *Ford Motor Co. v. Edgewood Props., Inc.*, 2011 WL 677331, at *2. (D.N.J. 2011); *United States v. Medtronic, Inc.*, 2018 WL 11145993, at *1 n.1 (E.D. Pa. 2018) (both factors "must be satisfied to justify the deposition of an apex witness"). Courts also consider whether the deposition is sought "for an improper purpose, such as harassment." *LivePerson, Inc. v. [24]7.Ai, Inc.*, 2018 WL 1319424, at *2 (N.D. Cal. 2018). In making these inquiries, courts in this circuit apply "a rebuttable presumption that a high-level official's deposition represents a significant [and undue] burden." *U.S. ex rel. Galmines v. Novartis Pharms. Corp.*, 2015 WL 4973626, at 82 (E.D. Pa. 2015).

Plaintiffs here cannot overcome the presumption, so the Court should not "depart from the general rule against permitting the [apex] deposition." *United Therapeutics*, 2024 WL 4791943, at *3.

**A. Claimants have not shown that Musk has unique, non-duplicative knowledge of relevant facts.** A party seeking an apex deposition first must show that the executive's testimony would not be "duplicative" of information the party already possesses. *Koken v. Lexington Ins. Co.*, 2005 WL 6051364, at *1 (E.D. Pa. 2005) (barring apex deposition as "duplicative, harassing, and unduly burdensome"). An apex deponent's knowledge must not only be relevant and firsthand, but "unique." *Medtronic*, 2018 WL 11145993, at *1 n.1. Any deposition here would be plainly duplicative because Plaintiffs possess a 377-page transcript of Musk's prior seven-hour deposition covering all potentially relevant information known to Musk. Plaintiffs' counsel also was granted leave to depose Musk for an additional two hours by a panel of three arbitrators in connection with employee layoff and severance-related issues. *See* Ex. A. No more testimony is needed.[1]

Plaintiffs have indicated they seek information from Musk to support a veil-piercing claim. A motion to dismiss that claim is currently pending before this court, with oral argument scheduled for April 2025. At the very least, the Court should wait until it resolves that motion before resolving the Musk deposition issue—since a dismissed claim can provide no basis for a third apex deposition. Even if not dismissed, there is no indication that Musk has *unique* knowledge regarding veil-piercing, which depends on whether the corporation is essentially "a sham entity designed to defraud investors and creditors." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003). It is patently absurd to contend that X Corp., which runs one of the most prominent social media platforms and is backed by some of the most sophisticated venture capital firms, is such a "sham entity designed to defraud investors and creditors." *Id.* In any event, the relevant factors concern the maintenance of separate corporate formalities and records, capitalization, commingling of assets, and so on, none of which is uniquely within Musk's knowledge. *E.g.*, *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 529-30 (D. Del. 2008).

Setting aside the veil-piercing claim, Plaintiffs' counsel has identified no relevant topic about which Musk has not already testified or that counsel could not discover elsewhere. That is reason enough to deny this apex deposition.[2]

**B. Plaintiffs have not completed less intrusive means of discovery, much less shown they cannot obtain needed information from other witnesses.** When the information being sought "could have been obtained from other available witnesses," or through interrogatories, plaintiffs "will not be permitted to depose [the] highest ranking executive[]." *Jessen*, 2024 WL 3371433, at *6 (quoting *Younes v. 7-Eleven, Inc.*, 2015 WL 12844446, at *2 (D.N.J. 2015)) (granting protective order); *Reif v. CNA*, 248 F.R.D. 448, 452-54 (E.D. Pa. 2008) (plaintiff "must demonstrate the information can only be obtained from" the CEO and must "first depose lower level employees" and show they "could not provide the necessary information"). Here, Plaintiffs are seeking to depose

---

[1] Even without reference to the apex doctrine, the deposition would be "unreasonably cumulative or duplicative," and the information "can be obtained from some other … less burdensome" source. Fed. R. Civ. P. 26(b)(2)(C)(i).

[2] Nor is Plaintiffs' counsel's claim that he would have deposed Musk better than LLR did persuasive. He has already been granted two additional hours to cure any alleged deficiencies. *See* Ex. A.

Page 3

X Corp.'s highest ranking official first—before they depose any lower-level employees, and before submitting interrogatories to Musk. They clearly have not exhausted other, less intrusive means of discovery.[3] And again, simply using the 9 hours of Musk deposition testimony they already have access to is clearly less intrusive than ordering another deposition. *See Reif*, 248 F.R.D. at 452 (citing case denying deposition where plaintiff already had copy of "prepared statement" from the apex witness).

And the presumed undue burden from a deposition is heightened because Musk is not only X Corp.'s (and other companies') highest executive, but he is a high-ranking government official. *Cf. Apple v. Samsung*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (weighing "a person's degree of 'apex-ness' in relation to these factors"). The White House has designated Musk a "special government employee" in charge of Establishing and Implementing the President's Department of Government Efficiency ("DOGE"). 90 FR 8441, https://tinyurl.com/26vey9vr. Such "high level government officials [must be] permitted to perform their official tasks without disruption" by depositions, given their "greater duties and time constraints than other witnesses." *Johnson v. Att'y Gen. of N.J.*, 2015 WL 4915611, at *3 (D.N.J. 2015). This rule raises Plaintiffs' bar under the apex doctrine, which they clearly have not met.

