UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,
          Plaintiff,

    v.

U.S. DOGE SERVICE, *et al.*,
          Defendants.

Case No. 1:25-cv-00511

**MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY**

On March 27, 2025, Plaintiff Citizens for Responsibility and Ethics in Washington (CREW) moved for expedited discovery in response to the United States DOGE Service's (USDS) motion for summary judgment.[1] USDS respectfully opposes the motion. First, there is no need for discovery to resolve USDS's summary judgment motion. USDS's charter documents make clear that it does not possess anything like the substantial independent authority that this Court and the D.C. Circuit have held make Executive Office of the President (EOP) components such as the Office of Science and Technology Policy (OSTP), Council on Environmental Quality (CEQ), and Office of Management and Budget (OMB) agencies for purposes of the Freedom of Information Act (FOIA) and the Federal Records Act (FRA).

But even if this Court were to conclude that some discovery is warranted, CREW's proposed discovery sweeps far more broadly than is plausibly necessary to determine USDS's

---

[1] The motion also seeks summary judgment as to the USDS Administrator and Elon Musk. Although Mr. Musk is not a USDS employee and is not otherwise affiliated with USDS, for ease of reference we refer to the Defendants who have sought summary judgment collectively as USDS in this opposition.

agency status, would be extremely burdensome, and could not possibly be completed on an expedited basis (let alone on the timetables CREW proposes). Although CREW characterizes its motion as seeking "limited, expedited discovery," ECF No. 27 (Motion) at 1, its requests are anything but limited. CREW seeks three depositions (including a deposition of the component head), when a single Rule 30(b)(6) deposition would be sufficient. It requests numerous categories of information concerning the work of Agency DOGE Teams that is not otherwise tied to USDS; such information is not readily available to USDS and is in any event irrelevant to whether USDS's activities render it an agency for FOIA/FRA purposes. CREW further requests information concerning the sufficiency of USDS's record-keeping and preservation practices—information that, even if relevant to whether USDS's practices would comply with the FRA, are wholly irrelevant to whether USDS is an agency that must comply with the FRA in the first place, which is the only question at issue in USDS's summary judgment motion. And, in addition to other irrelevant and unduly burdensome requests, CREW includes numerous requests concerning USDS's "recommendations" to other Executive Branch components, material that is almost definitionally advisory (and thus cannot help CREW establish that USDS is wielding decisionmaking authority independent of the President) and privileged (as pre-decisional and deliberative). The Court should deny CREW's motion but, if it does not, the Court should significantly narrow the proposed discovery.

## ARGUMENT

### I.    Discovery Is Not Necessary to Resolve USDS's FOIA and PRA Status

As an initial matter, the Court should not order any discovery at all. CREW suggests that resolution of an EOP component's FOIA status necessarily requires analysis of both the activities an entity performs and the activities an entity is authorized to perform. Motion at 8. But this Court's

cases do not establish that discovery is invariably necessary to determine this issue. Indeed, in the most recent case from this Court addressing this issue (holding that the Office of American Innovation was not a FOIA agency), this Court resolved the case without permitting any discovery. *Democracy Forward Foundation v. White House Office of American Innovation*, 356 F. Supp. 3d 61, 73 (D.D.C. 2019).

And although this Court has authorized discovery in other cases addressing an EOP component's FOIA status, CREW misunderstands those cases. The cases focused on whether a component *could* wield independent authority and authorized discovery only to the extent necessary to determine whether the component was wielding authority it could exercise, or where it was unclear whether the component's charter documents in fact authorized such authority. For example, in *Electronic Privacy Information Center v. Office of Homeland Security*, No. 02-cv-00620 (CKK), ECF No. 11 (D.D.C. Dec. 26, 2002), the Court considered whether the Office of Homeland Security (OHS) was an agency subject to FOIA, and determined that limited discovery on that question was appropriate because "the language establishing [OHS's] power [was] broad and lacking in firm parameters." *Id.* at 9-12.

In *CREW v. Office of Administration (OA)*, No. 1:07-cv-00964-CKK, ECF No 33 (D.D.C. Feb. 11, 2008), the Court expressed doubt that the discovery CREW sought was necessary. *See id.* at 3 n.1 (noting that prior cases had authorized discovery but stating that "CREW has not proffered any legal support for the proposition that discovery of such evidence is *required* whenever an entity's agency status is at issue" (emphasis in original)). But the Court nonetheless concluded— in a motion-to-dismiss posture—"out of an abundance of caution, that *very limited* discovery as to OA's agency status is appropriate," *id.* at 3-4 (emphasis in original). At the same time, the Court "significantly restrict[ed] the scope of discovery that CREW may pursue as to OA's agency

status." *Id.* at 4.

