IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DOGE SERVICE, *et al.*,<br><br>Defendants. | Case No. 1:25-cv-00511-CRC |

### REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") submits this reply to the United States DOGE Service's ("DOGE") Memorandum in Opposition to Plaintiff's Motion for Expedited Discovery. CREW respectfully requests that the Court grant CREW's motion in full to allow CREW to meaningfully respond to Defendants' pending motion for partial summary judgment and to allow the Court to expeditiously determine whether DOGE is subject to the Freedom of Information Act ("FOIA") and the Federal Records Act ("FRA").

**ARGUMENT**

Having chosen a path that it knew would lead to discovery of a fact-intensive issue touching on the whole of its operations, CREW Disc. Mot. at 5, 19-20, ECF No. 27, DOGE now seeks to halt all discovery to deprive CREW of the information and witnesses that will allow any fair and expeditious determination of the question that DOGE itself is asking the Court to decide: whether DOGE wields substantial independent authority. In doing so, DOGE completely ignores the applicable legal standards and demands that CREW and the Court blindly accept its post hoc interpretations of its authority, which the Court has already recognized are contradicted by an

extensive public record of DOGE's conduct. *See* 3/19/25 Op. & Order at 10-12, 15-17, ECF No. 23.

I. **CREW is entitled to discovery**

Tellingly, DOGE opposes CREW's motion for expedited discovery pursuant to Federal Rules of Civil Procedure 56(d) and 26, and the Court's March 19 order *without referencing* Rule 56(d), Rule 26, or the Court's March 19 order. That is because CREW is plainly entitled to discovery under governing law for the reasons described in its motion, and DOGE has no response to the contrary.

Beyond that omission, DOGE's suggestion that its agency status is not a question worthy of meaningful discovery is simply wrong. DOGE's agency status is the sole ground on which Defendants seek to extinguish CREW's claims. Under controlling D.C. Circuit precedent, that question turns not on a dry reading of executive orders divorced from all context, but on a meaningful evaluation, considering both DOGE's legal mandate *and its operations*, of whether it wields substantial authority independent of the President. *See* CREW Disc. Mot. at 8-10, ECF No. 27 (citing cases). Further, the Court has already acknowledged the extraordinary public concern over and public interest in understanding DOGE's operations, its unprecedented nature, scope, and pace, and its unusual secrecy. 3/10/25 Mem. Op. at 3, 7-9, 18, 23-26, 29-30, 34, 36, ECF No. 18. This is not a run-of-the-mill FOIA case, even among the cases involving components of the Executive Office of the President ("EOP").

DOGE concedes that "this Court has authorized discovery in other cases addressing an EOP component's FOIA status," DOGE Disc. Opp'n at 3, ECF No. 34, but ignores that this case presents a far stronger basis for discovery than even those in which discovery was granted, which DOGE unsuccessfully attempts to distinguish. First, none of those cases came before the Court in the peculiar posture of this case—where the government immediately filed a pre-answer, pre-

discovery motion for summary judgment supported by a declaration with sworn factual assertions *that the Court already observed were incomplete and contradicted by the record.* 3/19/25 Op. & Order at 10-12, 15-17. Second, none had a record where the defendant entity's "actions to date demonstrate its substantial authority over vast swathes of the federal government." 3/10/25 Mem. Op. at 25. Third, none involved a public record of obfuscation and secrecy by the Defendant entity in the face of public, congressional, and judicial inquiries into the basics of its operations. *See id.* at 8-9, 30, 32-34, 36; CREW PI Reply at 10, ECF No. 13; CREW Disc. Mot. at 11-12. And finally, none involved an entity that was given influence over every agency in the executive branch. *See, e.g.* Establishing and Implementing the President's "Department of Government Efficiency," Exec. Order No. 14158 (Jan. 20, 2025), 90 Fed. Reg. 8441 (Jan. 29, 2025) ("DOGE EO").

