**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON**, |
| Plaintiff, |
| v. |
| **U.S. DOGE SERVICE,** et al., |
| Defendants. |

Case No. 25-cv-511 (CRC)

## OPINION AND ORDER

This case concerns three Freedom of Information Act ("FOIA") requests lodged by
Citizens for Responsibility and Ethics in Washington ("CREW") seeking information about the
recently formed United States DOGE Service ("USDS").  CREW filed two requests with the
Office of Management and Budget ("OMB") and the third with USDS itself.  While OMB has
agreed to take up CREW's requests on an expedited basis, USDS initially declined to process
CREW's request at all on the ground that it is not an agency subject to FOIA.  The Court
disagreed, holding that USDS is likely an agency subject to FOIA and entering a preliminary
injunction requiring expedited processing of CREW's request.

USDS then moved for summary judgment, reiterating its position that USDS is not an
agency subject to FOIA.  In response, CREW filed a motion for expedited discovery under
Federal Rule of Civil Procedure 56(d), seeking information relevant to whether USDS wields
substantial authority independent of the President and is therefore subject to FOIA.  USDS
opposed CREW's motion, contending that CREW is not entitled to discovery at all and that,
even if some limited discovery is appropriate, CREW's requests stretch too broadly.

For the reasons that follow, the Court holds that CREW is entitled to limited discovery. The Court will, however, limit CREW's requests to some extent.

**I.    Background**

The Court incorporates the factual and procedural background from its memorandum opinion partially granting CREW's motion for a preliminary injunction and its opinion and order denying USDS's motion for reconsideration of the preliminary injunction ruling.  See Citizens for Resp. & Ethics in Washington v. U.S. DOGE Serv. ("CREW I"), No. 25-cv-511 (CRC), 2025 WL 752367, at *1–6 (D.D.C. Mar. 10, 2025); Citizens for Resp. & Ethics in Washington v. U.S. DOGE Serv. ("CREW II"), No. 25-CV-511 (CRC), 2025 WL 863947, at *1–2 (D.D.C. Mar. 19, 2025).

To briefly summarize: USDS, a unit within the Executive Office of the President, has reportedly spearheaded efforts to terminate federal workers, programs, and contracts across the federal government since President Trump took office in January 2025.  Seeking to learn more about USDS, CREW filed two FOIA requests with OMB and one with USDS itself.  After CREW sought emergency relief, the Court entered a preliminary injunction ordering expedited processing of the USDS Request, though it declined to order processing of any of the requests by a date certain.  CREW I, 2025 WL 752367, at *10–16.

The government then filed a motion for partial reconsideration asking the Court to reconsider the portions of its opinion directing USDS to process the USDS request, provide an estimate of responsive documents, and propose a schedule for expedited processing.  CREW II, 2025 WL 863947, at *2.  As the basis for its motion, the government argued that the Court had erred by concluding that USDS is likely an agency subject to FOIA.  Id. at *3.  The Court denied the government's motion, but noted that it was "free to file its summary judgment motion

imminently, as it has indicated it will do." Id. at *2.  Once that motion was filed, the Court

indicated that it would "entertain a motion from CREW under Rule 56(d) to conduct limited

discovery to develop facts relevant to USDS's status as an agency under FOIA." Id.

     USDS filed its summary judgment motion, and CREW subsequently moved for limited

expedited discovery under Rule 56(d).  For the reasons that follow, the Court will grant CREW's

motion in part.

## II.   Legal Standards

     To determine whether expedited discovery is appropriate, the Court considers the

"reasonableness of the request in light of all of the surrounding circumstances." Guttenberg v.

Emery, 26 F. Supp. 3d 88, 98 (D.D.C. 2014) (citation omitted).  These include: "(1) whether a

preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for

requesting the expedited discovery; (4) the burden on the defendants to comply with the requests;

and (5) how far in advance of the typical discovery process the request was made." Id.

## III.   Analysis

### A.  CREW is Entitled to Limited Discovery

     USDS seeks summary judgment on the ground that USDS is not an agency subject to

FOIA.  As the Court explained in its prior opinions, to conclude that "an EOP unit is subject to

FOIA," there must be "a finding that the entity in question 'wielded substantial authority

independently of the President.'" Citizens for Resp. & Ethics in Wash. v. Off. of Admin.

