UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br>　　　　　Plaintiff,<br><br>　　v.<br><br>U.S. DOGE SERVICE, *et al.*,<br>　　　　　Defendants. | Case No. 1:25-cv-00511 |

**MEMORANDUM IN SUPPORT OF
THE UNITED STATES DOGE SERVICE'S MOTION FOR STAY OF APRIL 15, 2025
ORDER PENDING PETITION FOR WRIT OF MANDAMUS**

The United DOGE Service (USDS) plans to file tomorrow a petition for a writ of mandamus in the United States Court of Appeals for the D.C. Circuit requesting that the Court of Appeals vacate this Court's order issued on April 15, 2025. *See* ECF No. 38 (Discovery Order). USDS respectfully submits that the Court clearly erred in ordering discovery in this case and that, at the very least, the requested discovery sweeps far more broadly than is necessary to determine the sole issue presented by USDS's motion for summary judgment: whether USDS is endowed with substantial authority independent of the President and thus qualifies as an agency for purposes of the Freedom of Information Act (FOIA) and Federal Records Act (FRA). In addition, complying with the Court's Discovery Order would impose substantial burdens on USDS by, among other things, requiring USDS's Administrator to divert time from her professional duties to prepare for, and participate in, a time-consuming deposition, and requiring USDS to search for, review, and compile potentially voluminous advisory materials on an impossible timeline that are categorically and definitionally both irrelevant and privileged. Absent further action by this Court or the Court

1

of Appeals, USDS's written discovery responses (including its responses to CREW's Interrogatories) are due only five days from now. USDS thus hereby moves this Court to stay the Discovery Order pending the D.C. Circuit's disposition of the mandamus petition USDS expects to file tomorrow. CREW opposes this requested relief. Should the Court not grant a stay of the Order by 11:00 a.m. tomorrow, Defendants intend to also seek a stay from the D.C. Circuit, as well as an immediate administrative stay.

## ARGUMENT

## THE COURT SHOULD STAY ITS DISCOVERY ORDER PENDING EXPEDITED REVIEW

This Court has "broad discretion to stay proceedings," *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997), including under a four-factor test for a stay pending appeal that turns on: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see, e.g.*, *Chafin v. Chafin*, 133 S. Ct. 1017, 1027 (2013); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Under this "traditional standard," the first two factors "are the most critical." *Nken*, 556 U.S. at 434. Here, each of the factors weighs in favor of the requested stay pending D.C. Circuit disposition of the forthcoming mandamus petition.

### I.   USDS Has a Strong Likelihood of Success on the Merits

USDS is likely to succeed on the merits of its mandamus petition. Most broadly, and for the reasons set forth in USDS's opposition to the discovery motion, *see* ECF No. 34 at 2-7, there is no need for discovery to resolve the summary judgment motion, because a component's status as an "agency" under the FRA and FOIA turns on its formal authority, not its informal influence. Many White House components wield substantial informal influence without qualifying as

2

agencies subject to FOIA. Nor is there any meaningful way to assess the degree of informal influence an entity wields. The test instead is whether a component wields *formal authority* independent of the President. *See Meyer v. Bush*, 981 F.2d 1288, 1294-98 (D.C. Cir. 1993).

On the question of formal authority, USDS's charter documents make clear that it does not wield substantial authority independent of the President. This Court's Discovery Order stated that "the President's USDS-related executive orders, far from resolving the [agency] question against CREW, in fact suggests that USDS is exercising substantial independent authority." Discovery Order at 5. Respectfully, the provisions the Court invoked suggest no such thing. The Court again relied on a provision in Executive Order 14,158 stating that agencies should not fill vacancies for career appointments that the DOGE Team Lead assesses should not be filled, unless the Agency Head determines the positions should be filled. Discovery Order at 5. But as we have explained, the DOGE Team Lead is herself an agency employee and, in any event, the fact that an agency DOGE Team lead can make an assessment that the agency head can freely reject is plainly not an authority USDS has *over* the agency head. The Court also relied on a different provision of the Executive Order, taken from its "purpose" section, stating that the "DOGE Structure" is being created to "implement the President's DOGE Agenda." *Id.* Again, however, the word "implement" is too thin a reed to suggest that USDS is wielding formal authority comparable to that held by components (like OMB, OSTP, and CEQ) that are agencies for purposes of FOIA and the FRA.. And as previously noted, the Executive Order is clear that the "DOGE Structure" it is referring to includes *both* agency DOGE Teams and USDS.

