IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. DOGE SERVICE, *et al.*,<br><br>    Defendants. | Case No. 1:25-cv-00511 |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR STAY OF APRIL 15, 2025 ORDER PENDING PETITION FOR WRIT OF MANDAMUS**

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") opposes Defendant United States DOGE Service's ("DOGE's") Motion for Stay of April 15, 2025 Order Pending Petition for Writ of Mandamus. For the second time in this case, DOGE seeks to escape an order from this Court that flowed from its own strategic choices. This time, DOGE seeks to avoid routine discovery under Fed. R. Civ. P. 56(d) that the Court *told DOGE it would allow* if DOGE, as it ultimately chose to do, filed a too-early motion for summary judgment. And DOGE seeks to do so through a stay that would merely buy it time to repeat its arguments in a petition for a writ of mandamus in the D.C. Circuit, hoping that different judges will somehow find the Court's cut-and-dried discovery order to be an abuse of discretion. Meanwhile, the preliminary injunction the Court issued more than five weeks ago remains a dead letter as DOGE predictably throws sand in the gears despite its pledge that its agency status would be litigated without undue delay. DOGE's requested stay is unwarranted and should be denied.

**STANDARD OF REVIEW**

"The party seeking a stay bears the 'burden of showing that exercise of the court's extraordinary injunctive powers is warranted.'" *Comm. on the Judiciary v. McGahn*, 407 F. Supp. 3d 35, 38 (D.D.C. 2019) (quoting *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)). "There are four 'traditional' factors that govern a request for a stay: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)).

**ARGUMENT**

DOGE does not meet its burden to establish any of the factors for a stay. The discovery ordered by the Court is plainly necessary, and the Court has appropriately cabined the discovery it granted CREW to be respectful of separation of powers concerns, alleviating the DOGE's claimed harms. Meanwhile, CREW and the public continue to be injured as they wait for a single document pursuant to the Court's March 10 preliminary injunction while Defendants try every avenue to escape their obligations under FOIA.

**I.     DOGE is unlikely to succeed on their merits.**

DOGE is unlikely to succeed on the merits at the D.C. Circuit for the same reasons the Court issued its discovery order, and its success is even more unlikely given the deference with which the D.C. Circuit reviews this Court's decisions on discovery. The D.C. Circuit "will overturn the district court's exercise of its broad discretion to manage the scope of discovery only in unusual circumstances." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991); *accord Hall & Assocs. v. Env't Prot. Agency*, 956 F.3d 621, 629 (D.C. Cir. 2020)

1

("District courts have 'broad discretion to manage the scope of discovery' in FOIA cases. We will overturn the exercise of that discretion 'only in unusual circumstances.'" (quoting *SafeCard*, 926 F.2d at 1200)); *CREW v. Off. of Admin.*, 566 F.3d 219, 225 (D.C. Cir. 2009) (similar). That is particularly true regarding requests for discovery under Rule 56(d), for which district courts "are afforded substantial discretion." *Stella v. Mineta*, 284 F.3d 135, 147 (D.C. Cir. 2002); *see also U.S. ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 31 (D.C. Cir. 2014) (noting that district court "exercised its significant discretion" when ruling on Rule 56(d) motion). Given that, there is no substantial likelihood that DOGE will succeed on the merits.

DOGE's objection to CREW's overall entitlement to discovery warrants little discussion, since it simply rehashes arguments the Court has rejected. *See* Def.'s Mem. Supp. Stay Mot. at 2-4, ECF No. 39-1. But, tellingly, DOGE fails even to acknowledge—let alone distinguish—the numerous cases in which courts in this Circuit have authorized limited discovery and considered deposition testimony *in this exact circumstance*. *See* 4/15/25 Op. & Order at 3-5, ECF No. 38 (citing cases). That omission speaks volumes.