**C. There is palpable risk of harassment here.** Plaintiffs have not satisfied either requirement necessary to justify an apex deposition. Both requirements ultimately serve to deter depositions that would harass or unjustifiably burden executives and government officials. *See, e.g., In re Transpac. Passenger*, 2014 WL 939287, at *5 (N.D. Cal. 2014). All available evidence suggests that Plaintiffs seek to depose Musk for an improper purpose, which the Court should not indulge.

At the meet and confer, Plaintiffs' counsel would not agree to limit the topics of the deposition, no matter whether information is available elsewhere or whether *Musk already testified on a topic*. That is evidence of an intent to harass. *See Schneider v. Chipotle Mexican Grill, Inc.*, 2017 WL 4127992, at *3 n.3 (N.D. Cal. 2017). Counsel also indicated that he seeks to ask Musk about such irrelevant topics as DOGE employees. And Counsel failed to agree to a meaningful time limit, conceding his goal to circumvent the arbitration panel's 2-hour limit (Ex. A) to obtain a full additional day.

Moreover, counsel is a prolific Twitter user who has a personal axe to grind with Musk—which was profiled in the New York Times. *See* John Leland, *How a Profane Joke on Twitter Spawned a Legal Army*, N.Y. Times (May 26, 2024), https://tinyurl.com/3kvr4fxs ("[Mr. Cohen] blames Mr. Musk for what he considers the deterioration of a platform that had once allowed his group of square pegs to find one another and to thrive. 'In a very large sense, he broke our home,' Mr. Cohen said. 'So there would be a certain poetic justice,' he added, 'to get a victory for these clients.'"). And Mr. Cohen's public letter tweeted at Musk states a desire to depose Musk for the "joy" of it—an improper purpose. Ex. C at 2; *see* Cohen Dec. 1, 2022 Tweet, https://tinyurl.com/yx7mxuwt (suing Musk "[wi]ll be fun as hell"). It is difficult to imagine a case where the apex doctrine more clearly applies.

### III. Any Decision On This Deposition Should Come After Other Pending Decisions.

This deposition is not only premature because Plaintiffs have not exhausted other discovery, but it should await the Court's decision on (i) pending motions to quash third-party subpoenas and (ii) the motion to dismiss, which could make veil-piercing irrelevant and thus improper for discovery from anyone. There is no reason to rush to depose Musk before these decisions. *See* ECF No. 50.

### IV. Conclusion

Respondents respectfully request a protective order as discussed above.

---

[3] Plaintiffs may respond that they have sought depositions from certain third-party "Musk advisors" but their motions to quash are pending before this Court. At most, that shows the Court should resolve those motions *before* considering whether to order Musk's deposition. But that argument is also misdirection, given that Plaintiffs have not exhausted information-gathering from X Corp. employees. *See First Fid. Bancorp. v. Nat'l Union Fire Ins. Co.*, 1992 WL 46881, at *4 (E.D. Pa. 1992) (must depose other employees first).

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER,

          Plaintiffs,

v.

X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC. and ELON MUSK,

          Defendants.

Case No. 1:23-cv-528-JLH

## NOTICE OF DEPOSITION OF ELON MUSK

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, Plaintiffs Wolfram Arnold, Erik Froese, Tracy Hawkins, Joseph Killian, Laura Chan Pytlarz, and Andrew Schlaikjer ("Plaintiffs") by and through their undersigned counsel, will take the deposition upon oral examination of Defendant Elon Musk ("Musk") on March 20, 2025 at 9:30 Eastern time at 1201 North Market Street, Wilmington, DE 19801. The testimony will be recorded by stenographic means, and may also be recorded by audio, video, or real-time transcription means before a notary public or other officer authorized to administer oaths. Plaintiffs may seek to use the testimony and the videotape at the time of trial.

**OF COUNSEL**

Akiva Cohen (*pro hac vice*)
Dylan M. Schmeyer (*pro hac vice*)
Michael D. Dunford (*pro hac vice*)
Lane A. Haygood (*pro hac vice*)
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com dschmeyer@kusklaw.com
mdunford@kusklaw.com

/s/ *Joseph L. Christensen*
Joseph L. Christensen (#5146)
CHRISTENSEN LAW LLC
1201 N. Market Street, Suite 1404
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensenlawde.com

*Counsel for Wolfram Arnold, Erik Froese, Tracy Hawkins, Joseph Killian, Laura Chan Pytlarz, and Andrew Schlaikjer*

Dated: February 25, 2025

2

# EXHIBIT C

KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
COUNSELORS AT LAW
1700 BROADWAY, 16TH FLOOR
NEW YORK, NEW YORK 10019

(212) 400-4930

December 1, 2022

**Via Email**

Elon Musk
Chief Twit
Twitter, Inc.
Market Square
1355 Market St #900
San Francisco, CA