Discovery is unwarranted here because USDS's charter documents demonstrate that it does not have anything like the authority that makes OSTP, CEQ, and OMB FOIA agencies. These EOP components are agencies subject to FOIA because they have independent authority to issue guidelines to federal agencies, to issue regulations legally binding on agencies, to oversee certain activities of other federal agencies, or to perform other significant statutory duties such as providing budget information to the Congress. ECF No. 24-1 at 21. As noted in the motion for summary judgment, USDS's discrete responsibilities are limited, and do not involve authority over other components at all, let alone authority comparable to those of OSTP, CEQ, or OMB:

- Agency DOGE Teams—employees of the respective agency—are tasked generally with "coordinat[ing] their work with USDS" while "advis[ing] their respective Agency Heads on implementing the President's DOGE Agenda." Exec. Order 14,158, § 3(c).

- The USDS Administrator must commence a software modernization initiative and "work with Agency Heads to promote inter-operability between agency networks and systems, ensure data integrity, and facilitate responsible data collection and synchronization." *Id.* § 4(a).

- For purposes of that software modernization initiative, the USDS Administrator should "to the maximum extent consistent with law," "have full and prompt access to all unclassified agency records, software systems, and IT systems." *Id.* § 4(b).

- The Assistant to the President for Domestic Policy is directed to consult with USDS (among other entities) in developing a federal hiring plan. Exec. Order 14,170, § 2(a).

- In implementing that plan, USDS may provide "advice and recommendations as appropriate" concerning implementation. *Id.* § 2(d).

- USDS receives monthly hiring reports from each DOGE Team Lead. Exec. Order 14,210, § 3(b)(iii)

- The Administrator of USDS, with the OMB Director and in coordination with the Assistant to the President for Domestic Policy, is directed to identify sources of federal funding for illegal aliens and make various recommendations. Exec. Order 14,218, 2(b)(i)-(ii).

- USDS receives from each Agency DOGE Team Lead "a monthly informational report

on contracting activities," Exec. Order 14,222, § 3(d)(ii), as well as "to the extent consistent with law—. . . a monthly informational report listing each agency's justifications for non-essential travel," *id.* § 3(e).

- The OMB Director is directed to consult with the USDS Administrator (as well as the Director of the Office of Personnel Management), to submit a plan to reduce the size of the federal workforce. Presidential Memorandum, Hiring Freeze, *available at* https://www.whitehouse.gov/presidential-actions/2025/01/hiring-freeze/.

- The Secretary of the Treasury is directed to consult with the OMB Director and USDS Administrator in determining whether it is in the national interest to lift the current IRS hiring freeze. *Id.*

Although CREW assails USDS's supposed "slanted reading" of the relevant Executive Orders, Motion at 9, and supposed "counter-textual readings of the executive orders chartering DOGE," *id.* at 2, it does not meaningfully engage with those sources at all, let alone explain why—under any reasonable reading of those sources—they endow USDS with substantial *independent authority*. CREW cites the directive to "implement" the President's DOGE Agenda in Executive Order 14,158, but we have already explained why reliance on this language is misplaced: it is referring to the entire DOGE structure (including DOGE Teams at federal agencies); the word "implement" is purely prefatory language that explains why the President signed the Executive Order; and even if the term "implement" standing alone was suggestive of something more, the term must be construed in light of the full text of the Executive Orders and presidential memorandum, which assign to USDS specific and purely advisory responsibilities. ECF No. 24-1 at 22-23. CREW also cites Executive Order language directing Agency DOGE Team leads to coordinate their work with USDS, and directing each Agency DOGE Team lead to provide a monthly hiring report for the agency to USDS. Motion at 12-13. This limited information-sharing and coordination mandate, too, does not plausibly identify authority USDS *exerts over* federal agencies, let alone authority independent of the President.