DOGE mischaracterizes the grants of discovery in *Electronic Privacy Information Center v. Office of Homeland Security* ("*EPIC*"), No. 02-cv-00620, Mem. Op. at 8, ECF No. 11 (D.D.C. Dec. 26, 2002), and *CREW v. Office of Administration* ("*OA*"), No. 07-cv-00964, Order. at 3, ECF No. 33 (D.D.C. Feb. 11, 2008). The court in *EPIC* began from the premise that courts "have relied on facts concerning the actual manner in which the authority of the subject entity has been exercised, which were within the exclusive knowledge and control of the government. Those cases have not rested solely upon publicly available documents and directives." *EPIC*, Mem. Op. at 8 (cleaned up). It added that discovery was "helpful *especially*"—but *not only*—in cases where "the language establishing the [at-issue] entity's power is broad and lacking in firm parameters," *id.* at 12 (emphasis added), noting that the D.C. Circuit's decision in *Armstrong v. Executive Office of the President*, 90 F.3d 553 (D.C. Cir. 1996), demonstrated the utility of "an affidavit, *in addition to* analysis of the relevant statute, . . . in determining the nature of the authority

3

delegated[.]" *EPIC*, Mem. Op. at 12 (emphasis added). Moreover, in *OA*, the Court ordered discovery even though the language establishing the Office of Administration was "quite specific, and entirely devoid of . . . 'vague terms[.]'" *OA*, Order at 3 (quoting *EPIC*, Mem. Op. at 9).

DOGE also disregards the important ways in which this case is similar to those in which discovery into EOP components was granted by arguing that this case is not "focused on whether [DOGE] could wield independent authority," that CREW's discovery is not "necessary to determine whether the component was wielding authority it could exercise," and that it is not "unclear whether the component's charter documents in fact authorized such authority." DOGE Disc. Opp'n at 3. But that is exactly what Defendant's motion for summary judgment is about. *See generally* Defs.' SJ Mem. *et seq.*, ECF No. 24-1. Defendants' argument is simple in its formulation: various executive orders give DOGE authority, DOGE (or more accurately, Ms. Gleason) interprets that authority a particular way, and Ms. Gleason swears that DOGE adheres to that interpretation in all respects. *Id.* But that argument depends in part on factual questions about whether DOGE *actually adheres* to Ms. Gleason's interpretation of the ambiguous terms of the DOGE-related executive orders, including those broadly mandating DOGE to "implement the President's DOGE agenda" and "advanc[e] the President's 18-month DOGE agenda" and mandating agency heads to "ensure that DOGE Team Leads coordinate their work with DOGE" and to "take all necessary steps, in coordination with the USDS Administrator . . . to ensure USDS has full and prompt access to all unclassified agency records, software systems, and IT systems." DOGE EO.

DOGE's adherence to Ms. Gleason's interpretations can only be ascertained through discovery on how DOGE actually operates within these mandates, which are silent on critical

issues such as the contours of DOGE's "coordination" with DOGE Team leads, who are independently required to "coordinate their work with [DOGE]" and separately to "advise their respective Agency Heads on implementing the President's DOGE Agenda." *Id.* Otherwise, CREW and the Court would be left to rely solely on DOGE's word, which the Court has already acknowledged does not answer the question of whether DOGE wields substantial independent authority and is contradicted by evidence in the record. *See* 3/19/25 Op. & Order at 10-12, 15-17.

Finally, DOGE seeks to avoid discovery by making the argument, already rejected in other litigation, that DOGE is so functionally distinct from the DOGE Teams that were created to facilitate its work that DOGE need not respond to discovery about them.[1] But, as Judge Bates noted in ordering DOGE to provide discovery on DOGE Teams,

> the DOGE Executive Order reveals that the individuals "implementing the President's DOGE Agenda" at an agency do not simply work on behalf of the agency, but also on behalf of DOGE. The Executive Order directs agency heads to select the individuals to implement the DOGE Agenda "in consultation with the USDS Administrator" and requires the agencies to "coordinate [the DOGE Teams'] work with DOGE."