("OA"), 566 F.3d 219, 222 (D.C. Cir. 2009) (citation omitted).  That analysis trains on whether

an entity within EOP "could exercise substantial independent authority" and whether it "does in

fact exercise such authority." Armstrong v. Exec. Off. of the President, 90 F.3d 553, 560 (D.C.

Cir. 1996).  If instead the unit's "sole function is to advise and assist the President," it is not an

agency.  Alexander v. FBI, 456 F. App'x 1, 1–2 (D.C. Cir. 2011) (quoting Kissinger v. Reps. Comm., 445 U.S. 136, 156 (1980)).  CREW, in response, seeks expedited discovery on USDS's influence and operations for purposes of determining whether it is exercising the requisite authority subjecting it to FOIA.  Mot. for Expedited Discovery at 1.

As the government acknowledges, courts in this district have permitted limited discovery in just these circumstances—to ascertain whether an entity is wielding independent authority sufficient to bring it within FOIA's ambit.  For instance, when considering whether FOIA applies to the Office of Administration within EOP, the district court "allowed CREW to conduct limited jurisdictional discovery to explore 'the authority delegated to [OA] in its charter documents and any functions that OA in fact carries out.'"  OA, 566 F.3d at 221 (citation omitted).  Similarly, when the government argued that the Office of Homeland Security ("OHS") was not an agency subject to FOIA, the court ordered limited discovery, reasoning that the plaintiff's request was "necessary and relevant" in the absence of "evidence that is definitive on the issue of OHS's agency status."  EPIC v. Off. of Homeland Sec., No. 02-cv-00620-CKK, ECF No. 11, at 10, 12 (D.D.C. Dec. 26, 2002); see also Armstrong, 90 F.3d at 560 (considering National Security Council staff declaration to determine its agency status); Meyer v. Bush, No. 88-cv-3112-JHG, 1991 WL 212215, at *6 (D.D.C. Sept. 30, 1991), rev'd on other grounds, 981 F.2d 1288 (D.C. Cir. 1993) (relying on letters, memoranda, and the Vice President's public statements in considering FOIA's applicability to Presidential Task Force on Regulatory Relief).

Just recently, Judge Bates partially granted the plaintiffs' motion for expedited discovery seeking "facts that bear on [the] irreparable harm" imposed by USDS employees' access to individual information protected by the Privacy Act of 1974.  AFL-CIO, No. 25-cv-339-JDB, ECF No. 48, at 8 (D.D.C. Feb. 27, 2025).  The court reasoned that "the structure of USDS and

the scope of its authority" were "unclear on the current record" and "critical to deciding the question of whether USDS is an agency within the meaning of the Economy Act of 1933—and thus whether its employees are permitted by the Privacy Act to view individual information." Id. Accordingly, limited discovery was appropriate. Id.

So too here. The structure of USDS and the scope of its authority are critical to determining whether the agency is "wield[ing] substantial authority independently of the President." OA, 566 F.3d at 222. And the answers to those questions are unclear from the record. Resisting this conclusion, the government principally argues that the language of the President's executive orders indicate that USDS's function is merely advisory. Opp'n at 4–5. But these executive orders cannot bear the weight the government assigns to them for two reasons.

First, the language of the President's USDS-related executive orders, far from resolving the question against CREW, in fact suggests that USDS is exercising substantial independent authority. As the Court already noted, the executive order establishing USDS "to implement the President's DOGE Agenda" appears to give USDS the authority to carry out that agenda, "not just to advise the President in doing so." CREW I, 2025 WL 752367, at *11. President Trump's subsequent executive order also "grants the USDS Team Lead the power to keep vacant career positions open unless an agency overrides their decision." Id. USDS responds that the language highlighted by the Court refers "to the entire DOGE structure (including DOGE Teams at federal agencies)." Id. Perhaps. But contrary to the government's position, nothing in the record conclusively establishes that USDS representatives embedded within agencies act independently of USDS. In fact, the relevant executive orders suggest the opposite. For instance, agencies are required to "coordinate [the DOGE Teams'] work with USDS." See Exec. Order No. 14158,

Establishing and Implementing the President's "Department of Government Efficiency," 90 Fed.