Addressing this latter point, the Court also suggested that "nothing in the record conclusively establishes that USDS representatives embedded within agencies act independently of USDS." *Id.* But the Executive Order requires that agencies "establish *within their respective*

3

Case 1:25-cv-00511-CRC    Document 39-1    Filed 04/17/25    Page 4 of 12

*Agencie*s a DOGE Team of at least four employees, which may include Special Government Employees." Exec. Order 14,158, § 3(c) (emphasis added). On its face, the Executive Order thus makes clear that agency DOGE Teams are agency employees who are accountable to their agency leadership like any other agency employees. And contrary to the Court's suggestion, the requirement that agency DOGE Teams "coordinate" their work with USDS does not establish that USDS has any formal *authority* over agency DOGE Teams, let alone authority it exercises independent of the President.

Finally on this point, the Court also cited what it described as "evidence in the public record that USDS is exercising substantial authority across vast areas of the federal government." Discovery Order at 6. But this supposed evidence involves public reports concerning activities occurring at agencies or news articles or statements about "DOGE" generally. ECF No. 34 at 7. The Department of Government Efficiency (or "DOGE") is the umbrella term for the government-wide initiative to implement the President's DOGE Agenda (including agency DOGE Teams and agency DOGE Team leads), while USDS is a specific, non-statutory component with limited and purely advisory responsibilities. *Id.* None of the supposed public evidence the Court discussed creates a genuine issue of material fact as to whether *USDS* is wielding substantial formal authority.

The Court's discovery order is also extremely burdensome. Among other things, CREW has not met its burden of demonstrating extraordinary circumstances sufficient to justify the deposition of USDS's Administrator, and USDS respectfully submits that the contrary rationale in the Discovery Order failed to hold CREW to the proper legal standard governing that burden. In addition, other aspects of this invasive order, in particular Interrogatories 6, 8, and 9, threaten "the Executive's interests in maintaining the autonomy of its office and safeguarding the confidentiality

4

of its communications" and fail to accord the "high respect that is owed to the office of the Chief Executive" in the conduct of litigation. *Cheney v. U.S. District Court for D.C.*, 542 U.S. 367, 385 (2004).

As to Administrator Gleason's deposition, Ms. Gleason is not only the head of an Executive Branch component, but head of an Executive Office of the President component. Expedited discovery itself is an exception to the ordinary rules of civil litigation, and the depositions of high-ranking government officials are an exception even beyond that: "[A] district court should rarely, if ever, compel the attendance of a high-ranking official in a judicial proceeding," *In re U.S.A.*, 624 F.3d 1368, 1376 (11th Cir. 2010), particularly when that official offers no unique information that cannot be obtained from a lower-level official. As the Supreme Court has recognized, compelling the testimony of high-ranking government officials is justified only in "extraordinary instances." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268 (1977). That strict limitation on the compelled testimony of high-ranking officials is necessary because such orders raise significant "separation of powers concerns." *In re USA*, 624 F.3d at 1372; *see also Arlington Heights*, 429 U.S. at 268 & n.18. The Supreme Court has further emphasized that administrative decisionmaking and judicial processes are "collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other." *United States v. Morgan*, 313 U.S. 409, 422 (1941).

For these reasons, "there is a presumption against deposing high-ranking government officials" regarding official actions. *Kelley v. FBI*, No. 13-cv-0825 (ABJ), 2015 WL 13648073, at *1 (D.D.C. July 16, 2015) (citing *Peoples v. U.S Department of Agriculture*, 427 F.2d 561, 567 (D.C. Cir. 1970)). "[H]igh ranking government officials are generally not subject to depositions unless they have some personal knowledge about the matter and the party seeking the deposition

makes a showing that the information cannot be obtained elsewhere." *Alexander v. FBI*, 186 F.R.D. 1, 4 (D.D.C. 1998) (collecting cases); *see also Lederman v. N.Y.C. Department of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) ("We now hold that, to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means.").

Respectfully, the Discovery Order is not consistent with these exacting standards. The Court did not find—nor, we submit, could it plausibly have found—that Ms. Gleason has *unique* first-hand knowledge requiring her deposition. But as the Court acknowledged, USDS would be required to prepare *any* Rule 30(b)(6) deponent to testify for the entity on the approved topics: "Rule 30(b)(6) requires an organization to identify a person knowledgeable on a noticed topic and to prepare that person to testify as to that topic, thus binding the entity." Discovery Order at 8 (quoting *Prasad v. George Washington University*, 325 F.R.D. 1, 6 (D.D.C. 2018)).