DOGE also confuses the issues by insisting that none of the "public evidence" cited in the Court's opinion "creates a genuine issue of material fact as to whether [it] is wielding substantial formal authority." Def.'s Mem. Supp. Stay Mot. at 4. But that is the standard for summary judgment under Rule 56(a), not for obtaining discovery under Rules 56(d) and 26. The latter rules (which, again, DOGE ignores) control here.

DOGE's arguments regarding specific discovery are equally meritless, for the reasons set out below.

<u>Deposition of Administrator Gleason</u>. DOGE's argument that CREW is not entitled to Ms. Gleason's deposition fails for the same reason it failed in DOGE's opposition to CREW's

motion for expedited discovery: "Given that Ms. Gleason's declaration is the only factual evidence offered in support of USDS's summary judgment motion, CREW is naturally entitled to question her." 4/15/25 Op. & Order at 8. Having failed to dissuade the Court of the necessity of Ms. Gleason's deposition, particularly when her declaration has been "called into question by contradictory evidence in the record." 3/19/25 Op. & Order at 10, ECF No. 23 (quoting *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013)), DOGE now changes tack, arguing for the first time that Ms. Gleason's deposition is inappropriate because she is the head of an Executive Office of the President component, and that CREW should have sought the deposition of some lower-level employee of DOGE. *See* Def.'s Mem. Supp. Stay Mot. at 5-6. By failing to make this argument when opposing discovery, DOGE has waived it. *See Keepseagle v. Perdue*, 856 F.3d 1039, 1053 (D.C. Cir. 2017). Even if DOGE had not waived this argument, it is nevertheless unavailing because the circumstances here easily justify the deposition of Ms. Gleason, and DOGE can cite no case suggesting otherwise.

      The facts that set this case apart from others involving depositions of purportedly high-ranking officials are obvious. First, this is not a case, like that cited by DOGE, in which CREW as plaintiff is attempting to compel the deposition of an official uninvolved in the litigation. *See generally* Def.'s Mem. Supp. Stay Mot. at 4-7. DOGE chose to submit two declarations by Ms. Gleason in this case, using her as the only fact witness to the whole of DOGE's operations, presumably because she is the Acting Administrator of DOGE. CREW Mot. for Disc. at 18-20, ECF No. 27. DOGE nevertheless now bizarrely asserts that Ms. Gleason "offers no unique information that cannot be obtained from a lower-level official," as if the veracity of her declaration were not at issue or another person could testify to the entirety of Ms. Gleason's relevant personal knowledge as DOGE's Acting Administrator. Def.'s Mem. Supp.

Stay Mot. at 5. But Ms. Gleason has offered the *only evidence* put forth by DOGE to resolve the pending summary judgment motion, and her deposition is "intended to allow follow-up questioning on facts [DOGE] has itself put in evidence." *In re Cheney*, 544 F.3d 311, 313-14 (D.C. Cir. 2008) (permitting CREW to depose a National Archives official who submitted declarations in the district court and was "logically suited to clearing up lingering questions regarding her own affidavits," but disallowing discovery of an official who had "no apparent involvement in th[e] litigation"). Had DOGE preferred some unnamed lower-level employee to be involved in the litigation in place of Ms. Gleason, it should have submitted that person's declaration. It did not. "It would be strange"—and indeed fundamentally unfair to CREW—"to permit defendants to submit evidence that addresses critical factual issues . . . without permitting plaintiffs to explore those factual issues through very limited discovery." 4/15/25 Op. & Order at 8 (quoting *AFL-CIO v. U.S. Dep't of Lab.*, No. 25-cv-339-JDB, ECF No. 48, at 9 (D.D.C. Feb. 27, 2025)). Making matters worse, DOGE is *opposing* the discovery that would allow CREW to even ascertain if another deponent would be appropriate.