Alex Spiro
Acting General Counsel

Elon, Alex,

    I am a Partner at Kamerman, Uncyk, Soniker, & Klein, P.C., counsel to many of the employees you recently laid off from Twitter, Inc. ("Twitter"),[1] and I'm sure you've been expecting this. Ever since you took over Twitter, you've been attempting to tap-dance your way out of Twitter's binding obligations to its employees, which include paying the agreed severance to the thousands of people you laid off just in time for the holidays. If basic human decency and honor isn't enough to make you want to keep your word, maybe this will:

    If you don't unequivocally confirm by **Wednesday, December 7** that you intend to provide our clients with the full severance Twitter promised them, we will commence an arbitration campaign on their behalf, with each employee filing a separate individual arbitration, as required by the terms of your arbitration agreement. Under both California law and the JAMS arbitration rules, Twitter will be responsible to pay the arbitration costs for each individual arbitrator and arbitration. Consistent with the terms of Twitter's arbitration agreement, those arbitrations will be held in jurisdictions across the country – no more than 45 miles from where each employee worked. Not only will you lose on the merits, but even if you somehow won the victory would be pyrrhic: Twitter will pay far more in attorneys' fees and arbitration costs than it could possibly "save" in severance due our clients.

    And to be clear, Elon, you *will* lose, and you know it. As you know, in Section 6.9(a) of the Agreement and Plan of Merger between X Holdings I & II and Twitter (the "Merger Agreement"), you and Twitter each agreed to provide Twitter's Continuing Employees with severance payments and benefits no "less favorable than those applicable to [them]" immediately prior to the merger if they were terminated within a year from the date of the merger. Twitter then communicated that promise to each of its employees by email and in its Acquisition FAQ, and detailed in writing what they could expect in severance if they stayed through the merger and were laid off: a minimum of two months of salary, accelerated vesting of their RSUs (paid in cash at $54.20 a share), payment of their pro-rated bonuses,

---

[1] We currently represent 22, and are in discussions with several hundred more who are still choosing among the various firms that have offered to represent them.

Elon Musk
Alex Spiro
December 1, 2022

and continued contribution to their healthcare. Instead, the severance and benefits you've since offered, in various iterations – in your first communication to the laid off employees, and in your FAQ communications to employees who didn't "click the button" in your second round of layoffs – falls far, far short of your promises: one month of salary, no bonus, no accelerated vest, and no contribution to healthcare.

And I know, I know, you're going to argue that my clients aren't entitled to what you promised them, for reasons that don't bear scrutiny. (We both know you're grasping at straws at this point). You're going to point to Section 6.9(e) of the Merger Agreement and argue that it says the employees aren't intended third party beneficiaries and therefore can't enforce Section 6.9(a) of the Merger Agreement, but that would be a mistake for so many reasons. Delaware law doesn't treat those sort of recitals as dispositive, and running through the three factor test for third party beneficiary status is going to favor my clients, not you. Twitter decided to include an arbitration clause in its employment agreements, and arbitration with JAMS specifically allows the Arbitrator to award any relief that is "just and equitable" and to be "guided by" the rules of law they "deem most appropriate." Under the circumstances, coming in and arguing "yeah, I promised this, but lol you can't make me actually do it" is unlikely to end well for Twitter.

But even were that somehow a viable strategy, you'd still lose. The doctrine of promissory estoppel means that Twitter can't promise its employees a severance package to get them to stay at the company through the merger, and then renege on that promise once they do. Your insistence on including that "no third party beneficiaries" clause in Section 6.9(e) suggests that you were always planning on playing this game, so we'll be including a cause of action for fraud in our arbitration demands – and seeking punitive damages on top of pre- and post-judgment interest. Worse, we've received anecdotal information from our clients and others that indicates the layoff was conducted in violation of FEHA and other anti-discrimination laws. Please provide us by Wednesday the 7th with a demographic breakdown of the individuals Twitter laid off.

Last, we've received information from our clients that you have not been providing the employees you laid off on November 4, 2022 with their full benefits, even though you placed them on months of non-working leave in an attempt to comply with the WARN Act. Clients are reporting that Twitter is not providing their 401k deductions and company matches, and that issues are arising as they attempt to take advantage of other company benefits. I'm sure I don't need to warn you that's a bad idea.

Look, you have time to avoid all this. You can still choose to keep your word, and Twitter's, and pay your ex-employees what you owe them. For whatever it's worth to you, you should know that if you do, what you pay will actually flow to them, not us as their attorneys; we've agreed not to take any contingency fee if Twitter does what it agreed to do without requiring litigation.

Or you can double down on breaking your word and screwing over your ex-employees as they head into the holidays. If so, deposing you will be a joy, and you should be aware that Washington law, among others that will apply, will allow us to obtain an award against you, personally, and not just Twitter the company.

Elon Musk
Alex Spiro
December 1, 2022

    We're not holding our breath, but we hope you'll do what's right and keep your word. Either way, we'll be ready. If you'd like to reach me to discuss, you have my contact information.

                                  All the best,

                                  /s/ *Akiva M. Cohen*

                                Akiva M. Cohen