CREW also repeatedly criticizes Ms. Gleason's declaration as missing supposedly necessary information. But this misses the point. A significant portion of Ms. Gleason's declaration simply describes the structure and function of USDS and Agency DOGE Teams by citing to, quoting from, or otherwise discussing the Executive Orders and presidential memorandum that discuss these same issues. Gleason Decl. ¶¶ 7-25. Ms. Gleason's discussion of these issues was not "conclusory," Motion at 5, 9; it was based on the very sources that delineate USDS's limited responsibilities, and the contrasting work of Agency DOGE Teams. And those charter documents make clear that USDS is nothing like the components this Court and the D.C. Circuit have held to be agencies subject to FOIA and the FRA.

Because CREW barely engages with these materials, its motion is premised entirely on speculation that USDS operates in a manner completely disconnected from the Executive Orders and presidential memorandum that govern and authorize its work. But no court has permitted discovery in a case addressing an EOP component's status based on such bare speculation and this Court should not do so either.

Finally, CREW repeatedly accuses Ms. Gleason as well as USDS of making misrepresentations, and otherwise incomplete statements. Most prominently, CREW faults Ms. Gleason for not noting in her declaration that she is also employed by HHS. Motion at 6. CREW goes on to state that failing to include her HHS employment represented a "stark lack of candor," *id.* at 15, "double-dealing" and a "game," *id.* at 16. But CREW's suggestion that this represents some kind of intentional misrepresentation is difficult to fathom. The government did seek to redact Ms. Gleason's name and others in the litigation before Judge Bates, because of fear of harassment she and others face due to their affiliations with USDS. *See* No.1:25-cv-00339-JDB, ECF No. 59 at 3. And they did not highlight Ms. Gleason's HHS employment because it is not

relevant to any issue in this case, let alone to the discrete issue presented by USDS's summary judgment motion—whether it is an agency subject to FOIA.

CREW also faults Ms. Gleason for insisting that "that DOGE lacks sufficient 'budget' and 'resources' to respond to CREW's FOIA request," Motion at 13. But Ms. Gleason's point was that USDS "has adopted no FOIA regulations, hired no document processors or reviewers, and has no dedicated budget *for these activities*." Gleason Decl. ¶ 30 (emphasis added).

Most of CREW's other supposed misrepresentations and inconsistencies involve its repeated citation of outside sources—including news articles, and statements by President Trump, Elon Musk, and others—that reported on or made statements about "DOGE" generally. *See* Motion at 10-14. CREW's motion compounds the confusion by choosing to refer to USDS as "DOGE." *See* Motion at 1.

But as Executive Order 14,158 makes clear, USDS and "DOGE" more generally are simply not the same thing. The Executive Order "establishes the Department of Government Efficiency to implement the President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity." Exec. Order 14,158, § 1. It then separately defines USDS and the USDS temporary organization. *Id.* § 3(a). The Department of Government Efficiency is thus the umbrella term for the government-wide initiative to implement the President's DOGE Agenda, while USDS is a specific nonstatutory component with limited and purely advisory responsibilities. The Executive Order makes clear that the "DOGE Structure" it is creating to implement the President's DOGE agenda consists of USDS, the USDS temporary organization established within USDS, and Agency DOGE Teams. *Id.* § 3(a)-(c). CREW and other Plaintiffs are free to seek information about the work of Agency DOGE Teams by submitting FOIA requests to those agencies—who unquestionably are subject to FOIA. But this lawsuit is

against USDS, and USDS is not a FOIA agency. And public statements about "DOGE" generally—even if considered—do not create any genuine issue of material fact that must be explored through discovery about *USDS*'s limited and purely advisory responsibilities.[2]

## II.    If the Court Authorizes Discovery, it Should Significantly Narrow CREW's Proposed Discovery

Although USDS maintains that no discovery is necessary or appropriate to resolve its summary judgment motion, USDS recognizes that, in the last case to reach the D.C. Circuit concerning whether an EOP component was an agency subject to FOIA, limited discovery was permitted. *CREW v. Office of Administration*, 559 F. Supp. 2d at 13. But even if this Court were to order some discovery, CREW's proposed discovery—13 interrogatories, 11 requests for admission, 14 requests for production of documents, and three depositions, encompassing activities outside USDS, and including other topics that are highly burdensome and of little to no relevance to the pending summary judgment motion—is substantially overbroad and should be narrowed as discussed further below.