*AFL-CIO v. U.S. Dep't of Lab.*, No. 25-cv-00339, Order at 3 (D.D.C. Mar. 31, 2025), ECF No. 75 (citing Exec. Order No. 14158). Judge Bates further noted that the record in that case established that "the individuals 'implementing the President's DOGE Agenda' at the agency defendants include individuals directly hired by each agency (regardless of whether they are also directly hired by DOGE) as well as individuals detailed to each agency (whether from USDS or

---

[1] DOGE takes this a step further, arguing that DOGE is actually a "government-wide initiative," so the copious record of public statements by Defendant Musk, President Trump, and DOGE itself are immaterial to CREW's claim here. That is both irrelevant and meritless. The President promised to create a "Department of Government Efficiency" to implement his DOGE agenda, fulfilled that promise by creating DOGE, and mandated the installation of DOGE Teams at every agency, hired in consultation with DOGE and required to coordinate with it, to facilitate its work. *See* 3/10/25 Mem. Op. at 2-5; DOGE EO. DOGE does not point to any function or entity that comprises the "Department of Government Efficiency" outside of DOGE and the DOGE Teams.

elsewhere),"concluding that such DOGE Team members were "otherwise work[ing] for DOGE" as that term was used in the applicable discovery requests. *Id.* at 3-4.

There is no reason that the DOGE Teams should be treated differently here. Like the discovery requests in that case, *see id.* at 2, CREW's requested discovery defines employees as "any person who is authorized to perform or actually performs work on behalf of any entity or agency–including, for the avoidance of doubt, DOGE–regardless of their formal employment classification, whether they are a detailee from another agency, or are providing services on volunteer basis." CREW Disc. Mot., Ex. 1 at 5, ECF No. 27-1. As Judge Bates noted, the DOGE EO explicitly requires DOGE Team members to coordinate with DOGE toward *DOGE's* (not each agency's) singular purpose of "implementing the DOGE agenda." DOGE EO. And as this Court has noted, the claim "that each DOGE Team Lead is . . . 'an agency employee' and 'reports to agency personnel . . . , apparently indicating that [DOGE] employees do not direct agency decisions . . . is at odds with other cases finding that USDS 'has taken numerous actions without any apparent advance approval by agency leadership,'" 3/19/25 Op. & Order at 11 (quoting *Does 1-26 v. Musk*, No. 25-cv-462, 2025 WL 840574, at *3 (D. Md. Mar. 18, 2025)). Excluding the requested discovery on DOGE Teams would thus be inappropriate and would make it nearly impossible to ascertain how DOGE is actually influencing agency action.

**II.     CREW is entitled to the specific discovery it seeks.**

CREW is entitled to discovery sufficient to respond to DOGE's claim that it does not wield independent authority just as plaintiffs have been granted in other cases where EOP components, including DOGE, have claimed not to fall within the scope of FOIA and other other federal laws. *See* CREW Disc. Mot. 2, 8-10. The discovery sought by CREW is narrowly

tailored to the needs of this case and the specific circumstances of DOGE's conduct, *see id.* at 16-21, and none of DOGE's reframing of the issues changes that.

### A. CREW is entitled to the depositions of Amy Gleason, Steven Davis, and DOGE.

DOGE's opposition to CREW's requested depositions seeks a major deviation from precedent and common sense. The requested depositions are necessary under Rule 56(d), squarely within the scope of Rule 26, and consistent with discovery ordered in other cases. *See*, *e.g.*, *EPIC*, Mem. Op. at 12 (noting that in *Armstrong*, the D.C. Circuit "quoted from two depositions . . . in determining the [FOIA] status of an entity positioned within the Executive Office of the President").