Reg. 8441 (Jan. 29, 2025).  And as another court in this district recently observed, "DOGE Team

members are also selected in part by USDS, and USDS helps form the contours of their duties."

AFL-CIO, No. 25-cv-339, ECF No. 75, at 3 n.4.

Accordingly, even if other parts of the executive orders could be read to suggest a more

advisory role, the implication left by USDS's charter documents is unclear at best.  And that

weighs in favor of permitting limited discovery, not against it.  See EPIC, No. 02-cv-620-CKK,

ECF No. 11, at 12 (ordering discovery because "the language" of the executive order

"establishing the [OHS's] power [was] broad and lacking in firm parameters").

Second, USDS's focus on its charter documents ignores evidence in the public record that

USDS is exercising substantial authority across vast areas of the federal government.  In its prior

opinion, the Court referenced news articles reporting that USDS "likely drove the charge to

shutter USAID," "eliminated 104 DEI-related contracts with the federal government," and

otherwise exercised authority to "identify and terminate federal employees, federal programs,

and federal contracts."  CREW I, 2025 WL 752367, at *11.  The Court emphasized, as well, that

these articles characterized USDS as "reportedly [] leading the charge on these actions, not

merely advising others to carry them ."  Id.  And the Court cited other cases finding that USDS

"has taken numerous actions without any apparent advanced approval by agency leadership."

Op. Denying Mot. for Recons., ECF No. 23, at 11 (citing Does 1- 26 v. Musk, No. 25-cv-462,

2025 WL 840574, at *3 (D. Md. Mar. 18, 2025)).  Because the public record contradicts USDS's

already disputable interpretation of the relevant executive orders, discovery is particularly

appropriate here.

The other factors that the Court considers when assessing whether to order expedited discovery point in the same direction.  CREW is not currently seeking a preliminary injunction, but it has already obtained emergency relief.  That relief will not be fully effectuated until the Court rules on USDS's expedited summary judgment motion, however, since the Court has indicated that it will not order USDS to produce documents until after that ruling.  See Guttenberg, 26 F. Supp. 3d at 98.  And, especially given modifications to CREW's requests which the Court will next discuss, the burden on the defendants to comply with the requests will not be onerous.  Id.[1]

B.  Specific Requests at Issue

Next, the Court considers whether CREW's discovery request are properly scoped. USDS raises several objections to CREW's requests.  The Court will take each in turn.

1.  *Depositions*

CREW seeks to depose three witnesses: a USDS representative designated under Federal Rule of Civil Procedure 30(b)(6), USDS Administrator Amy Gleason, and Steven Davis, who has been reported as leading USDS's daily operations.  Mot. for Expedited Discovery at 17, id., Maier Decl. ¶ 30.  USDS responds by asking the Court to limit any discovery to written discovery only, or, at most, permit a single Rule 30(b)(6) deposition.  Opp'n at 8, 10 ("[I]f the Court concludes that depositions are needed, Defendants do not object to the Court's approval of a single 30(b)(6) deposition.").

---

[1]  As noted in the Court's prior opinion, "USDS also provides no reason why the existing FOIA office at OMB, or those elsewhere within the Executive Office of the President, could not assist with processing the narrow USDS Request."  CREW II, 2025 WL 863947, at *8.