In nonetheless ordering Administrator Gleason's deposition, the Court relied almost entirely on USDS's submission of a declaration that she signed in support of USDS's motion for summary judgment. But as we previously explained, Administrator Gleason's declaration describes the structure and function of USDS and Agency DOGE Teams by citing to, quoting from, or otherwise discussing the Executive Orders and presidential memorandum that discuss these same issues. Gleason Decl. ¶¶ 7-25. In a hypothetical 30(b)(6) deposition, CREW could probe these statements and any supposed tension between those statements and other sources. Nothing in that declaration establishes that Ms. Gleason has unique knowledge that requires her deposition—as opposed to a deposition from any 30(b)(6) deponent.

USDS is also likely to succeed in its challenge to the Court's approval of other aspects of CREW's discovery requests—which seek burdensome information of limited to no relevance to the pending summary judgment motion. Notably, it is important to emphasize at the outset that USDS is an office within the Executive Office of the President. *See* Exec. Order No. 14,158, § 3(a), 90 Fed. Reg. 8441 (Jan. 20, 2025). Litigation against the White House is distinct from garden variety litigation. The separation of powers "should inform the conduct of the entire proceeding, including the timing and scope of discovery." *Cheney*, 542 U.S. at 385 (quoting *Clinton v. Jones*, 520 U.S. 681, 707 (1997)). That office's "unique position in the constitutional scheme" "counsel[s] judicial deference and restraint." *Nixon v. Fitzgerald*, 457 U.S. 731, 749, 753 (1982); *see also Lardner v. U.S. Department of Justice*, No. 03-civ.-0180 (JDB), 2005 WL 758267, at *9 (D.D.C. Mar. 31, 2005) ("[A] court must screen a request for presidential documents to ensure that the discovery is essential to the proceedings").

Here, too, the Court's Discovery Order is not consistent with those principles. This is most obvious with respect to Interrogatories 6 and 8, which demand that USDS identify every agency contract, grant, lease or similar instrument as to which USDS (or Agency DOGE Teams) "recommended" cancellation or rescission, as well as whether each recommendation was followed; Interrogatory 8 demands the same information concerning every recommendation made by USDS as well as by Agency DOGE Teams to terminate or place on leave federal agency employees or positions. But by definition, a "recommendation" is not evidence that USDS has *authority* over agencies who receive such recommendations, whether or not they are followed. Recommendations definitionally represent advice that need not be followed (and it is particularly clear that this is the sense in which *these* interrogatories use the term, given that CREW also seeks *directives* on the same subjects). ECF No. 34 at 18. And at the very least, a substantial number of

7

such recommendations, if not all, are likely to be privileged. *Id.*

The Court reasoned in response that these discovery requests were proper because discovery might reveal whether any recommendations were always or almost always followed, and because USDS may assert privilege as to particular recommendations. Discovery Order at 11. Respectfully, neither point justifies these Interrogatories. For one, even if discovery showed that the recipients always followed USDS's recommendations, that would not show that USDS has authority independent of the President. At most, it might show that USDS has significant *influence*. But influence and authority are not the same thing. To the extent recipients always or almost always follow USDS's recommendations, that would at most mean that "it is assumed that [USDS] merely [is] passing on the President's wishes." *Meyer*, 981 F.2d at 1294.

And even if it would conceivably be relevant whether agencies always or almost always follow USDS's recommendations (and, respectfully, it is not), CREW has not shown that it needs the roving discovery it has asked for: a dragnet search for, and potential disclosure of, every single recommendation by a USDS employee or DOGE Team member on these topics over a period of months. The term "recommend" is vague, but its scope is potentially expansive. And indeed, granting CREW discovery concerning advice given by a wide range of employees on broad topics to determine whether it is subject to FOIA in the first place converts discovery into an avenue for obtaining the very information—indeed, more information—than CREW has sought through its FOIA request itself.

And as to privilege concerns, the Supreme Court in *Cheney* also expressly rejected the view that the White House could adequately safeguard its interests by asserting privilege over specific documents. 542 U.S. at 385. To the contrary, the need to "winnow the discovery orders by asserting specific claims of privilege and making more particular objections" is itself a burden on the

8

Executive Branch that raised constitutional concerns. *Id.* at 389.

Next, the portion of the Court's Order that requires USDS to respond to Interrogatory 9—which, as narrowed by CREW, asks USDS to "[i]dentify each federal agency database or data management system to which, since January 20, 2025, any DOGE employee has attempted to gain, has planned to gain, or plans to gain access, and whether access was obtained" provided that the system stores classified or sensitive information—is also highly burdensome. As we explained in the opposition to the motion for discovery, *see* ECF No. 34 at 20, USDS simply does not have comprehensive knowledge as to which specific agency systems particular detailees/dual employees have access. To the extent USDS has that information at all, it is information that would have been gleaned intermittently in its advisory capacity. Searching for that kind of information would be highly burdensome. The Court's Order states that this Interrogatory should not "present a burden for USDS, since it has been ordered to disclose similar information in the aforementioned case before Judge Bates." Discovery Order at 12. Respectfully, this is incorrect. In that case, the *defendant agencies* who were parties to the case provided information about their own systems to which the relevant individuals had access.