Second, Ms. Gleason's declaration is facially incomplete, inconsistent, and contradicted by the evidence in the record. *See* 3/19/25 Op. & Order at 10; CREW Mot. for Disc. at 9-10. DOGE cannot be saved from meaningful scrutiny of her declaration by belatedly, and only when it suits DOGE, asserting that she is both entitled to be the definitive voice on the scope of DOGE's operations but cannot be questioned because of her position. DOGE cites no case supporting that position in any circumstance, let alone when that purportedly high-ranking official has submitted declarations the Court has already found to be insufficient in light of "contradictory evidence in the record." 3/19/25 Op. & Order at 10.

4

Third, DOGE's belated invocation of separation-of-powers principles and *Cheney v. U.S. District Court for D.C.*, 542 U.S. 367 (2004), are wholly unavailing. *See* Def.'s Mem. Supp. Stay Mot. at 5, 7. *Cheney* does not broadly shield the entire Executive Office of the President ("EOP") from discovery. Far from it, the Supreme Court's reasoning rested on "a concern that forcing the *Vice President* to assert executive privilege in the context of broad discovery requests submitted during civil litigation would set 'coequal branches of the Government . . . on a collision course.'" *CREW v. U.S. Dep't of Homeland Sec.*, 532 F.3d 860, 866 (D.C. Cir. 2008) (quoting *Cheney*, 542 U.S. at 389) (emphasis added). "[N]o such danger exists" where, as here, discovery is sought not from the President or Vice President, but a mere EOP employee. *Id.* at 866; *see Cheney*, 542 U.S. at 381 (cautioning that the Court's ruling may have been different "[w]ere the Vice President not a party in the case"). For precisely this reason, Judge Bates recently rejected a similar argument in authorizing limited discovery against DOGE and deemed *Cheney* "readily distinguishable." *AFL-CIO v. U.S. Dep't of Labor*, No. 25-cv-339, ECF No. 71, at 15 n.17 (D.D.C. Mar. 19, 2025).[1]

Written Discovery Requests. DOGE also incorrectly asserts that it is substantially likely to persuade the Court of Appeals that the Court abused its discretion by permitting Interrogatories 6 and 8, which seek information concerning DOGE's recommendations to agencies, and the discovery requests that seek the information DOGE has regarding its access to federal agency databases.

---

[1] Indeed, the discovery sought here is several steps removed from the President. DOGE is housed within EOP (along with several other entities subject to FOIA), and its Administrator reports to the White House chief of staff, who, in turn, reports to the President. Moreover, CREW's discovery requests explicitly *exclude* communications with the President, and seek no information from employees within the White House Office. *See* Discovery Requests, ECF No. 27-1.

5

DOGE attacks the basis on which the Court allowed Interrogatories 6 and 8, which seek information regarding DOGE's recommendations to federal agencies and which the Court concluded may reveal evidence showing that recommendations are always followed, on the grounds that they speak only to DOGE's influence and not its authority. Such an assertion is unserious—the very purpose of these interrogatories is to determine the extent to which DOGE recommendations are "recommendations" at all, *see* CREW Mot. for Disc. Reply at 14-16, ECF No. 35, which is directly relevant to this Court's determination of whether DOGE is exercising substantial independent authority. And the relevance of this information cannot be viewed, as DOGE views it, in isolation. These interrogatories have been issued in conjunction with requests for other information that will provide additional context on the "recommendations" that DOGE has made. DOGE further mischaracterizes this request as "a dragnet search for, and potential disclosure of, every single recommendation by a USDS employee or DOGE Team," Def.'s Mem. Supp. Stay Mot. at 8, but ignores that the requests are cabined in both subject matter and and temporal scope to include information only on "federal agency contract[s], grant[s], lease[s], or similar instrument[s]" and "federal agency employee[s] or position[s] that any DOGE employee or DOGE Team member recommended federal agencies terminate or place on administrative leave" for a period of less than three months. *See* Discovery Requests at 8. DOGE also refuses to acknowledge—as it has whenever faced with the prospect of providing information in the course of this litigation—that this is information that DOGE *already purports to compile and publish* on a rolling basis on its official government website. *See* DOGE, Savings (last accessed Apr. 18, 2025), https://www.doge.gov/savings ("Wall of Receipts" identifying federal contracts, grants, and leases purportedly cancelled by DOGE). DOGE's continued refusal to acknowledge these real-world facts is yet another instance of its legal gaslighting.