### A.    The Court Should Either Not Allow Depositions, or the Court Should Limit CREW to a Single Rule 30(b)(6) Deposition

USDS respectfully submits that the least burdensome and most efficient approach is to limit discovery to written discovery only. The Supreme Court has recognized that "[t]he high respect that is owed to the office of the Chief Executive . . . is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery." *Cheney v. United States District Court*, 542 U.S. 367, 385 (2004) (quotation marks omitted). Thus, discovery on the Executive Office of the President should be fashioned to be as unobtrusive as possible. *See also*

---

[2] CREW also notes that Defendants' answer stated that Defendants lack sufficient information to admit or deny certain of CREW's allegations as reported by the media. These responses have no bearing on the issue of USDS's agency status and lend no support to CREW's discovery motion.

*id.* at 387-88.

Here, USDS has moved for summary judgment based on a single issue: whether it is an agency subject to FOIA. As noted above, CREW's proposed written discovery includes 13 interrogatories, 11 requests for admission, and 14 requests for production of documents. As discussed further below, some of CREW's written discovery is either of limited to no relevance to this question, would be overly burdensome, or both. But regardless of the scope of any discovery this Court authorizes, the least intrusive manner to conduct discovery on that topic is through written discovery. It is also the most efficient approach because, even assuming the question of USDS's agency status requires looking beyond the documents that define its limited responsibilities, any inquiry into USDS's activities can be most fully addressed in writing.

But even if this Court were to permit depositions, USDS strongly objects to two of the three depositions proposed by CREW. CREW seeks a deposition under Fed. R. Civ. P. 30(b)(6). ECF No. 27-1 at 14. "Rule 30(b)(6) requires an organization to identify a person knowledgeable on a noticed topic and to prepare that person to testify as to that topic, thus binding the entity." *Prasad v. George Washington University*, 325 F.R.D. 1, 6 (D.D.C. 2018). For USDS to offer and prepare a witness to give binding testimony on its behalf concerning specified topics is a considerable undertaking. Indeed, Rule 30(b)(6) depositions "provide[] the organization's adversary with a very effective device for procuring information and also can impose considerable burdens on the opposing party." 8A Fed. Prac. & Proc. Civ. § 2103 (3d ed.). Given this burden, courts often require a litigant seeking a 30(b)(6) deposition to attempt other means to obtain information (such as contention interrogatories or a deposition upon written questions) before authorizing a 30(6)(6) deposition. *Id.*

Nonetheless, *if* the Court concludes that depositions are needed, Defendants do not object to the Court's approval of a single 30(b)(6) deposition. Indeed, while CREW repeatedly notes the litigation currently pending before Judge Bates, in that case the Court allowed only 30(b)(6) depositions, and only for a period of eight hours total for 30(b)(6) depositions of USDS and three defendant agencies. *AFL-CIO v. Department of Labor*, No. 25-cv-339 (D.D.C. Mar. 19, 2025), ECF No. 48 at 1. By contrast, USDS does strongly object to CREW's *additional* demand for depositions of USDS Administrator Amy Gleason and Steven Davis. ECF No. 27-1 at 14. If CREW obtains a Rule 30(b)(6) deposition *of USDS* on topics it deems relevant to the question whether USDS is an agency, *see id.* (stating that "Plaintiff also seeks a deposition of DOGE under Fed. R. Civ. P. 30(b)(6) on the following topics"), it does not *also* need depositions of Ms. Gleason and Mr. Davis.

That Ms. Gleason submitted a declaration in support of USDS's summary judgment motion does not change the analysis, for at least two reasons. For one, FOIA cases are ordinarily resolved on summary judgment without discovery. This is true even when—as is often if not usually the case—a component's summary judgment motion relies on a declaration. Similarly here, if discovery is authorized, that does not mean that CREW is entitled to a deposition of Ms. Gleason. *See* 8A Fed. Prac. & Proc. Civ. § 2103 (3d ed.) ("Because Rule 30(b)(6) imposes on the organization the obligation to select the individual witness, the party seeking discovery under that provision of the rule is not permitted to insist that it choose a specific person to testify unless in response to a Rule 30(b)(6) notice.").

Second and no less importantly, to the extent CREW wants (and is permitted) to inquire into particular statements in Ms. Gleason's declaration and the basis of those statements, it can do that through a Rule 30(b)(6) deposition. The declaration accompanying CREW's motion, *see* ECF

No. 27-2 (Maier Decl.), proves the point. That declaration states that the 30(b)(6) deposition "is necessary to obtain DOGE's binding testimony regarding its substantial independent authority, which is both fact-intensive and has been placed squarely at issue by Defendants in their motion for partial summary judgment *and Ms. Gleason's second declaration*." Maier Decl. ¶ 28 (emphasis added). It goes on to state that the 30(b)(6) "deposition is also necessary to test the veracity of Ms. Gleason's second declaration." *Id.* Yet when it comes time to justifying the need to depose Ms. Gleason individually, CREW offers essentially identical justifications. *Id.* ¶ 29 (stating that "[t]he deposition of Ms. Gleason is necessary to allow CREW to test the veracity of her second declaration" and "her deposition will establish the factual basis, or lack thereof, for her declaration's assertions about DOGE's operations and Mr. Musk's DOGE role" as well as "additional information regarding all manner of DOGE's operations").