Deposition of Ms. Gleason. Ms. Gleason's deposition is essential for CREW to both respond to Defendant's motion for summary judgment and for the Court to evaluate whether DOGE wields substantial independent authority. That is so for multiple interrelated reasons. First, Ms. Gleason's declaration is the *only evidence offered by Defendants* regarding *any* function, operation, or organizational detail of DOGE, other than the role of Mr. Musk. *See generally* Defs.' SJ Mem. Because whether DOGE wields substantial independent authority requires a fact-intensive inquiry into DOGE's operations, *see* CREW Disc. Mot. at 8-10, and Ms. Gleason's declaration is the totality of facts offered by DOGE, it must be tested under Rule 56(d). In other words, "the current litigation posture necessitates limited discovery to permit timely adjudication of the factual defense [DOGE] has itself raised," where the requested "deposition[] [is] intended to allow follow-up questioning on facts [DOGE] has itself put in evidence." *In re Cheney*, 544 F.3d 311, 313-14 (D.C. Cir. 2008).

Second, Ms. Gleason's declaration attempts to provide dispositive answers to both the factual and legal questions of whether DOGE wields substantial independent authority and does

7

so with brief, sweeping, and contradictory statements that claim to account for everything that DOGE employees do and do not do. *See generally*, Gleason 2d Decl., ECF No. 24-2. For example, it offers just *two sentences* describing what DOGE actually does (as opposed to what various executive orders and memoranda purportedly charge it with doing), neither of which describes any mechanism for advising the President, Gleason 2d. Decl. ¶¶ 22-23, while also claiming in passing that DOGE does not have dedicated FOIA staff and will be burdened by production because it "advises the President," *Id.* ¶¶ 30-31. It is patently absurd for Defendants to offer one witness's 40,000-foot view of *all* of DOGE's operations, claim that the witness's testimony disposes of the case, and then expect that witness to go unquestioned.

   Third, the Court has already found that Ms. Gleason's representations about both her role at DOGE and DOGE's operations are "called into question by contradictory evidence in the record." 3/19/25 Op. & Order at 10 (quoting *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013)). Fourth, Ms. Gleason's declaration omits the facts necessary to establish that she has sufficient knowledge in the first place. It contains *no* sworn statement regarding the basis for her knowledge, leaving the Court to infer that it stems from her role as DOGE's Acting Administrator, but also omits when she was appointed Acting Administrator, who, if anyone, preceded her as Administrator, what she did before that unnamed date, the fact that she also works at the Department of Health and Human Services, and how, or even whether, she stays aware of how each employee of DOGE—an entity with no "front office" or even an organizational chart—conducts DOGE's business as she juggles her dual role with DOGE and HHS. *See id.* ¶ 13; CREW Disc. Mot. at 15-16. Whatever DOGE's reasons for these omissions, they call the accuracy and reliability of Ms. Gleason's declaration into question.

And fifth, the government's selective deployment of Ms. Gleason, and its selective disclosures about her role at DOGE, require CREW and the Court "to be cautious of concluding what defendants put forward is the whole story." *See* CREW Disc. Mot. at 10-13 (quoting *AFL-CIO v. U.S. Dep't of Lab.,* No. 25-cv-339, Mem. Op. & Order at 13 (D.D.C. Mar. 19, 2025), ECF No. 71); *see also* 3/10/25 Mem. Op. at 3-4, 8-9, ECF No. 18; CREW Prelim. Inj. Reply at 10-11, ECF No. 13. And DOGE continues to keep her out of public view. Most recently, on March 27, Fox News aired an exclusive interview with *eight* members of DOGE leadership that included Defendant Musk and Steven Davis but excluded Ms. Gleason.[2]

DOGE's proposal of a Rule 30(b)(6) witness in place of Ms. Gleason is nonsensical. DOGE and Ms. Gleason put her personal knowledge and the subjects within it at issue when they offered her sworn declaration. Ms. Gleason must now submit to questioning on her sworn statements. *See* Order at 2, *Am. Fed. Gov't Emps. AFL-CIO v. OPM*, No. 25-cv-1780-WHA, ECF No. 89 (N.D. Cal. Mar. 10, 2025) (rejecting government's refusal to make agency head available for questioning where the official "submitted a sworn declaration in support to defendants' position, but now refuses to appear to be cross examined, or to be deposed" (citing *In re Cheney*, 544 F.3d at 313-14)). Defendants cannot now avoid Ms. Gleason's cross-examination by not only demanding a different witness but also doing so with Rule 30(b)(6)'s notice requirements. Fed. R. Civ. P. 30(b)(6). That is both fundamentally inequitable and an inversion of Rule 30(b)(6), which leaves the option of seeking such a deposition to the party noticing it, without room for weaponizing Rule 30(b)(6) to allow one-sided fact witness