"Rule 30(b)(6) requires an organization to identify a person knowledgeable on a noticed topic and to prepare that person to testify as to that topic, thus binding the entity." Prasad v. George Washington Univ., 325 F.R.D. 1, 6 (D.D.C. 2018). If USDS desires, of course, it may select USDS Administrator Amy Gleason as its Rule 30(b)(6) representative. If USDS does not select Administrator Gleason as its Rule 30(b)(6) representative, however, a deposition of Ms. Gleason is additionally appropriate. USDS first submitted a declaration from Ms. Gleason in support of its motion for reconsideration, which detailed her knowledge of USDS's structure and operations. Mot. for Recons., Gleason Decl. Moreover, USDS's motion for summary judgment largely relies on a second declaration from Ms. Gleason on the same topic. Mot. for Summ. J., Attachment 2 (Gleason Decl.). Given that Ms. Gleason's declaration is the only factual evidence offered in support of USDS's summary judgment motion, CREW is naturally entitled to question her. That determination is consistent with the Court's prior observation that parts of Gleason's declaration appear to be "called into question by contradictory evidence in the record." Op. Denying Mot. for Recons. at 10 (citing Jud. Watch, Inc. v. U.S. Secret Serv., 726 F.3d 208, 215 (D.C. Cir. 2013)). See AFL-CIO, No. 25-cv-339, ECF No. 48, at 9 ("It would be strange to permit defendants to submit evidence that addresses critical factual issues . . . without permitting plaintiffs to explore those factual issues through very limited discovery").

On the other hand, the Court will not at this juncture order the deposition of Steven Davis. CREW describes Mr. Davis as "a DOGE employee who has been widely reported to be the day-today manager of DOGE's operations and a close associate of Mr. Musk." Maier Decl. ¶ 30. But Mr. Davis has not submitted a declaration in support of the government's motion for summary judgment, and CREW provides no reason why Mr. Davis is uniquely positioned to answer questions that USDS's Rule 30(b)(6) representative or Ms. Gleason could not.

##### 2. *Record-Keeping Policies*

The government next identifies several topics which "either are irrelevant to resolving USDS's summary judgment motion or, to the extent they are marginally relevant, would be unduly burdensome." Opp'n at 12. As to some of these, the Court agrees with USDS.

USDS first objects to CREW's request for information about the agency's record-keeping practices. Specifically, USDS objects to CREW's proposal to depose a 30(b)(6) deponent on "DOGE's recordkeeping and retention policies and practices," Document Request 14 seeking "[a]ll documents describing DOGE's record retention and preservation policies, including those relating to the @DOGE X account," and Interrogatory 11, which asks USDS to "[i]dentify whether any DOGE employee or DOGE Team member has used or presently uses non-official messaging systems or applications with auto-delete functionality, including but not limited to Signal, to conduct government business." Id. at 13. These requests may be grounded in legitimate concerns about USDS's compliance with federal record-keeping requirements. But they are largely irrelevant to the issue at hand. That is, they do not bear on the question presented by USDS's motion for summary judgment, which is whether the agency is wielding substantial independent authority subjecting it to FOIA.

CREW responds that "[q]uestioning on these topics is also necessary to ascertain whether documents that would otherwise have been produced in the course of discovery have been lost or are unretrievable because of DOGE's lack of document preservation measures." Reply at 12. The Court disagrees. While the Court certainly expects USDS to comply with its preservation order—which USDS has indicated it will do—discovery on that issue is tangential to the pending summary judgment motion.

### 3. Materials from Agency USDS Teams

Next, the government objects to all requests that "require USDS to collect and provide information about Agency DOGE Teams." Opp'n at 16. The government argues that such information is irrelevant because "[a]gency DOGE Teams are employees of the agencies to which they are assigned" and are subject to FOIA. Id. at 16. Here, the government misses the mark. Whether or not agency USDS detailees are otherwise subject to FOIA, their actions, and particularly the extent to which USDS is directing them, is relevant to assessing USDS's authority. If Agency DOGE teams are complying with orders from USDS leadership, that speaks to USDS's influence over other federal agencies.

The government asserts that it "does not have visibility into everything DOGE Team members do at their respective agencies, how they are supervised, what reports they submit within their agencies, how they record their time, and any directives they give within their agencies." Opp'n at 17. CREW, however, has clarified that its document requests only seek documents "within [USDS]'s custody, control, or possession." Reply at 14. The same limitation would apply to a Rule 30(b)(6) deposition: the deponent need testify only to matters within USDS's collective knowledge.