To be clear, although we highlight the particular problems posed by these requests, many other aspects of the Court's order create similar problems. Many of those requests are vague and raise complicated questions of custody and privilege. USDS is an advisory component and most of its communications are, by definition, deliberative. And many USDS employees who have employment relationships with other agencies may have learned responsive information in their capacities as employees of those other agencies—information that USDS would not be required to produce here. *See, e.g.*, Interrogatories 2, 4, 9.  Those requests also impose substantial burdens on USDS. Several of the interrogatories could potentially require interviews with every single USDS

9

employees about their activities and statuses dating back to January 20. *See, e.g.*, Interrogatory 10. Others would potentially require reviewing substantial amounts of irrelevant data in an attempt to ascertain responsive information that USDS came upon piecemeal in its advisory role. *See, e.g.*, Interrogatory 1.

## II. USDS Will be Irreparably Harmed Absent A Stay

USDS would also suffer irreparable harm absent a stay. First, USDS's Administrator would be diverted from her significant duties and burdened in both preparing and sitting for a deposition, all of which may ultimately prove to be unnecessary if the Court of Appeals grants the mandamus petition. "It would be difficult—if not impossible—to reverse the harm" at a later stage of the case. *See Hollingsworth v. Perry*, 558 U.S. 183, 195 (2010). Indeed, the very purposes of the "exceptional circumstances" test for depositions of high-ranking government officials would be thwarted if the challenged depositions were to proceed during the pendency of a mandamus petition that seeks to curtail those depositions in line with precedent: "If courts did not limit the[] depositions [of high-ranking officials], such officials would spend 'an inordinate amount of time tending to pending litigation.'" *Lederman*, 731 F.3d at 203 (quoting *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007)).

The same is true of the discovery more generally and, in particular, the subjects discussed above. The discovery order intrudes substantially on a component of the Executive Office of the President, requiring (on its face) reams of deliberative material. And as discussed, the burden of compliance is high. Absent a stay USDS would be required, within the next five days to, among other things, attempt to identify every recommendation it or any of its employees has made on broad subjects and either disclose the substance of those recommendations to CREW, or analyze and assert privilege as to a potentially broad swathe of material. And it must do so, while also processing 1,000 pages of documents to comply with the Court's attendant order directing

processing of FOIA records, while the Court considers whether USDS is actually subject to FOIA in the first place. To the extent USDS is required to undertake this burdensome search process (or produce any documents or information) pursuant to the Court's Discovery Order, it would likewise be impossible to reverse the resulting harm if the Court of Appeals vacates that order or narrows the discovery this Court has directed.

### III.   CREW Will Not Be Prejudiced By A Stay

In contrast to the harms to USDS described above, which are plainly irreparable, CREW will suffer relatively little harm, if any, from an immediate stay of the Discovery Order. As noted above, USDS intends to move for relief in the Court of Appeals tomorrow, and it will request expedited consideration. As this Court has already found, there is no impending event that makes an immediate FOIA production critical. ECF No. 18 at 15-22. CREW will not suffer any irreparable harm from the minor delay of a stay pending highly expedited mandamus review. This is particularly true given that this Court is already directing USDS to process (though not to produce) 1,000 pages per month even while the motion for summary judgment is pending, in addition to any responsive records CREW receives from OMB related to its FOIA requests to that component (which also focus on information concerning USDS).

### IV.   The Public Interest Favors A Stay

The harm to the government from denying a stay would far outweigh any harm to the plaintiffs from granting one. The requested stay would also promote judicial economy. If USDS's mandamus petition is successful, in whole or in part, discovery will either be unnecessary or potentially narrowed. "[C]onsiderations of judicial economy counsel, as a general matter, against investment of court resources in proceedings that may prove to have been unnecessary." *Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 644 (S.D.N.Y. 2012). The public interest favors a brief stay to allow USDS to seek mandamus relief on a highly expedited timetable, rather

than proceeding with discovery the Court of Appeals may ultimately deem improper or overly broad.

## CONCLUSION

The Court should stay the Discovery Order pending the D.C. Circuit's disposition of USDS's forthcoming mandamus petition.

Dated: April 17, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Andrew M. Bernie*
Andrew M. Bernie
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 353-7203
andrew.m.bernie@usdoj.gov

*Attorneys for Defendants*