DOGE also specifically objects to Interrogatory 9, which CREW has voluntarily narrowed in light of its meet and confer with counsel for DOGE, on the basis that it "simply does not have comprehensive knowledge as to which specific agency systems particular detailees/dual employees have access." Def.'s Mem. Supp. Stay Mot. at 9. That troubling response—that DOGE's operations are so sweeping that it does not even know the extent to which its employees and detailees have access to the federal government's most sensitive systems and cannot be bothered to find out—does not justify absolving DOGE of its obligation to answer that interrogatory and to conduct a diligent search for information to do so. Rather, it calls out for a response and serves as a glaring example of how artificially narrow DOGE expects the analysis of its independent authority to be. But even putting that aside, the proper path when a party does not know the answer to an interrogatory is to submit a sworn answer to that effect, not file a mandamus petition. DOGE also asserts this discovery would be burdensome without actually explaining why it would be burdensome except to note that the information is not the same as the information provided in another case. But that does not explain why it would be burdensome to collect the information required for *this* case, or otherwise respond to the discovery request.

DOGE's various claims that some of the information sought is privileged is also unlikely to succeed in preventing discovery at the D.C. Circuit. First, as explained above, DOGE's position that discovery should generally be curtailed in light of *Cheney* is flatly incorrect, and that case does not shield the entire EOP from discovery. Moreover, the fact that DOGE might assert privilege is not a reason to stay the discovery—asserting privilege is a normal part of discovery, not a reason to stay it or seek mandamus, and DOGE is of course entitled to assert privilege whenever it is warranted. The Court's order granting the narrow discovery CREW sought also already accounts for DOGE's stated concerns. None of the discovery responses call

for communications or information from any other EOP component, Defendant Musk, or advisor of the President and the Court denied CREW's request to conduct a deposition of Steve Davis, showing this Court's careful consideration of the separation of powers concerns and DOGE's burdens in granting this limited discovery. DOGE's incredibly broad and non-particularized privilege assertions do not justify a stay.

**II.    DOGE will not suffer irreparable harm from the Court's order granting discovery.**

DOGE's claim that it would be irreparably harmed if required to comply with the Court's discovery order fares no better. Its arguments merely rehash the burden arguments it made in opposing CREW's motion for discovery and do not come close to establishing irreparable harm. As an initial matter, whatever burden DOGE may carry in responding to the Court's order is a problem of its own making, brought on by its insistence in seeking summary judgment before filing an answer or allowing discovery to begin on a reasonable schedule, even after the Court made clear that such a motion would trigger discovery. *See* CREW Mot. for Disc. at 19-20. Such self-inflicted harm provides no grounds for a stay.

With respect to Ms. Gleason's deposition, DOGE's argument that she is immune from deposition because the burdens associated with depositions of "high-ranking government officials" constitute irreparable harm bears no relation to reality. *See* Def.'s. Mem. Supp. Stay Mot. at 10. As noted above, DOGE has chosen to repeatedly inject her (questionable) sworn statements into this case and thus, case law that seeks only to prevent private plaintiffs from needlessly dragging uninvolved high-ranking public officials into litigation is irrelevant. *See supra*. Further, there is no reason to believe that her deposition would be overly burdensome or negatively influence DOGE's operations. First, while her declarations contain no description of her day-to-day work at DOGE, her second job at the Department of Health and Human Services

makes clear that her role at DOGE is not even full-time.[2] Second, DOGE does not explain why, if the full scope of DOGE's work is within Ms. Gleason's personal knowledge, she would need to extensively prepare to answer questions based on her personal knowledge. Finally, DOGE's entire argument regarding DOGE's agency status is that it is actually the *agencies* that are implementing the President's DOGE agenda, so it is unclear what crucial function could be inhibited by allowing CREW to question Ms. Gleason.