CREW's demand for a separate deposition of Ms. Gleason might be driven by an assumption that she would have the most personal knowledge about USDS's operations. But even this is unclear because CREW also repeatedly suggests that a deposition of Ms. Gleason will be of limited assistance. *See id.* (stating "if she is in fact knowledgeable"); *id.* ¶ 30 (hypothesizing about "the factual gaps that will very likely emerge from Ms. Gleason's testimony"). In any event, this too is not a basis for seeking a separate, duplicative, and burdensome deposition of Ms. Gleason. If the Court authorizes a Rule 30(b)(6) deposition, USDS will of course be obligated to prepare its designated witness to address the 30(b)(6) topics (including any matter addressed in Ms. Gleason's declaration to the extent such matter is within the scope of any approved topics). CREW does not also need—and should not get—a deposition of Ms. Gleason.

Finally on this topic, CREW's requested deposition of Mr. Davis is also unnecessary, duplicative of a 30(b)(6) deposition, and overly burdensome. CREW cites media reports

concerning Mr. Davis's alleged activities at USDS and suggests that he will "have unique insight into DOGE's operations, particularly those relevant to whether it wields substantial independent authority, and Defendants Musk's role." Maier Decl. ¶ 30. But CREW's proposed 30(b)(6) notice similarly indicates that it wishes to explore, among other things, "DOGE's establishment, mission, responsibilities, personnel, leadership structure, authorities, and decision-making and reporting structure." ECF No. 27-1 at 14. CREW is free in a Rule 30(b)(6) deposition to explore any approved topic.

Notably, in the last case to reach the D.C. Circuit concerning whether an EOP component was an agency subject to FOIA, CREW was permitted a single deposition. *Citizens for Responsibility & Ethics in Washington v. Office of Administration*, 559 F. Supp. 2d 9, 13 (D.D.C. 2008), *aff'd*, 566 F.3d 219 (D.C. Cir. 2009). And again, in the most recent case on the question of whether an entity was subject to FOIA, this Court resolved the case without permitting any discovery. *Democracy Forward Foundation*, 356 F. Supp. 3d at 73. Consistent with those decisions (and the general principle that discovery into an EOP component should be as unobtrusive as possible), the Court should not authorize any depositions but, if it does, should at most permit a single 30(b)(6) deposition of USDS and reject CREW's request for additional depositions of Ms. Gleason and Mr. Davis.

### III.    The Court Should Reject Plaintiff's Proposed Discovery Concerning Irrelevant and/or Overly Burdensome Topics

In addition, CREW seeks discovery into several topics that either are irrelevant to resolving USDS's summary judgment motion or, to the extent they are marginally relevant, would be unduly burdensome. Although we attempt to identify the discovery requests raising each topic, USDS also objects to any other request to the extent it purports to request information on these irrelevant and overly burdensome topics. Additionally, to the extent USDS is ultimately required to respond to

Plaintiff's discovery requests, USDS would of course provide its formal objections to the requests—including but not limited to objections that particular requests are vague, impermissibly seek privileged information, or are otherwise improper. In highlighting those topics and areas that should not be included in any expedited discovery this Court orders, Defendants do not waive these and other objections they might state in their formal discovery responses.

With those caveats, we address each topic in turn.

*USDS's preservation policies and practices*: CREW proposes deposing a 30(b)(6) deponent on "DOGE's recordkeeping and retention policies and practices." ECF No. 27-1 at 14. Document Request 14 requests "[a]ll documents describing DOGE's record retention and preservation policies, including those relating to the @DOGE X account." Interrogatory 11 would ask USDS to "[i]dentify whether any DOGE employee or DOGE Team member has used or presently uses non-official messaging systems or applications with auto-delete functionality, including but not limited to Signal, to conduct government business." *Id.* at 9.