---

[2] Madeline Coggins, *Elon Musk, DOGE team offer unprecedented peek behind the curtain of Trump's cost-cutting department*, Fox News (Mar. 27, 2025), https://www.foxnews.com/media/elon-musk-doge-team-offer-unprecedented-peak-behind-curtain-trumps-cost-cutting-department.

testimony to go unchallenged. *See id.* Further, if Ms. Gleason has the base of knowledge that she claims, she is an invaluable fact witness, and her deposition could obviate the need for further discovery prior to summary judgment briefing.[3] If she does not have that knowledge, CREW and the Court are entitled to confirm as much. But even ignoring the obvious legal failings in DOGE's position, DOGE also does not explain how it would even be possible for Ms. Gleason to impart the entirety of her personal knowledge about DOGE to another person to testify in her place.

<u>Deposition of Steven Davis</u>. Mr. Davis's deposition has been made necessary by DOGE itself. As described above, DOGE is attempting to offer a declaration by its purported Acting Administrator that attests to all of DOGE's conduct since its inception. But that declaration is facially incomplete and contradicted by evidence, *id.*, leaving a clear need for CREW to fill the myriad factual gaps in that declaration through the testimony of those who are actually administering DOGE. While the declaration submitted by CREW in support of its motion for expedited discovery laid out the public record that Mr. Davis has the basis of knowledge that Ms. Gleason does not 3/27/25 Maier Decl. ¶ 30, ECF No. 27-2, events since CREW filed its motion make clear that he has more relevant knowledge than anyone and is running DOGE's day-to-day operations.

Documents that DOGE was forced to produce in other litigation demonstrate that Mr. Davis has executed on DOGE's behalf multiple binding inter-agency agreements between DOGE and both HHS and the Consumer Financial Protection Bureau (attached hereto as

---

[3] In fact, if Ms. Gleason has the base of knowledge of DOGE's operations to submit her declaration, one would expect DOGE to seek cross-designation of her deposition and the requested 30(b)(6) deposition so that they can be done together, minimizing the burden on the parties and the Court.

Exhibits 1-4), confirming that he has been acting as DOGE's leader in significant respects, has held multiple simultaneous leadership positions within DOGE, and that he has personal knowledge how DOGE interacts with other agencies. Those documents, which are detail agreements with federal agencies and an agreed set of terms and conditions for one such detail, identify Mr. Davis as the "USDS Approver," *see* Ex. 1, DOGE's "Senior Advisor," *see* Ex. 2, and DOGE's "Special Advisor," *see* Ex. 3-4, including from the time period *preceding* the announcement of Ms. Gleason as DOGE's Acting Administrator on February 25, 2025, *see* 3/10/25 Mem. Op. at 8-9, 34-35. Further, during the March 27 Fox News interview with DOGE leadership from which Ms. Gleason was excluded, Mr. Davis, seated at Defendant Musk's side, confirmed that he is "the chief operating officer of DOGE, day-to-day operations."[4] Mr. Davis is thus an invaluable fact witness who can both provide crucial information about DOGE and assist the Court in evaluating the assertions in Ms. Gleason's declaration.

Deposition of DOGE

DOGE concedes that, if depositions are permitted, a Rule 30(b)(6) deposition would be appropriate, but it objects to the scope of that deposition. *See* DOGE Disc. Opp'n at 9. That objection is meritless. Although DOGE objects to questions about DOGE's records management policies and practices, Ms. Gleason's declaration put those topics squarely at issue. The declaration includes a section entitled "USDS's Data and Records Management," which discusses DOGE's purported compliance with the Presidential Records Act, and its efforts to "inform[] its employees (including those in the U.S. DOGE Service Temporary Organization) that they must adhere to records-preservation requirements." *See* Gleason 2d. Decl. ¶¶ 26-29.