### 4. USDS Recommendations

Next, USDS objects to CREW's Interrogatories 6 and 8. Interrogatory 6 would ask USDS to "[i]dentify each federal agency contract, grant, lease, or similar instrument that any DOGE employee or DOGE Team member recommended that federal agencies cancel or rescind since January 20, 2025, and whether that recommendation was followed." Interrogatories, ECF No. 27-1, at 8. Similarly, Interrogatory 8 asks USDS to "[i]dentify each federal agency employee or position that any DOGE employee or DOGE Team member recommended federal

agencies terminate or place on administrative leave since January 20, 2025 and whether that recommendation was followed." Id.

USDS objects first that these requests "definitionally could not result in information that would aid CREW in its efforts to show that USDS wields substantial authority independent of the President" because recommendations need not always be followed. Opp'n at 18. True, if the recipient of those recommendations viewed them as purely advisory. But that is just the question. The line between a recommendation and directive is a blurry one, and CREW is attempting to determine whether USDS's "purported 'recommendations' are always followed (or almost always followed)." Reply at 15. That question is relevant to the authority USDS exercises over federal agencies. USDS also objects that requests related to its recommendations "seek information that is likely privileged." Opp'n at 18. But even if true, USDS may assert privilege in its discovery responses "as CREW's proposed discovery requests explicitly instruct." Id. at 15.

### 5.  Other Objections

The government also objects to Interrogatory 3, which asks USDS to "[i]dentify each Administrator since January 20, 2025, the dates during which each person held that position, whether they interviewed for that position, with whom they interviewed, and who first informed them that they had been appointed to that position." Interrogatories at 7. USDS complains that this interrogatory "has no bearing on whether USDS is a FOIA/FRA agency." Opp'n at 19. The Court agrees. CREW has not shown how the specifics of who served as USDS Administrator or interviewed for the position bears on USDS's authority.

The government also objects to Interrogatory 9, which asks USDS to "[i]dentify each federal agency database or data management system to which, since January 20, 2025, any

DOGE employee has attempted to gain, has planned to gain, or plans to gain access, and whether access was obtained." Interrogatories at 8. In response, CREW proposes narrowing the scope of this interrogatory to systems that store classified or sensitive information. Reply at 17. As narrowed, the Court concludes that CREW's discovery request is appropriate. USDS's employee access to sensitive systems is an indicator of its authority, especially if such access was obtained over the objection of agency officials, as has been reported. CREW I, 2025 WL 752367, at *12. Nor should this request present a burden for USDS, since it has been ordered to disclose similar information in the aforementioned case before Judge Bates.

USDS also complains that it does not "collect information at a more granular level about the specific agency systems to which particular detailees/dual employees have access." Opp'n at 20. But as already noted, to the extent USDS does not have this information in its custody, control, or possession—or within its collective knowledge for purposes of the Rule 30(b)(6) deposition—it need not conduct further investigation within other agencies. See Reply at 14.

USDS next objects to Document Request 2, which seeks "visitor access requests" concerning "any DOGE employee detailed to, otherwise working at, or accessing the offices of, federal agencies." Interrogatories at 8, 12. The Court agrees that this is request seeks irrelevant information. It is not disputed that USDS employees have access to the offices of federal agencies. The question is whether USDS employees are using that access to influence those agencies, which is targeted by CREW's other requests.

Lastly, USDS notes that Interrogatory 12 and Document Request 13 "address communications through the @DOGE X account" which is "not owned by USDS." Opp'n at 20. Although the Court is somewhat baffled by this, USDS has nonetheless agreed to "make a reasonable effort to provide information responsive to this Interrogatory and Request to the

extent that such information is within its possession, custody, and control." <u>Id.</u> The Court therefore need not linger over this request.

## IV.    Conclusion

For the reasons explained above, it is hereby

**ORDERED** that [27] plaintiffs' motion for expedited discovery is GRANTED in part, subject to the alterations the Court has explained in this Order; and it is further

**ORDERED** that Defendants:

Serve responses and objections to Plaintiff's Discovery Requests within 7 days of the date of this order;

Produce all responsive documents within 14 days of the date of this order; and it is further

**ORDERED** that all depositions be completed within 10 days from the deadline for producing documents.



_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>April 15, 2025</u>