### III.     CREW and the public will be injured by a stay.

DOGE argues that CREW will not be prejudiced by a stay, but DOGE has yet to produce (or, as far as CREW knows, even process) a single document responsive to CREW's FOIA request and this stay will only continue to delay such productions. As the Court is aware, despite being granted preliminary injunctive relief based on its likelihood of success on the merits and the irreparable harm to CREW and the public by being denied timely information, CREW will not receive documents responsive to its FOIA request until DOGE's motion for summary judgment is decided. 3/19/25 Op. & Order at 15. And DOGE's pattern of delay to avoid compliance with the Court's preliminary injunction is unmistakable. The Court has already had to address a baseless motion for reconsideration that resulted in a one-week delay in DOGE's disclosure of the estimated volume of documents responsive to CREW's request and had to clarify an already clear order to DOGE so that it actually begins processing documents to be produced when the Court denies its summary judgment motion. *See* 4/10/25 Minute Order ("the Court ordered USDS to begin processing records because 'if USDS does not even begin processing the request until after the question of whether it is subject to FOIA is litigated on the

---

[2] As previously noted, Ms. Gleason's characterization in her first declaration as a "full-time, government employee at USDS" was revised in her second declaration to read only that she is a "full-time, government employee." CREW Mot. for Disc. at 16. And the Court has already noted that Ms. Gleason's claim to be running DOGE is inconsistent with the record. *See* 3/19/25 Op. & Order at 10.

merits, a decision in CREW's favor will likely be followed by additional processing delays' . . . USDS, along with OMB, must begin processing responsive records now.").

At the same time, DOGE has, when convenient, claimed to endeavor to resolve this matter via an expedited, pre-answer partial summary judgment motion on the questions of whether DOGE is exercising substantial independent authority. Yet now that it is clear that discovery is necessary to resolve that question, DOGE seeks to superintend this Court's careful consideration of that question by running to the D.C. Circuit and thus causing further delay. Meanwhile, CREW and the public await the processing and production of the documents required by this Court's preliminary injunction—documents that this Court has already said (in an accommodation to the government) it would not require the government to produce until resolution of its summary judgment motion. This Court should not countenance that effort. DOGE's continued delays are contrary not only to the public interests described in the Court's preliminary injunction order, but to the public interests embodied by FOIA and in stopping the government from operating contrary to law. *See, e.g., U.S. Dep't of Just. v. Reps. Comm. For Freedom of the Press*, 489 U.S. 749, 773 (1989) (describing "the citizens' right to be informed about 'what their government is up to"); *see also Ctr. to Prevent Handgun Violence v. U.S. Dep't of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999) (describing the "public benefit in the release of information that adds to citizens' knowledge" of government activities).

## CONCLUSION

For the foregoing reasons, the Court should deny DOGE's motion for a stay pending resolution of their petition for a writ of mandamus.

Dated: April 18, 2025           Respectfully submitted,

                                         */s/ Nikhel S. Sus*
                                         Nikhel S. Sus (D.C. Bar No. 1017937)
                                         Jonathan Maier (D.C. Bar No. 1013857)*
                                         Donald K. Sherman (D.C. Bar No. 90031810)*
                                         Lauren C. Bingham (Fl. Bar No. 105745)*
                                         CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON
                                         P.O. Box 14596
                                         Washington, D.C. 20044
                                         Telephone: (202) 408-5565
                                         Fax: (202) 588-5020
                                         nsus@citizensforethics.org
                                         jmaier@citizensforethics.org
                                         dsherman@citizensforethics.org
                                         lbingham@citizensforethics.org

                                         *Admitted *pro hac vice*

                                         *Counsel for Plaintiff*