These inquiries are not germane to the pending summary judgment motion. To be clear, the question at issue here is not whether, if the Court concludes that USDS is an agency under FOIA and the FRA, this proposed discovery would be relevant to the merits of CREW's FRA claim (we take no position on that question at this time). USDS moved for summary judgment based solely on the argument that it is not an agency that can be sued under the FRA (or FOIA). USDS's preservation and retention policies are simply not relevant to *whether* USDS is a FOIA/FRA agency in the first place, the only question raised by the summary judgment motion.

CREW wholly fails to establish otherwise. CREW states, for example, concerning Document Request 14,[3] that "[t]hese documents are necessary to test the veracity of assertions

---

[3] CREW identifies this request as request 15, but it is request 14.

regarding DOGE's record retention in Ms. Gleason's second declaration and to ascertain whether records potentially responsive to CREW's discovery requests have been lost, and are particularly important given the DOGE's unusual secrecy." Maier Decl. ¶ 27 (quotation marks omitted). Ms. Gleason's declaration included three paragraphs briefly explaining that USDS must comply with the Presidential Records Act, Gleason Decl. ¶ 27, that USDS has explained to its employees that they must comply with recordkeeping requirements, *id.* ¶ 28, and that "USDS has also provided employees with a document hold for this litigation in accordance with the Court's instructions," *id.* ¶ 29. The declaration also states (in a paragraph that does not address preservation or records retention specifically) that "[p]er the USDS Order, USDS is required to adhere to rigorous data protection standards." *Id.* ¶ 26. It is entirely understandable that, in this fast-moving litigation, USDS would want to assure the Court that it has legal obligations under the PRA with which it complies, and that USDS has taken steps to ensure compliance with this Court's preservation order. But such statements do not make USDS's recordkeeping and preservation policies/practices relevant to the pending motion, and this topic is not relevant at all.

In addition, to the extent CREW argues that it seeks evidence of whether USDS has consistently treated itself as a PRA entity, any such argument is also unavailing. USDS has indeed consistently taken the position since Executive Order 14,158 (which reconstituted the former United States Digital Service as USDS, as a freestanding component of EOP) that it is a PRA component. In any event, the D.C. Circuit has made clear "that past views have no bearing on the legal issue whether a unit is, in fact, an agency subject to FOIA." *Citizens for Responsibility & Ethics in Washington v. Office of Administration*, 566 F.3d 219, 225 (D.C. Cir. 2009). Indeed, the D.C. Circuit deemed this issue irrelevant in *CREW v. Office of Administration* notwithstanding

evidence that the Office of Administration had considered itself subject to FOIA for nearly 30 years. *Id.*

*Materials from Agency DOGE Teams*: Plaintiff's proposed discovery defines "DOGE Team" as "synonymous in meaning and equal in scope to the term 'DOGE Team' in Executive Order 14,158." ECF No. 27-1 at 5. As Executive Order 14,158 makes clear, Agency DOGE Teams are employees of their respective agencies (not USDS). Executive Order 14,158, § 3(c). And the "DOGE Team Lead" reports to the agency head or an agency head's agency designee—not to USDS. *Id.* § 2(c).

The proposed discovery nonetheless requests broad categories of information about DOGE Teams, including the identity of all Agency DOGE Team members/who they work for/the dates of their employment (Interrogatory 1), persons who exercise authority over DOGE Team members/reports that DOGE Team members are required to submit (Interrogatory 4), directives from DOGE Team members (Interrogatories 5 and 7), recommendations from DOGE Team members (Interrogatories 6 and 8), any alleged uses of non-official messaging systems by DOGE Team members (Interrogatory 11), timekeeping records for DOGE Team members (Document Request 4), final directives from any DOGE Team (Document Request 5), certain documents delineating the scope of any DOGE Team's authorities (Document Request 9), certain announcements made to DOGE Teams (Document Request 10), as well as the scope of DOGE Teams' authority with regard to agencies and the steps DOGE Teams have actually taken with regard to agencies (Deposition Topic 12).[4] To be clear, we do not object here to those requests that

---

[4] As to certain other proposed discovery requests (such as Interrogatories 9 and 10), USDS understands those requests to seek information only about "DOGE" or DOGE employees, meaning the United States DOGE Service, and the United States DOGE Service Temporary Organization, since that is how CREW's discovery requests define those terms. *See* ECF No. 27-1 at 4. To the extent these and any other requests also purport to seek information about Agency DOGE Teams,

seek information *from* USDS, such as, for example, any detailees from USDS/dual employees of USDS and a federal agency (Interrogatory 2), or any directives from any USDS employee (including the Administrator) *to* federal agencies (Document Requests 5 and 7, Interrogatories 5 and 7).