---

[4] *See supra* note 2.

11

Having chosen to offer evidence on these topics in support of its summary judgment motion, DOGE must submit to a deposition on those same topics.

Questioning on these topics is also necessary to ascertain whether documents that would otherwise have been produced in the course of discovery have been lost or are unretrievable because of DOGE's lack of document preservation measures, which is already a concern given DOGE's "unusual secrecy" and indicia that DOGE "may not fully appreciate [its] obligations to preserve federal records. This is especially true for [DOGE], many of whose staffers are reported to have joined the federal government only recently and, to put it charitably, may not be steeped in its document retention policies." 3/10/25 Mem. Op at 36-37.

Recent developments make the loss of relevant documents very real. On March 27, in an effort to avoid issuance of a preservation order in another FOIA case, DOGE for the first time produced a one-page "United States DOGE Service Records Retention Policy" that was not created until March 25, 2025 (attached as Exhibit 5).[5] While it stated that the "basic rule is to preserve all work-related communications and records," the policy did not restrict the use of personal devices or applications with auto-delete functions like Signal; instead, it merely instructed employees—without a policing mechanism—that while using work devices for DOGE-related activities would be "easiest," they should transmit all "work-related messages" from their personal device to their work device.

The policy did not even ban the use of auto-delete features on applications like Signal, again simply informing DOGE employees that disabling those features "will help with retention and compliance." *Id.* And the policy ended with a vague instruction to DOGE employees that

---

[5] The policy refers to "prior USDS records retention guidance," but DOGE did not provide the court with any prior policy or guidance document.

12

"certain materials without historical value . . . that are not circulated or that are not created or saved for purposes of documenting the activities or deliberations of the Administration, are not covered by the [Presidential Records Act]," leaving individual DOGE employees to interpret federal document retention statutes for themselves. *Id.* Predictably, as recently as two days ago, there are fresh reports of Signal use by DOGE.[6]

### B. CREW is entitled to the written discovery and document productions it seeks, which are narrowly tailored to facilitate resolution of DOGE's agency status.

DOGE also raises various objections to CREW's proposed discovery requests. However, most of their complaints should be raised as objections in responses to the discovery requests and are squarely within the discovery to which CREW is entitled under Rules 56(d) and 26. The mere fact that DOGE has objections to discovery requests that it may raise in responses is unremarkable and not a reason to reject or narrow CREW's proposed discovery requests.

<u>DOGE's preservation policies and practices</u>. DOGE objects to Document Request 14 on the basis that its document preservation policies and practices are "not germane to the pending summary judgment motion." DOGE Disc. Opp'n at 13. That objection lacks merit for the same reasons that CREW put forth in its motion for expedited discovery and for the same reasons that CREW is entitled to depose DOGE regarding this topic. *See supra* Part II.A. Further, DOGE acknowledges that it put its preservation policies and practices at issue in Ms. Gleason's declaration, DOGE Disc. Opp'n at 13, and its post-hoc rationalization for doing so—to assure the Court it "has taken steps to ensure compliance" with the Court's preservation order—does not mean that CREW is not entitled to discovery on the issue, particularly given the record

---

[6] Alexandra Ulmer et al., *Exclusive: Musk's DOGE using AI to snoop on U.S. federal workers, sources say*, Reuters (April 8, 2025), https://www.reuters.com/technology/artificial-intelligence/musks-doge-using-ai-snoop-us-federal-workers-sources-say-2025-04-08/.

described above. CREW also anticipates that these discovery requests are minimally burdensome, given that they only request existing document retention policies.