USDS does, however, object to all the requests enumerated above—and any others to the extent they require USDS to collect and provide information *about* Agency DOGE Teams (as opposed to, again, material such as communications between USDS and Agency DOGE Teams). For one, that information is simply irrelevant to whether USDS wields substantial independent authority. Agency DOGE Teams are employees of the agencies to which they are assigned. Exec. Order 14,158, § 3(c). There is no dispute that Agency DOGE Team members—like all other employees of their respective agencies—are subject to FOIA and must comply with the FRA. Any requests seeking information about how Agency DOGE Teams are staffed, what they do, and how they are supervised within their respective agencies can be obtained via FOIA requests to those agencies and are simply outside the scope of the question the Court must resolve to decide USDS's summary judgment motion.

In addition, USDS is generally not likely to have information responsive to requests that concern Agency DOGE Teams. Most basically, USDS does not have a master list of all members of Agency DOGE Teams (as opposed to any members of Agency DOGE Teams who are detailed from USDS or dual employed by USDS). The fact that agency heads must establish DOGE Teams "[i]n consultation with USDS," Exec. Order 14,158, § 3(c), does not mean that USDS knows the final composition of Agency DOGE Teams at any given time. And even more obviously, USDS

---

Agency DOGE Team employees, or Agency DOGE Team activities, USDS objects to any such other requests as well.

does not have visibility into everything DOGE Team members do at their respective agencies, how they are supervised, what reports they submit within their agencies, how they record their time, and any directives they give within their agencies, in addition to the other information CREW requests about Agency DOGE Teams.

To be sure, USDS would not in any event have any obligation to provide documents it does not have, or provide information that it does not know. *See* ECF No. 27-1 at 2 (noting that document "requests extend to all documents in your possession, custody, or control, or of anyone acting on your behalf"). Thus, even if these requests were authorized, USDS anticipates that it will have little to no information or documents responsive to most of them. But this Court should not require USDS—particularly in an expedited posture—to attempt to provide information about what is going on at federal agencies, particularly when that information would have no relevance to whether *USDS* is an agency subject to FOIA and the FRA.

*USDS recommendations:* Interrogatory 6 would ask USDS to "[i]dentify each federal agency contract, grant, lease, or similar instrument that any DOGE employee or DOGE Team member *recommended* that federal agencies cancel or rescind since January 20, 2025, and whether that recommendation was followed." ECF No. 27-1 at 8 (emphasis added). Interrogatory 8 similarly would ask USDS to "[i]dentify each federal agency employee or position that any DOGE employee or DOGE Team member *recommended* federal agencies terminate or place on administrative leave since January 20, 2025 and whether that recommendation was followed." *Id.* (emphasis added).

To be clear, interrogatories 5 and 7 ask USDS to identify instances where USDS employees or DOGE Team members "directed" the same categories of cancellations and terminations. *Id.* As to *those* interrogatories—if the Court authorizes discovery, and subject to any objections that

USDS would interpose in formal discovery responses—USDS can and would answer them as to USDS employees (as opposed to Agency DOGE Team members, *see supra* p. 15-17). But for three reasons, USDS objects to interrogatories 6 and 8.

For one, these interrogatories definitionally could not result in information that would aid CREW in its efforts to show that USDS wields substantial *authority* independent of the President. *See CREW v. Office of Administration*, 566 F.3d 219, 222 (D.C. Cir. 2009) (noting that "common to every case in which we have held that an EOP unit is subject to FOIA has been a finding that the entity in question wielded substantial authority independently of the President" (quotation marks omitted)). As explained in our motion for summary judgment, the case law is clear that a component that merely provides advice and assistance, regardless of whether that advice is ultimately followed, does not wield substantial independent authority for purposes of the agency inquiry. *See* ECF No. 24-1 at 16-19. A "recommendation," by definition, is a piece of advice that the recipient is not obligated to follow. *See* RECOMMENDATION, Black's Law Dictionary (12th ed. 2024) ("A specific piece of advice about what to do, esp. when given officially."). And it is even clearer that interrogatories 6 and 8 seek such advisory materials when one contrasts them with interrogatories 5 and 7 (which, as noted, seek directives on the same topics).