<u>Materials from Agency DOGE Teams</u>.[7] DOGE does not object to any of the discovery requests cited in this portion of its opposition on relevance grounds. Nor does it object to them to the extent that they "seek information from USDS." *Id.* at 16. Instead, DOGE's sole ground for objecting to these discovery requests is its assertion that "Agency DOGE Teams are employees of their respective agencies." *Id.* at 15. But as explained above, other courts have already rejected that argument as a basis for limiting discovery obligations based on the fact that the DOGE Teams work for DOGE under the terms of the DOGE EO, and the Court has observed that this precise argument is at odds with findings in additional cases. *See supra* Part II.A. DOGE thus cannot be permitted to withhold information within its custody, control, or possession merely because it pertains to DOGE Teams, which are bound to coordinate their work with DOGE; instead, DOGE should be required to provide as complete information regarding DOGE Teams as is reasonably available to it. Nor should the Court credit DOGE's misinterpretation of these discovery requests to seek information that is not within DOGE's custody, control, or possession, as CREW's discovery requests explicitly exclude such information and documents. In short, there is nothing about these requests that cannot be addressed in the normal course of discovery, and DOGE's reluctance to provide the requested information does not justify limiting the requests themselves.

<u>USDS Recommendations</u>. DOGE objects to Interrogatories 6 and 8 calling for information regarding instances in which DOGE or DOGE Team members recommended to

---

[7] This section of DOGE's opposition appears to include Interrogatories 1, 2, 5, 6, 7, 8, and 11, Document Requests 5, 7, 9, and 10, and Deposition Topic 12.

agencies 1) the cancellation or rescission of contracts and similar instruments and 2) adverse employment actions against agency employees, and which of those recommendations were followed, while choosing not to object to identical interrogatories that seek "directives." DOGE Disc. Opp'n at 17-19. DOGE objects first that recommendations cannot be indicia of substantial independence because they are by their nature optional, *id.* at 18, but a record establishing that DOGE's purported "recommendations" are always followed (or almost always followed) would indicate that DOGE's "recommendations" are anything but optional. Further, these interrogatories, in conjunction with other information obtained through discovery, will shed light on the extent to which DOGE has targeted certain agencies and whether it is DOGE or the DOGE Teams that are making recommendations.

  DOGE's second objection is that most of the responsive information would likely be privileged. *Id.* at 18. But recommendations ultimately "adopted, formally or informally, as the agency's position on an issue" are not privileged at all. *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982); *see also Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, 267 F.R.D. 1, 4 (D.D.C. 2010). And even if some requested information is privileged, the proper procedure is for DOGE to actually assert that privilege in its discovery responses—as CREW's proposed discovery requests explicitly instruct. Finally, DOGE claims that providing this information will be overly burdensome, but the request is both limited in temporal scope and calls for information that DOGE already purports to compile and publish on a rolling basis on its DOGE.gov website, which is explicitly identified as an "official website of the United States

government."[8] There is no reason that DOGE cannot use that pre-existing resource and its capacity for self-promotion to work to answer discovery requests.

Interrogatory 3: DOGE objects on the basis that whether DOGE Administrators "since January 20 interviewed for the position . . . has no bearing" on whether DOGE is an agency subject to FOIA. *Id.* at 19. This careful language—not revealing who, exactly, has been the administrator since January 20—itself shows the need for this information. As noted above, Ms. Gleason's declaration conspicuously omits information regarding when she became DOGE's Acting Administrator, there is a clear public record of Defendant Musk and the President indicating that she is not actually administering DOGE, her supposed subordinate Mr. Davis has been executing agreements on DOGE's behalf, and the administration continues to keep her under wraps while having her purported subordinates act as the face of DOGE. *See supra* Part II.A. Further, Defendant Musk has insisted in other litigation that the President put *him* "in charge of [e]stablishing and [i]mplementing" DOGE per the DOGE EO. *See* CREW Disc. Mot. Ex. 4 at 3, ECF No. 27-4 (citing DOGE EO). That record, and particularly the Court's observation that her assertion of her own authority in her declaration is contradicted by the public record, gives every reason to believe that Ms. Gleason is an administrator in name only. The manner in which she was retained, including who interviewed and approved her appointment, is thus directly relevant to the credibility of her declaration, whether DOGE is abiding by the explicit terms of the DOGE EO, which gives only the Administrator certain authority, and the extent to which the DOGE Administrator is free to actually monitor or influence the operations of DOGE.