Second, these interrogatories seek information that is likely privileged. The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). To qualify for the privilege, a document must be pre-decisional and deliberative. *See Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Recommendations are often predecisional. *See, e.g.*, *Abtew v. U.S. Department of Homeland Security*, 808 F.3d 895, 899 (D.C.

Cir. 2015) (Kavanaugh, J.) ("The Assessment was pre-decisional; it was merely a recommendation to a supervisor."). And recommendations about, for example, possible contract cancellations (interrogatory 6) or personnel actions (interrogatory 8) would also likely be part of the process by which the relevant agency reached a decision on the relevant matter.

Finally, a requirement that USDS identify every recommendation it provided on these broad topics would be highly burdensome. As discussed in USDS's motion for summary judgment, providing advice and recommendations to other components of the Executive Branch is quite literally at the core of what USDS does. *See, e.g.*, Exec. Order 14,170, § 2(d) (USDS charged with providing "advice and recommendations as appropriate" concerning implementation of federal hiring plan); Exec. Order 14,218, § 2(b)(i)-(ii) (directing the Director of OMB and the Administrator of USDS, in coordination with the Assistant to the President for Domestic Policy, to "identify all other sources of Federal funding for illegal aliens," and to "recommend additional agency actions to align Federal spending with the purposes of this order, and, where relevant, enhance eligibility verification systems"). This Court should not permit a fishing expedition into USDS's advisory activities, particularly since the broad categories of materials CREW seeks are by definition likely irrelevant and privileged. And indeed, analyzing such material for privilege would itself add to the burden, particularly in this expedited posture.

*Other irrelevant topics:* Finally, CREW's proposed discovery includes multiple other topics that have no relevance to the pending summary judgment motion. As to Interrogatory 3, whether USDS's Administrators since January 20 interviewed for the position—let alone who they interviewed with and who told them they had been appointed, *see* ECF No. 27-1 at 7—has no bearing on whether USDS is a FOIA/FRA agency. As to Interrogatory 9, USDS does not understand its scope. To the extent this Interrogatory is simply asking which USDS employees

have been detailed from USDS to an agency or are dually employed by USDS and an agency, USDS can generally provide this information in response to Interrogatory 2, and USDS assumes that such detailees/dual employees have access to some agency systems in those capacities. But USDS does not collect information at a more granular level about the specific agency systems to which particular detailees/dual employees have access, and such information is not relevant to the pending summary judgment motion.

Document Request 2 seeks "visitor access requests" concerning "any DOGE employee detailed to, otherwise working at, or accessing the offices of, federal agencies." ECF No. 27-1 at 12. USDS does not believe it has custody and control of any such requests, which it believes are held by the United States Secret Service (for visitor requests to EEOB) or presumably agencies themselves (for visitor requests to agencies). In any event, this Request is also irrelevant to the summary judgment motion. CREW contends that such requests would show the extent to which DOGE employees are "accessing the facilities of federal agencies," Maier Decl. ¶ 21, but whether detailees to agencies or USDS employees who are working at federal agencies (such as dual employees) actually have access to the offices of those federal agencies is not a disputed issue in this case and is irrelevant to whether USDS is an agency under FOIA and the FRA.

Finally, Interrogatory 12 and Document Request 13 address communications through the @DOGE X account. This account is not owned by USDS . Nonetheless, if discovery is authorized, USDS will make a reasonable effort to provide information responsive to this Interrogatory and Request to the extent that such information is within its possession, custody, and control. Similarly, although Plaintiff's Requests for Admission also touch on some of the irrelevant matters discussed above, USDS acknowledges that this aspect of the proposed discovery is less burdensome. If the

Court authorizes discovery—which USDS respectfully submits that it should not—USDS thus does not separately object to these requests at this time.

## CONCLUSION

The Court should deny USDS's motion or, alternatively, limit the proposed discovery as discussed above.

Dated: April 8, 2025                    Respectfully submitted,

Respectfully submitted,

                                        YAAKOV M. ROTH
                                        Acting Assistant Attorney General

                                        ELIZABETH J. SHAPIRO
                                        Deputy Branch Director

                                        */s/ Andrew M. Bernie*
                                        Andrew M. Bernie
                                        Trial Attorney
                                        U.S. Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L Street, NW
                                        Washington, D.C. 20005
                                        (202) 353-7203
                                        andrew.m.bernie@usdoj.gov

                                        *Attorneys for Defendants*