---

[8] *See* DOGE, *Savings* (last accessed Apr. 10, 2025), https://www.doge.gov/savings ("Wall of Receipts" identifying federal contracts, grants, and leases purportedly cancelled by DOGE).

Interrogatory 9: DOGE claims it "does not understand" the scope of Interrogatory 9, DOGE Disc. Opp'n at 19-20, which calls for DOGE to identify "each federal agency database or data management system" that DOGE has accessed, tried to access, or to which DOGE plans to gain access. CREW Disc. Mot., Ex. 1 at 8. DOGE's assertion that it does not collect this information is properly raised in response to the interrogatory, not in a motion opposing discovery, and even then, it would certainly not absolve DOGE of its obligation to conduct a diligent search for information. DOGE also asserts—without any explanation—that such information is not relevant. But DOGE using independent federal agencies' systems to make decisions that otherwise could only be made by those independent agencies' staff is certainly demonstrative of DOGE exercising independence by operating as the *de facto* decisionmaker for any agency whose systems DOGE accesses.

Nevertheless, in the interest of streamlining disputed issues for the Court, CREW proposes to narrow the scope of this interrogatory to the following systems:

> 1) any system that stores classified information, requires a security clearance prior to access, or is housed in a sensitive compartmented information facility, 2) any system used to store non-public and non-anonymized information regarding individuals, including but not limited to any person's social security number, contact information, financial information, health information, employment or employment applications, criminal histories, immigration or citizenship status, tax information, or security clearances, 3) any system utilized to store information regarding criminal investigations, and 4) any system utilized to control or facilitate spending, including payment systems or human resources/capital management at any federal agency. This request excludes email systems.

Document Request 2: DOGE objects to CREW's request for "visitor access requests" first because it "does not believe it has custody and control of any such requests," but CREW should not be compelled to abandon its request based on DOGE's preliminary belief, and DOGE's purported lack of custody and control should be raised in DOGE's response to a

17

document request, not a single sentence in its opposition. DOGE Disc. Opp'n at 20. DOGE next claims this request is irrelevant. Not so. To be sure, it is "not disputed" that "detailees to agencies or USDS employees who are working at federal agencies (such as dual employees) actually have access to the offices of those federal agencies." *Id.* But that alone does not provide the information sought in CREW's document request, which would provide first-hand evidence of which agencies have been accessed, who has been accessing them, and when, which is key to testing DOGE's claim that DOGE Team members are mere agency employees operating independently of DOGE.

Interrogatory 12 and Document Request 13. While CREW appreciates DOGE's willingness to produce the information and documents sought by these requests, CREW disagrees that the @DOGE X account is not "owned" by DOGE and that DOGE can assert in the future that any of its content or user information is unavailable to DOGE. *See* DOGE Disc. Opp'n at 20. That account publishes almost daily posts regarding DOGE's progress across the federal government, has been used to solicit DOGE employment applications, 3/10/25 Mem. Op. at 8, has been used to solicit public comments on policy initiatives from the public to DOGE and its "affiliates" at each agency, *see* CREW PI Mem. at 11, and its feed is the home page and shares the logo of DOGE.gov, which is DOGE's official government website.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for expedited discovery should be granted.

Dated: April 10, 2025

Respectfully submitted,

*/s/ Nikhel S. Sus*

Nikhel S. Sus (D.C. Bar No. 1017937)
Jonathan E. Maier (D.C. Bar No. 1013857)

Donald K. Sherman (D.C. Bar No. 90031810)
CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, D.C. 20044
Telephone: (202) 408-5565
Fax: (202) 588-5020
nsus@citizensforethics.org
jmaier@citizensforethics.org
dsherman@citizensforethics.org

*Counsel for Plaintiff*